1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**GLANCY PRONGAY & MURRAY LLP**
Lionel Z. Glancy (#134180)
Robert V. Prongay (#270796)
Lesley F. Portnoy (#304851)
Charles H. Linehan (#307439)
Pavithra Rajesh (#323055)
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone:   (310) 201-9150
Facsimile: (310) 201-9160

*Attorneys for Plaintiff Neil Costanzo*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NEIL COSTANZO, Individually and on Behalf of All Others Similarly Situated,<br><br>            Plaintiff,<br><br>        v.<br><br>DXC TECHNOLOGY COMPANY, HEWLETT PACKARD ENTERPRISE COMPANY, RISHI VARNA, TIMOTHY C. STONESIFER, JEREMY K. COX, MUKESH AGHI, AMY E. ALVING, DAVID HERZOG, SACHIN LAWANDE, J. MICHAEL LAWRIE, JULIO A. PORTALATIN, PETER RUTLAND, MANOJ P. SINGH, MARGARET C. WHITMAN, and ROBERT F. WOODS,<br><br>            Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |

1    Plaintiff Neil Costanzo ("Plaintiff"), individually and on behalf of all others similarly

2  situated, by and through his attorneys, alleges the following upon information and belief, except as

3  to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's

4  information and belief is based upon, among other things, his counsel's investigation, which

5  includes without limitation: (a) review and analysis of regulatory filings made by DXC

6  Technology Company ("DXC" or the "Company"; f/k/a/ Everett SpinCo, Inc.), Hewlett Packard

7  Enterprise Company ("HPE"), and Computer Sciences Corporation, Inc. ("CSC") with the United

8  States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press

9  releases and media reports issued by and disseminated by DXC; and (c) review of other publicly

10  available information concerning DXC.

11                    **<u>NATURE OF THE ACTION AND OVERVIEW</u>**

12    1.    This is a class action on behalf of persons and entities that purchased or otherwise

13  acquired DXC common stock pursuant and/or traceable to the registration statement and

14  prospectus, and additional materials incorporated by reference, (collectively, the "Registration

15  Statement" or "Offering Materials") issued in connection with the April 2017 transaction by which

16  HPE's Enterprise Services segment was spun off and merged with CSC to form DXC (the

17  "Merger").  Plaintiff pursues claims against the Defendants under the Securities Act of 1933 (the

18  "Securities Act").

19    2.    HPE is a technology company. Historically, the Company operated under five

20  business segments: Enterprise Group, which provides technology infrastructure for customers to

21  optimize traditional IT for a secure, cloud-enabled future; Software, which allows customers to

22  automate IT operations; Financial Services, which enables flexible IT consumption models,

23  financial architectures, and customized investment solutions; Corporate Investments, which

24  include cloud-related business incubation projects; and Enterprise Services, which combines the

25  Company's solutions through its consulting and support professionals.

26    3.    In April 2017, HPE conducted the Merger by spinning off its Enterprise Services

27  segment, merging it with CSC, and forming the company now known as DXC.  DXC is a

28  technology company that provides end-to-end information technology services.

4.      In connection with the Merger, DXC issued over 140 million shares of DXC common stock to former CSC shareholders. Each share of CSC common stock held immediately prior to the Merger was exchanged for one share of DXC common stock.  Through this exchange, former CSC shareholders received 141,298,797 shares of DXC common stock, representing 49.9% of outstanding DXC common shares.  These DXC shares were registered, issued, and solicited pursuant to the Offering Materials.

5.      On February 6, 2019, DXC's former Executive Vice President and Head of Global Delivery, Stephen J. Hilton filed a civil complaint in the Southern District of New York detailing Defendant's efforts before the Merger for significant layoffs and earnings manipulation.  Stephen J. Hilton had reported directly to defendant Lawrie before and after the Merger.  According to the complaint, defendant Lawrie was heavily focused on using cost-cutting efforts and layoffs to inflate short-term financial metrics.   Furthermore, the complaint stated that these efforts substantially impaired the Company's ability to deliver contractually required services to clients, and that these efforts continued even though defendant Lawrie was warned about the likely severe negative consequences.  Additionally, the complaint notes that the pace and severity of DXC's massive layoffs had foreseeable "negative impacts on customer satisfaction" that were "disastrous for DXC's long-term revenue."

6.      On August 8, 2019, after the market closed, the Company lowered its fiscal 2020 guidance, expecting revenue between $20.2 billion and $20.7 billion, representing a $500 million shortfall from previously-issued guidance.

7.      On this news, the Company's share price fell $15.74, or over 30%, to close at $35.91 per share on August 9, 2019, on unusually heavy trading volume.

8.      By the commencement of this action, DXC stock was trading as low as $32.70 per share, a nearly 45% decline from the $59 price per share at the time of the Merger.

9.      The Registration Statement was false and misleading and omitted to state material adverse facts. Specifically, Defendants failed to disclose to investors: (1) that the planned "workforce optimization" plan involved implementing arbitrary quotas; (2) that the plan would cut thousands of jobs at the Company; (3) that jobs that were particularly at risk of being cut were

held by longer-tenured, knowledgeable, and highly compensated senior personnel; (4) that these job terminations were selectively timed to artificially inflate reported earnings and other financial metrics; (5) that, at the time of the Merger, defendant Lawrie had forecasted plans for a $2.7 billion workforce reduction in the first year; (6) that, as a result of these workforce terminations, the Company was unlikely to deliver on client contracts; (7) that, as a result of the foregoing, the Company's clients would be dissatisfied and the relationships would be impaired; and (8) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects, were materially misleading and/or lacked a reasonable basis.

10.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

11.     The claims asserted herein arise under and pursuant to Sections 11, 12, and 15 of the Securities Act (15 U.S.C. §§ 77k and 77o).

12.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 22 of the Securities Act (15 U.S.C. § 77v).

13.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b).

14.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

15.     Plaintiff Neil Costanzo, as set forth in the accompanying certification, incorporated by reference herein, purchased or otherwise acquired DXC common stock pursuant and/or traceable to the Registration Statement issued in connection with the Company's Merger, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

16.     Defendant DXC is incorporated under the laws of Delaware with its principal executive offices located in Palo Alto, California.  DXC's common stock trades on the New York Stock Exchange ("NYSE") under the symbol "DXC."

17.     Defendant HPE is incorporated under the laws of Delaware with its principal executive offices located in Palo Alto, California.  Before the Merger, HPE was the sole controlling shareholder of DXC.  After the Merger, HPE shareholders held a controlling majority (approximately 50.1%) of the outstanding common shares of DXC.  HPE exercised its control over DXC and the Merger by designating HPE employee representatives as officers and directors of DXC who, within the scope of their employment with HPE, reviewed, contributed to, signed, or agreed to be named as incoming officer and director designees in the Registration Statement.

18.     Defendant Rishi Varna ("Varna") was, at all relevant times, an employee and General Counsel to HPE.  At the time of the Merger, in his capacity as an employee representative of HPE, he served as President, Secretary, Principal Executive Officer, and a director of DXC, and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

19.     Defendant Timothy C. Stonesifer ("Stonesifer") was, at all relevant times, the Chief Financial Officer ("CFO") of HPE.  At the time of the Merger, in his capacity as an employee representative of HPE, he served as CFO and a director of DXC, and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

20.     Defendant Jeremy K. Cox ("Cox") served, at the time of the Merger, as a director of DXC, and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

21.     Defendant Mukesh Aghi ("Aghi") is named in the Registration Statement as an incoming DXC director.  He reviewed and contributed to the Registration Statement.

22.     Defendant Amy E. Alving ("Alving") is named in the Registration Statement as an incoming DXC director.  She reviewed and contributed to the Registration Statement.

23.     Defendant David Herzog ("Herzog") is named in the Registration Statement as an incoming DXC director.  He reviewed and contributed to the Registration Statement.

24.     Defendant Sachin Lawande ("Lawande") is named in the Registration Statement as an incoming DXC director. He reviewed and contributed to the Registration Statement.

25.     Defendant J. Michael Lawrie ("Lawrie") is named in the Registration Statement as the incoming Chairman of the DXC Board, as well as the incoming President and Chief Executive Officer of DXC. He is the former President and Chief Executive Officer of CSC. He reviewed and contributed to the Registration Statement.

26.     Defendant Julio A. Portalatin ("Portalatin") is named in the Registration Statement as an incoming DXC director. He reviewed and contributed to the Registration Statement.

27.     Defendant Peter Rutland ("Rutland") is named in the Registration Statement as an incoming DXC director. He reviewed and contributed to the Registration Statement.

28.     Defendant Manoj P. Singh ("Singh") is named in the Registration Statement as an incoming DXC director. He reviewed and contributed to the Registration Statement.

29.     Defendant Margaret C. Whitman ("Whitman") is named in the Registration Statement as an incoming DXC director. At the time of the Merger, she was the President and Chief Executive Officer of HPE. In her capacity as CEO and employee representative of HPE, she reviewed, contributed to, and was named as an incoming DXC director in the Registration Statement.

30.     Defendant Robert F. Woods ("Woods") is named in the Registration Statement as an incoming DXC director. He reviewed and contributed to the Registration Statement.

31.     Defendants Varna, Stonesifer, Cox, Aghi, Alving, Herzog, Lawande, Lawire, Portalatin, Rutland, Sing, Whitman, and Woods are collectively referred to hereinafter as the "Individual Defendants."

## CLASS ACTION ALLEGATIONS

32.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired DXC common stock issued pursuant and/or traceable to the Registration Statement. Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal

representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

33.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, DXC's shares actively traded on the NYSE.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Millions of DXC shares were traded publicly during the Class Period on the NYSE.  Record owners and other members of the Class may be identified from records maintained by DXC or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

34.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

35.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

36.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)    whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)    whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of DXC; and

(c)    to what extent the members of the Class have sustained damages and the proper measure of damages.

37.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of

1   individual litigation makes it impossible for members of the Class to individually redress the

2   wrongs done to them.  There will be no difficulty in the management of this action as a class

3   action.

4   **SUBSTANTIVE ALLEGATIONS**

5   **Background**

6          38.     HPE is a technology company. Historically, the Company operated under five

7   business segments: Enterprise Group, which provides technology infrastructure for customers to

8   optimize traditional IT for a secure, cloud-enabled future; Software, which allows customers to

9   automate IT operations; Financial Services, which enables flexible IT consumption models,

10  financial architectures, and customized investment solutions; Corporate Investments, which

11  include cloud-related business incubation projects; and Enterprise Services, which combines the

12  Company's solutions through its consulting and support professionals.

13         39.     In April 2017, HPE conducted the Merger by spinning off its Enterprise Services

14  segment, merging it with CSC, and forming the company now known as DXC.  DXC is a

15  technology company that provides end-to-end information technology services.

16  **The Company's False and/or Misleading**

17  **Registration Statement and Prospectus**

18         40.     On November 2, 2016, Defendants filed a draft Registration Statement on Form S-

19  4 with the SEC to register the DXC shares to be issued and exchanged in the Merger.

20         41.     On February 2, 2017, during a conference call with analysts and CSC investors,

21  Defendant Lawrie noted the "detailed plans" for the company after the merger, stating in relevant

22  part:

23  > We continue to hold regular premerger integration summits to bring together the
> leaders of both organizations. Our focus has been on developing our operating
> model, building a one company culture, creating an optimal go-to-market strategy,
24 > and preparing detailed plans for synergies and value capture.

25  > ***

26  > Listen, I think we are pretty deeply into the planning process on this. So, I'd say
> our conviction, my conviction is stronger, having gone through it. When I say
27 > stronger, ***we've been able to now get to specific plans and specific actions*** and so
> on and so forth. So, my overall conviction certainly has grown as we've gone
28 > through this thought process.

(Emphasis added.)

42.     On February 24, 2017, Defendants filed a final amendment to the Registration Statement with the SEC on Form S-4/A, which forms part of the Registration Statement.  The Registration Statement was declared effective on February 27, 2017.

43.     On February 27, 2017, the Company filed its prospectus on Form 424B3 with the SEC, which forms part of the Registration Statement.

44.     On March 31, 2017, in connection with the Merger, HPE spun off its Enterprise Services segment: the segment was separated into a wholly-owned subsidiary called Everett SpinCo, Inc.; then, all issued and outstanding common stock of Everett SpinCo., Inc. was distributed pro rata to HPE shareholders as of the record date (close of business on March 20, 2017).  Thus, Everett SpinCo, Inc. became an independent public company called DXC.

45.     On April 1, 2017, Defendants completed the Merger, with DXC issuing approximately 141 million new shares of DXC common stock directly to former shareholders of CSC.  These new shares of DXC stock were issued pursuant to the Registration Statement.

46.     On April 3, 2017, DXC common stock began trading on the NYSE at approximately $59 per share.

47.     The Registration Statement was negligently prepared and, as a result, contained untrue statements of material facts or omitted to state other facts necessary to make the statements made not misleading, and was not prepared in accordance with the rules and regulations governing its preparation.

48.     Under applicable SEC rules and regulations, the Registration Statement was required to disclose known trends, events or uncertainties that were having, and were reasonably likely to have, an impact on the Company's continuing operations.

49.     The Offering Materials repeatedly referred to purported "net synergies" and "strategic and financial benefits" that would be realized after the Merger. The Offering Materials touted over $1 billion synergies in the first year from the incoming management team's detailed "workforce optimization" plan, stating:

1    The combined company expects that the merger of Everett With CSC will produce
2    ***first-year synergies of approximately $1.0 billion post-close***, with a run rate of
     $1.5 billion by the end of year one. The $1.0 billion post-close and $1.5 billion run
3    rate at the end of year one were each calculated by estimating the expected value of
     harmonizing policies and benefits between the two companies, supply chain and
4    procurement benefits from expected economies of scale such as volume discounts
     as well as cost synergies expected from ***workforce optimization such as***
5    ***elimination of duplicative roles and other duplicative general, administrative and***
     ***overhead costs.***

6    (Emphases added.)

7        50.    Moreover, the Offering Materials claimed a $7 billion increase to goodwill would

8    result from "synergies" from "cost-saving opportunities [such as] improved operating efficiency

9    and asset optimization."

10       51.    The Offering Materials emphasized the "increased scale" resulting from the

11   combination of the Enterprise Services segment with CSC. Specifically, it stated that the "strategic

12   combination of the two complementary businesses will create one of the world's largest pure-play

13   IT services companies, uniquely positioned to lead clients on their digital transformations[, with

14   the] new company expect[ed] to have annual revenues of $26 billion and more than 5,000 clients

15   in 70 countries."

16       52.    The Offering Materials also detailed a "turnaround plan" that would "align

17   [DXC's] costs with its revenue trajectory" and complement "initiatives to improve execution in

18   sales performance and accountability . . . ." Moreover, the Offering Materials emphasized that

19   DXC could "attract and retain highly motivated people with the skills necessary to serve their

20   customers," and that DXC would continue to "hire, train, motivate and effectively utilize

21   employees with the right mix of skills and experience . . . to meet the needs of its clients." Thus,

22   "with a collective workforce of approximately 178,000 employees," according to the Offering

23   Materials, "the size and scale of the combined company [would] enhance its ability to provide

24   value to its customers through a broader range of resources and expertise to meet their needs."

25       53.    The Registration Statement was materially false and misleading and omitted to

26   state: (1) that the planned "workforce optimization" plan involved implementing arbitrary quotas;

27   (2) that the plan would cut thousands of jobs at the Company; (3) that jobs that were particularly at

28   risk of being cut were held by longer-tenured, knowledgeable, and highly compensated senior

personnel; (4) that these job terminations were selectively timed to artificially inflate reported earnings and other financial metrics; (5) that, at the time of the Merger, defendant Lawrie had forecasted plans for a $2.7 billion workforce reduction in the first year; (6) that, as a result of these workforce terminations, the Company was unlikely to deliver on client contracts; (7) that, as a result of the foregoing, the Company's clients would be dissatisfied and the relationships would be impaired; and (8) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects, were materially misleading and/or lacked a reasonable basis.

**The Subsequent Disclosures**

54.    On October 24, 2018, *The Register* reported that a senior DXC executive had been fired and quoted a DXC insider as stating that the Company was "descending into turmoil." However, the Company filed a Form 8-K downplaying the news and reiterating previously-issued financial guidance.

55.    On November 6, 2018, DXC filed another Form 8-K with the SEC in which it disclosed that revenue had declined 8% year-over-year, resulting in a $440 million shortfall.

56.    On this news, the Company's stock price declined for several weeks. On December 24, 2018, the Company's stock price closed at $50.03, which is a nearly 20% decline from the $59 price per share on the Merger exchange date.

57.    On February 6, 2019, DXC's former Executive Vice President and Head of Global Delivery, Stephen J. Hilton filed a civil complaint in the Southern District of New York detailing Defendant's efforts before the Merger for the substantial layoffs and earnings manipulation. Stephen J. Hilton had reported directly to defendant Lawrie before and after the Merger. According to the complaint, defendant Lawrie was heavily focused on using cost-cutting efforts and layoffs to inflate short-term financial metrics. Furthermore, these efforts substantially impaired the Company's ability to deliver contractually required services to clients, and that these efforts continued even though defendant Lawrie was warned about the severe likely, negative consequences. Additionally, the complaint notes that the pace and severity of DXC's massive

layoffs had foreseeable "negative impacts on customer satisfaction" that were "disastrous for DXC's long-term revenue."

58.    On August 8, 2019, after the market closed, the Company lowered its fiscal 2020 guidance, expecting revenue between $20.2 billion and $20.7 billion, representing a $500 million shortfall from previously-issued guidance.

59.    On this news, the Company's share price fell $15.74, or over 30%, to close at $35.91 per share on August 9, 2019, on unusually heavy trading volume.

60.    By the commencement of this action, DXC stock was trading as low as $32.70 per share, a nearly 45% decline from the $59 price per share at the time of the Merger.

## FIRST CLAIM

### Violation of Section 11 of the Securities Act
### (Against All Defendants)

61.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness or intentional misconduct.

62.    This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. § 77k, on behalf of the Class, against the Defendants.

63.    The Registration Statement for the Merger was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

64.    DXC is the registrant for the Merger.  The Defendants named herein were responsible for the contents and dissemination of the Registration Statement.

65.    As issuer of the shares, DXC is strictly liable to Plaintiff and the Class for the misstatements and omissions.

66.    None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement was true and without omissions of any material facts and were not misleading.

67.    By reasons of the conduct herein alleged, each Defendant violated, and/or controlled a person who violated Section 11 of the Securities Act.

68.     Plaintiff acquired DXC shares pursuant and/or traceable to the Registration Statement for the Merger.

69.     Plaintiff and the Class have sustained damages.  The value of DXC common stock has declined substantially subsequent to and due to the Defendants' violations.

## SECOND CLAIM

### Violation of Section 12(a)(2) of the Securities Act
### (Against All Defendants)

70.     Plaintiff repeats and re-alleges each and every allegation contained above, except any allegation of fraud, recklessness or intentional misconduct.

71.     This Count is brought pursuant to Section 12(a)(2) of the Securities Act, on behalf of the Class, against all Defendants.

72.     Defendants were sellers, offerors, and/or solicitors of purchasers of common stock offered by DXC pursuant to the Merger.  Defendants issued, caused to be issued, and/or signed the Registration Statement in connection with the Merger.  The Registration Statement was used to induce investors, such as Plaintiff and other members of the Class, to purchase DXC securities.

73.     The Registration Statement was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

74.     Defendants' actions of solicitation included participating in the preparation of the false and/or misleading Registration Statement.

75.     None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

76.     Plaintiff and other Class members did not know, nor could they have known, of the untruths and/or omissions contained in the Registration Statement.

77.     By virtue of the conduct alleged herein, the Defendants are liable for the aforesaid wrongful conduct and are liable to Plaintiff and the Class for damages suffered.

## THIRD CLAIM

### Violation of Section 15 of the Securities Act
### (Against the Individual Defendants)

78.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness or intentional misconduct.

79.     This count is asserted against the Individual Defendants and is based upon Section 15 of the Securities Act.

80.     The Individual Defendants, by virtue of their offices, directorship, and specific acts were, at the time of the wrongs alleged herein and as set forth herein, controlling persons of DXC within the meaning of Section 15 of the Securities Act.  The Individual Defendants had the power and influence and exercised the same to cause DXC to engage in the acts described herein.

81.     The Individual Defendants' positions made them privy to and provided them with actual knowledge of the material facts concealed from Plaintiff and the Class.

82.     By virtue of the conduct alleged herein, the Individual Defendants are liable for the aforesaid wrongful conduct and are liable to Plaintiff and the Class for damages suffered.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a) Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

b) Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

c) Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

d) Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

1    DATED:  September 16, 2019                **GLANCY PRONGAY & MURRAY LLP**

2

3
                                              By:    */s/ Lesley F. Portnoy*
4                                             Lionel Z. Glancy
                                              Robert V. Prongay
5                                             Lesley F. Portnoy
                                              Charles H. Linehan
6                                             Pavithra Rajesh
                                              1925 Century Park East, Suite 2100
7                                             Los Angeles, CA 90067
                                              Telephone:  (310) 201-9150
8                                             Facsimile:   (310) 201-9160
9
10                                            *Attorneys for Neil Costanzo*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# SWORN CERTIFICATION OF PLAINTIFF

## DXC TECHNOLOGY COMPANY SECURITIES LITIGATION

I, Neil A. Costanzo, certify that:

1.      I have reviewed the Complaint and authorize its filing and/or the filing of a Lead Plaintiff motion on my behalf.

2.      I did not purchase the DXC Technology Company securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3.      I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4.      My transactions in DXC Technology Company securities during the Class Period set forth in the Complaint are as follows:

        (See attached transactions)

5.      I have not sought to serve, nor served, as a representative party on behalf of a class under this title during the last three years.

6.      I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.


9/13/2019

_____                          _____
        Date                                                      Neil A. Costanzo

**Neil A. Costanzo's Transactions in DXC Technology Company (DXC)**

| Date | Transaction Type | Quantity | Unit Price |
|------|------------------|----------|------------|
| 4/3/2017 | Acquired | 433 | $69.0100 |