LATHAM & WATKINS LLP
 Jamie L. Wine (Bar No. 181373)
 *jamie.wine@lw.com*
 Kevin McDonough (*pro hac vice*)
 *kevin.mcdonough@lw.com*
 885 Third Avenue
 New York, New York, 10022-4834
 Telephone:  +1.212.906.1200
 Facsimile:  +1.212.906.1200

 Stephen P. Barry (*pro hac vice*)
 *stephen.barry@lw.com*
 555 Eleventh Street, NW, Suite 1000
 Washington, D.C.  20004
 T: +1.202.637.2200 / F: +1.202.637.2201

 Nada L. Boutros (Bar No. 287163)
 *nada.boutros@lw.com*
 505 Montgomery Street, Suite 2000
 San Francisco, CA  94111
 T: +1.415.391.0600 / F: +1.415.395.8095

*Attorneys for Defendants DXC Technology Company,*
*Mukesh Aghi, Amy E. Alving, David Herzog, Sachin*
*Lawande, J. Michael Lawrie, Julio A. Portalatin,*
*Peter Rutland, Manoj P. Singh, and Robert F. Woods*

*Additional counsel of record listed on signature page*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA,

SAN JOSE DIVISION

| | |
|---|---|
| NEIL COSTANZO, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>DXC TECHNOLOGY COMPANY, HEWLETT PACKARD ENTERPRISE COMPANY, RISHI VARMA, TIMOTHY C. STONESIFER, JEREMY K. COX, MUKESH AGHI, AMY E. ALVING, DAVID HERZOG, SACHIN LAWANDE, J. MICHAEL LAWRIE, JULIO A. PORTALATIN, PETER RUTLAND, MANOJ P. SINGH, MARGARET C. WHITMAN, and ROBERT F. WOODS,<br><br>Defendants. | CASE NO. 5:19-CV-05794-BLF<br><br>**DEFENDANTS' NOTICE OF MOTION AND JOINT MOTION TO DISMISS THE AMENDED COMPLAINT AND SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:      June 4, 2020<br>Time:      9:00 a.m.<br>Place:     Courtroom 3, 5th Floor<br>Judge:    Hon. Beth Labson Freeman |

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on June 4, 2020, at 9:00 am, or as soon thereafter as the matter may be heard, in the United States District Court for the Northern District of California, Courtroom of the Honorable Beth Labson Freeman, 280 South 1st Street, San Jose, CA 95133, 5th Floor, Defendants DXC Technology Company ("DXC" or the "Company"), Hewlett Packard Enterprise Company ("HPE"), Rishi Varma, Timothy C. Stonesifer, Jeremy K. Cox, Mukesh Aghi, Amy E. Alving, David Herzog, Sachin Lawande, J. Michael Lawrie, Julio A. Portalatin, Peter Rutland, Manoj P. Singh, Margaret C. Whitman, and Robert F. Woods (the "Individual Defendants," and together with DXC and HPE, "Defendants") will jointly move this Court for an order, pursuant to Federal Rule of Civil Procedure 12(b)(6), dismissing the Amended Complaint (Dkt. No. 29, filed Jan. 8, 2020) (the "Complaint" or "Compl."). The Motion is based on this Notice, the supporting Memorandum of Points and Authorities, the Declaration of Nada L. Boutros filed concurrently herewith, the complete files and records in this action, and any additional material and arguments as may be considered in connection with the hearing.

## ISSUES TO BE DECIDED

(1)  Have Plaintiffs failed sufficiently to allege a plausible or actionable misstatement or omission under Federal Rule of Civil Procedure 12(b)(6), such that their Section 11 claim should be dismissed?

(2)  Have Plaintiffs failed sufficiently to allege a plausible or actionable underlying violation of the federal securities laws such that their control persons claim under Section 15 should be dismissed?

# **TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION .......................................................................................................... 1

II.    FACTUAL BACKGROUND ........................................................................................ 4

    A.    The Parties ........................................................................................................ 4

    B.    The Registration Statement And DXC's Plan To Optimize Its Workforce ........................................................................................................ 5

    C.    DXC Successfully Implements Its Optimization Plan In The Company's First Fiscal Year ............................................................................ 6

    D.    More Than Two Years After The 2017 Merger, DXC Revises Its May 2019 Revenue Guidance ......................................................................... 6

    E.    Plaintiffs' Allegations ...................................................................................... 7

III.    STANDARD OF LAW ................................................................................................. 8

IV.    ARGUMENT ................................................................................................................ 9

    A.    Plaintiffs Fail to Allege A Materially Misleading Statement Or Omission Under Section 11 ............................................................................. 9

        1.    Defendants' Forward-Looking Statements Are Not Actionable ....................................................................................... 9

            a.    The Registration Statement Contains Meaningful Cautionary Language ................................................... 11

            b.    Plaintiffs Have Not Pleaded That Defendants Had Actual Knowledge That Their Forward-Looking Statements Were False ................................................... 13

        2.    Plaintiffs Cannot State A Claim Based On Inactionable Puffery ...................................................................................... 15

        3.    Defendants' Opinion Statements Are Not Actionable ........................... 17

        4.    DXC's Risk Disclosures Are Not Actionable ........................................ 19

        5.    In Any Event, Plaintiffs Fail To Allege That Any Of The Challenged Statements Were False Or Misleading ............................... 20

    B.    Plaintiffs Fail To Plead Violations Of Items 303 Or 503 .................................. 22

    C.    Plaintiffs Fail To State A Claim Under Section 15 ............................................ 24

V.    CONCLUSION ............................................................................................................ 24

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Albert Fadem Tr. v. Am. Elec. Power Co.*,
334 F. Supp. 2d 985 (S.D. Ohio 2004) ...................................................................16

*Allstate Life Ins. Co. v. Robert W. Baird & Co.*,
756 F. Supp. 2d 1113 (D. Ariz. 2010) ....................................................................22

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...........................................................................................8, 21

*In re Barrick Gold Corp. Sec. Litig.*,
341 F. Supp. 3d 358 (S.D.N.Y. 2018)....................................................................14

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)................................................................................................8

*Bhatt v. Tech Data Corp.*,
2018 WL 6504375 (M.D. Fla. Dec. 11, 2018)........................................................17

*Bondali v. Yum! Brands, Inc.*,
620 F. App'x. 483 (6th Cir. 2015) .........................................................................19

*In re Burlington Coat Factory Sec. Litig.*,
114 F.3d 1410 (3d Cir. 1997).................................................................................19

*In re ChannelAdvisor Corp. Sec. Litig.*,
2016 WL 1381772 (E.D.N.C. Apr. 6, 2016), *aff'd sub nom. Dice v.
ChannelAdvisor Corp.*, 671 F. App'x. 111 (4th Cir. 2016) .......................................19

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
856 F.3d 605 (9th Cir. 2017) .................................................................................18

*City of Marysville Gen. Emps. Ret. Sys. v. Nighthawk Radiology Holdings, Inc.*,
2011 WL 4584778 (D. Idaho Sep. 12, 2011)..........................................................11

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*,
880 F. Supp. 2d 1045 (N.D. Cal. 2012) ..................................................................13

*City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*,
2019 WL 6877195 (N.D. Cal. Dec. 17, 2019) ........................................................10

*Cody v. Conformis, Inc.*,
199 F. Supp. 3d 409 (D. Mass. 2016) .....................................................................19

*Cooperman v. Individual, Inc.*,
    171 F.3d 43 (1st Cir. 1999) ................................................................................22

*In re Deutsche Bank AG Sec. Litig.*,
    2016 WL 4083429 (S.D.N.Y. July 25, 2016) .....................................................14

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
    751 F.3d 990 (9th Cir. 2014) ...............................................................................8

*Elias v. Hewlett-Packard Co.*,
    903 F. Supp. 2d 843 (N.D. Cal. 2012) ...............................................................16

*Employers Teamsters Local Nos. 175 & 505 Pension Tr. Fund v. Clorox Co.*,
    353 F.3d 1125 (9th Cir. 2004) ............................................................................14

*Fadia v. FireEye, Inc*
    No. 2:09-CV-00659-EJL, 2016 WL 6679806 (N.D. Cal. Nov. 14, 2016) ...............................10

*In re FBR Inc. Sec. Litig.*,
    544 F. Supp. 2d 346 (S.D.N.Y. 2008).................................................................20

*Golub v. Gigamon Inc.*,
    372 F. Supp. 3d 1033 (N.D. Cal. 2019) .........................................................11, 13

*Greenberg v. Sunrun Inc.*,
    233 F. Supp. 3d 764 (N.D. Cal. 2017) ...............................................................24

*Hanrahan v. Hewlett Packard Co.*,
    2006 WL 1699573 (N.D. Cal. June 16, 2006) ...................................................22

*Hertz Corp. v. Accenture LLP*,
    2019 WL 5537997 (S.D.N.Y. Oct. 25, 2019) .....................................................17

*Jui-Yang Hong v. Extreme Networks, Inc.*,
    No. 15-CV-04883-BLF, 2017 WL 1508991 (N.D. Cal. Apr. 27, 2017) .................................16

*Kane v. Madge Networks N.V.*,
    2000 WL 33208116 (N.D. Cal. 2000) ................................................................22

*In re Kidder Peabody Sec. Litig.*,
    10 F. Supp. 2d 398 (S.D.N.Y. 1998).................................................................16

*Level 3 Commc'ns, Inc. Sec. Litig.*,
    667 F.3d 1331 (10th Cir. 2012) ..........................................................................16

*Markette v. XOMA Corp.*,
    2017 WL 4310759 (N.D. Cal. 2017) ..................................................................17

*Matrixx Initiatives, Inc. v. Siracusano*,
    563 U.S. 27 (2011).............................................................................................20

*Maverick Fund, L.D.C. v. Comverse Tech., Inc.*,
   801 F. Supp. 2d 41 (E.D.N.Y. 2011) ....................................................................14

*Oliver Wyman, Inc. v. Eielson*,
   282 F. Supp. 3d 684 (S.D.N.Y. 2017)...................................................................16

*Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*,
   575 U.S. 175 (2015)..............................................................................3, 18, 20

*Onie v. Conners (In re Cutera Sec. Litig.)*,
   610 F.3d 1103 (9th Cir. 2010) ........................................................... *passim*

*Panther Partners, Inc. v. Ikanos Commc'ns, Inc.*,
   538 F. Supp. 2d 662 (S.D.N.Y. 2008)...................................................................23

*Petzchke v. Century Aluminum Co.* (*In re Century Aluminum Co. Sec. Litig.*),
   729 F.3d 1104 (9th Cir. 2013) ...............................................................................8

*Phila. Fin. Mgmt. of S.F., LLC v. DJSP Enters., Inc.*,
   572 F. App'x 713 (11th Cir. 2014) ......................................................................17

*Plevy v. Haggerty*,
   38 F. Supp. 2d 816 (C.D. Cal. 1998) ...................................................................16

*Police Ret. Sys. v. Intuitive Surgical, Inc.*,
   759 F.3d 1051 (9th Cir. 2014) ..............................................................9, 10, 11, 12

*In re Restoration Robotics, Inc. Sec. Litig.*,
   2019 WL 5295059 (N.D. Cal. Oct 18, 2019)........................................................23

*In re Rigel Pharm., Inc. Sec. Litig.*,
   697 F.3d 869 (9th Cir. 2012) ..........................................................................13, 24

*Ronconi v. Larkin*,
   253 F.3d 423 (9th Cir. 2001) ...........................................................................1, 14

*Ronconi v. Larkin*,
   253 F.3d 432 (9th Cir. 2001) ................................................................................10

*Rubke v. Capitol Bancorp, Ltd.*,
   551 F.3d (9th Cir. 2009) .......................................................................................23

*Somers v. Apple, Inc.*,
   729 F.3d 953 (9th Cir. 2013) .................................................................................8

*Steckman v. Hart Brewing, Inc.*,
   143 F.3d 1293 (9th Cir. 1998) ..............................................................................23

*Sturm v. Marriott Marquis Corp.*,
   85 F. Supp. 2d 1356 (N.D. Ga. 2000) ..................................................................19

*In re Syntex Corp. Sec. Litig.*,
1993 WL 476646 (N.D. Cal. Sept. 1, 1993) ............................................................22

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) ...................................................................................................9

*Union Asset Mgmt. Holding AG v. Sandisk Corp.*,
2016 WL 406283 (N.D. Cal. Jan. 22, 2016) .............................................................10

*Veal v. LendingClub Corp.*,
No. 18-CV-02599-BLF, 2019 WL 5698072 (N.D. Cal. Nov. 4, 2019)......................1

*In re VeriFone Sec. Litig.*,
784 F. Supp. 1471 (N.D. Cal. 1992), *aff'd sub nom. Halkin v. Verifone Inc. (In re Verifone Sec. Litig.)*, 11 F.3d 865 (9th Cir. 1993)............................................15, 23

*Welgus v. TriNet Grp., Inc.*,
No. 15-CV-03625-BLF, 2017 WL 6466264 (N.D. Cal. Dec. 18, 2017)
(Freeman, J.), *aff'd*, 765 F. App'x 239 (9th Cir. 2019) ..............................................1

*In re Wet Seal, Inc. Sec. Litig.*,
518 F. Supp. 2d 1148 (C.D. Cal. 2007) ...................................................................16

## STATUTES

15 U.S.C.
§ 77k(a) .....................................................................................................................9
§ 77o..........................................................................................................................9
§ 78l(g).......................................................................................................................4
§ 78u-5(i)(1)...............................................................................................................9
§ 78u-5(c).............................................................................................................10, 13
§ 78u-5(c)(1) ...........................................................................................................11

## REGULATIONS

17 C.F.R.
§ 229.303..................................................................................................................23
§ 229.303(a)(3)(ii)....................................................................................................22
§ 229.503..................................................................................................................23
§ 229.503(c) .............................................................................................................22

CASE NO. 5:19-cv-05794-BLF
DEFENDANTS' JOINT MOTION TO DISMISS
AND SUPPORTING MEMORANDUM

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.    INTRODUCTION

This putative federal securities class action should be dismissed because Plaintiffs fail to plead any material false statement or omission of fact in DXC Technology Company's February 27, 2017 Registration Statement.  Ex. A (Registration Statement).[1]

DXC, a leading information technology ("IT") services company, was formed on April 1, 2017 following a series of transactions culminating in the merger of Computer Sciences Corporation ("CSC") and the enterprise services business ("ES") of HPE, involving Everett SpinCo, Inc. ("Everett") as a merger vehicle.  In order to effectuate the merger, DXC filed a Registration Statement to register 141 million shares of new common stock, which were distributed to CSC shareholders in exchange for their existing CSC shares.  The Registration Statement—totaling over 400 pages—contained detailed and voluminous information about the merger, the historical financial performance of CSC and ES, strategic plans for the merged entity, including a "workforce optimization" plan designed to streamline the new company and eliminate unnecessary costs, and numerous risks associated with the merger and investing in DXC.

The premise of the Complaint is that the Registration Statement misrepresented and omitted the risks associated with the merger.  But there is no dispute that the Registration Statement *disclosed* that after the merger there would be a "workforce optimization" resulting in substantial workforce reductions and concomitant cost cuts.  And there is no dispute that the workforce reductions and cost savings did in fact occur.  Indeed, DXC's workforce optimization plan

---

[1] The facts are taken from the Complaint and documents incorporated therein and, except as noted, are assumed true for purposes of this motion only.  Defendants hereby request that the Court take judicial notice of the documents listed as exhibits to the Declaration of Nada L. Boutros filed herewith, which include documents incorporated by reference in the Complaint, relevant SEC filings, and other documents of which this Court has taken judicial notice in similar cases.  *See Ronconi v. Larkin*, 253 F.3d 423, 427 (9th Cir. 2001) ("[W]e may . . . properly consider SEC filings incorporated by reference in the complaint."); *Veal v. LendingClub Corp.*, No. 18-CV-02599-BLF, 2019 WL 5698072, at *8 (N.D. Cal. Nov. 4, 2019) (Freeman, J.) ("Courts have taken judicial notice of documents on which complaints necessarily rely, publicly available financial documents such as SEC filings, and publicly available articles or other news releases of which the market was aware."); *Welgus v. TriNet Grp., Inc.*, No. 15-CV-03625-BLF, 2017 WL 6466264, at *5 (N.D. Cal. Dec. 18, 2017) (Freeman, J.) (taking judicial notice of "financial reports, press releases, and filings with the SEC, many of which were referenced by Plaintiff" in the operative complaint), *aff'd*, 765 F. App'x 239 (9th Cir. 2019).

produced undisputedly positive results in the Company's first year. The plan reduced DXC's costs by approximately $1 billion, consistent with the predictions DXC made in the Registration Statement, and the Company generated revenue and earnings that were praised by Wall Street and DXC's investors. In fact, it was not until two years after the merger, that the Company experienced unexpected business setbacks and encountered challenges in the execution of its plan. DXC promptly disclosed those setbacks and a resulting modest downward revision to its guidance to the market, and its stock price declined.

In the wake of the stock drop, and as is often the case, this lawsuit followed. Yet rather than claiming temporal misstatements relating to DXC's current fiscal year guidance, Plaintiffs attempt to cherry-pick a handful of statements from DXC's 2017 Registration Statement from years earlier and claim that it was somehow misleading. In so doing, Plaintiffs rely heavily on untested allegations made by a single former DXC executive, Stephen J. Hilton, in a separate and now-settled employment action he filed against DXC in February 2019. Hilton voluntarily dismissed his complaint in July 2019, only a few months after responding to DXC's counterclaims. But Hilton's allegations, which Plaintiffs admit they have not independently verified or corroborated, affirmatively undercut the very theory of falsity Plaintiffs offer here. Far from questioning the accuracy of any statement in the Registration Statement, Hilton says in his complaint that he agreed with the Company's workforce optimization plan and then executed it to remarkable success in DXC's first year. Hilton alleges that he took issue with the way certain aspects of the Company's plan were implemented, in what he describes as "moving the goal posts," *after the merger*, and claims he was unfairly terminated for failing to achieve an "aspirational" internal budget that was never the Company's actual workforce optimization plan. Those allegations—which are unsubstantiated in any event—cannot demonstrate that any statement *prior to the merger* was false when made. Nor are any of the other conclusory allegations in Plaintiffs' Complaint sufficient to establish a material false statement or omission under the federal securities laws, and the claims in Plaintiffs' Complaint fail for multiple reasons.

*First*, the Complaint relies improperly on statements that are categorically protected from liability by the safe harbor provision of the Private Securities Litigation Reform Act (the

"PSLRA") and under bedrock legal doctrines insulating subjective statements of opinion and vague expressions of corporate optimism. For example, Plaintiffs allege that DXC made a false statement when it said in the Registration Statement that it "*expects*" the merger "will produce first-year synergies of approximately $1.0 billion, with a run rate of $1.5 billion," which it further explained was based on "*estimating*" the "cost synergies *expected*" from the workforce optimization. Compl. ¶ 77 (emphasis added). It is well settled that such statements are both forward-looking (and thus protected by the PSLRA safe harbor) and opinion statements subject to the Supreme Court's test in *Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*, 575 U.S. 175 (2015), which Plaintiffs fail to meet. Further, Plaintiffs' allegations regarding DXC's statements that it expected "enormous" net synergies and an effective "turnaround plan" are not actionable because such statements constitute non-actionable puffery as a matter of law. In any event, it is an uncontested fact that DXC *did* achieve the very $1.0 billion in first-year synergies that the Registration Statement predicted, further demonstrating fatal flaws in Plaintiffs' theory of falsity.

*Second*, Plaintiffs do not identify any materially misleading omissions in the Registration Statement. Plaintiffs' omissions theory hinges largely on the allegation (which they borrow from the Hilton matter but badly mischaracterize) that DXC planned internally to reduce costs by $2.7 billion in its first year, as compared to the $1.5 billion in projected cost savings cited in the Registration Statement. But Plaintiffs offer no non-conclusory allegation that at the time of the merger, DXC actually had a different plan than it described in the Registration Statement. And the unverified Hilton allegations, if they can be considered at all in this action, confirm that there was no actual plan—neither at the time DXC filed its Registration Statement nor at any other point—to cut $2.7 billion in expenses in DXC's first year. It is further undisputed that DXC did *not* implement $2.7 billion in workforce or other expense reductions in its first year. Put differently, Plaintiffs pin their claims on a supposedly undisclosed "plan" that no one says was in place at the time of the Registration Statement and that unquestionably was never implemented in any event. That cannot support an omission-based claim under Section 11, and Plaintiffs' conclusory allegations of other purported omissions similarly fail as a matter of law.

CASE NO. 5:19-cv-05794-BLF
DEFENDANTS' JOINT MOTION TO DISMISS
AND SUPPORTING MEMORANDUM

*Third*, Plaintiffs' attempt to concoct violations of Items 303 and 503 of SEC Regulation S-K fails because those regulations require disclosure only where the issuer has knowledge of an adverse trend, and here Plaintiffs specifically disclaim any allegations of "knowing" conduct on Defendants' part. Compl. ¶ 100.

*Finally*, because Plaintiffs' Section 11 claims fail, so do their Section 15 claims. Accordingly, the Complaint should be dismissed in its entirety.

## II.    FACTUAL BACKGROUND

### A.    The Parties

Headquartered in Virginia, DXC is one of the largest independent end-to-end IT services companies in the world. Ex. B (2018 10-K) at 2-3. The Company was formed on April 1, 2017 following a series of transactions culminating in the merger of CSC and ES. Compl. ¶¶ 33, 37. To accomplish the merger, DXC registered approximately 141 million shares of common stock pursuant to a Registration Statement declared effective by the SEC on February 27, 2017. On April 1, 2017, DXC issued those newly registered shares to former shareholders of CSC, who tendered their CSC shares in connection with the merger.[2]

Defendant HPE is a global technology leader focused on developing intelligent solutions to assist customers in moving to cloud-based technology and to increase operational efficiency. *See* Compl. ¶ 33. HPE shareholders held a majority of pre-merger DXC's outstanding shares. Plaintiffs allege that certain HPE employees played a role in the preparation and review of the Registration Statement. *Id.*

Each of the Individual Defendants either signed the Registration Statement or was identified in the document as an incoming director of DXC. Compl. ¶¶ 16-28.

Plaintiffs are three individuals—Neil Costanzo, Ronald Jackson, and Ronald W. Fallness—who allegedly own a collective total of 13,437 shares of DXC common stock. No institutional investors sought appointment as lead plaintiff in this action. *See* Dkt. No. 20.

---

[2] Unlike the CSC shareholders, HPE's existing shareholders received DXC common stock through a Form-10. Ex. C (Everett SpinCo, Inc., Form-10). A Form-10 is a registration statement used to register a class of securities pursuant to Section 12(g) of the Securities Exchange Act of 1934. 15 U.S.C. § 78l(g).

**B.     The Registration Statement And DXC's Plan To Optimize Its Workforce**

The Registration Statement spans more than 400 pages and includes (among other things) detailed information regarding the transactions underlying DXC's formation, as well as prior financial performance of CSC and ES.  The Registration Statement also discusses the "*anticipated benefits*" of the merger, including the expectation that the new, combined company might "realize cost and revenue synergies, growth opportunities, and other financial and operating benefits as a result of the [merger]."  Ex. A at 33.  In particular, the Registration Statement predicted, in a statement clearly identified as forward-looking, that DXC as a whole would realize "first-year synergies of approximately $1.0 billion post-closing, with a run rate of $1.5 billion at the end of year one" following the merger.  *Id.* at 69.  To achieve those synergies, DXC planned to implement a "workforce optimization" plan designed in part to eliminate "duplicative roles and other duplicative general, administrative and overhead costs."  Compl. ¶ 2; Ex. A at 131.  Among other things, this initiative would "consolidate" roles in the Company to avoid redundancy, promote productivity, and ensure that costs were in line with the Company's goals.  Compl. ¶ 2; Ex. A at 131.

The Registration Statement warned investors that there was risk inherent in DXC's plan to derive synergies at the combined company, and that DXC might not achieve the anticipated benefits of the merger.  In particular, the Registration Statement warned:

> The combined company's success in realizing these benefits, and the timing of their realization, depends on the successful integration of the business operations of [the merging companies].  Even if [they] successfully integrate, [the merging companies] cannot predict with certainty if or when these cost and revenue synergies, growth opportunities and benefits will occur, or the extent to which they actually will be achieved. . . Realization of any benefits and synergies could be affected by a number of factors beyond . . . the combined company's control . . . ."

Ex. A at 33.  DXC also cautioned investors that it "may have difficulty attracting, motivating and retaining executives and other employees," and that its ability to "provide customers with competitive services is dependent on the ability of the combined company to attract and retain qualified personnel," which could not be assured.  *Id.* at 34, 42-43.

CASE NO. 5:19-cv-05794-BLF
DEFENDANTS' JOINT MOTION TO DISMISS
AND SUPPORTING MEMORANDUM

In addition to flagging integration risks, the Registration Statement discussed a number of industry challenges, including the "industry-wide shift to highly automated, asset-light delivery of IT infrastructure and applications leading to headcount consolidation." *Id.* at 45. DXC cautioned that if it was not successful in addressing those challenges, through cost reduction, winning new business, and improving execution, its "business and results of operations may be adversely affected." *Id.*

**C. DXC Successfully Implements Its Optimization Plan In The Company's First Fiscal Year**

In May 2018, DXC reported that during its first year of operation, the Company achieved $1.1 billion in cost savings and generated $24.5 billion in revenue with earnings per share of $6.04. Ex. D at 1-2. As even Plaintiffs admit, those results were "rewarded by Wall Street[.]" Compl. ¶ 63. Wall Street analysts also acknowledged DXC's accomplishments in spite of challenges that the Company faced during its first year, including "an inherent culture clash in executing a big cost takeout of labor while re-mixing to high-growth digital areas where the labor market is extremely tight." Ex. E at 3.

**D. More Than Two Years After The 2017 Merger, DXC Revises Its May 2019 Revenue Guidance**

On May 23, 2019, DXC announced financial results for its second fiscal year (ended March 31, 2019) and offered guidance for its third fiscal year, projecting revenue of between $20.7 and $21.2 billion. Compl. ¶ 69. On August 8, 2019, more than two years after publishing the Registration Statement, DXC issued a press release announcing a modest (roughly 4%) downward revision to that guidance, to a range of $20.2 billion to $20.7 billion. Ex. F. DXC explained that this revision was due to a transformation of its "traditional business as accelerated client migrations pressure near-term revenue," delays "on large deals," and challenges with "executing resources in high-cost complex countries." Ex. F at 3-5. Following this news, DXC's stock price declined by approximately 30%, to $35.91.

In September 2019, DXC's Chief Executive Officer ("CEO"), J. Michael Lawrie, retired, and DXC appointed a new CEO, Mike Salvino. Two months later, on November 11, 2019, the

Company announced that it was further revising its 2020 annual revenue guidance to a range of $19.5-$19.8 billion.  *See* Compl. ¶ 73.  As Chief Financial Officer Paul Saleh explained, these revisions reflected further "delays" in "several large deals," "recent delivery execution issues," and a lack of "revenue in [DXC's] traditional infrastructure and application business."  Ex. G at 4-5.  DXC's stock price closed at $35.25 on November 12, 2019.

### E.    Plaintiffs' Allegations

Plaintiffs allege that DXC's revisions to the Company's guidance in August and November *2019* revealed that DXC's *2017* Registration Statement contained false and misleading statements of material fact.  Specifically, Plaintiffs contend that DXC made false statements in the Registration Statement—filed more than two years earlier—when the Company said it (i) expected "first-year synergies of approximately $1.0 billion post-close, with a run rate of $1.5 billion by the end of year one;" (ii) calculated those projections by estimating (among other things) "cost synergies expected from workforce optimization;" and (iii) "must execute on its multi-year turnaround plan, which includes a cost reduction initiative to align costs with its revenue trajectory" in order to be successful in the future.  Compl. ¶ 77; Ex. A at 45, 69, 131.

Plaintiffs further allege that the Registration Statement contained false statements in *risk disclosures* warning (i) that DXC's ability "to grow and provide customers with competitive services is partially *dependent* on the ability of the combined company to attract and retain highly motivated people with the skills necessary" to serve DXC's customers; and (ii) that "if [DXC] does not hire, train, motivate and effectively utilize employees with the right mix of skills and experience in the right geographic regions to meet the needs of its clients, *its financial performance could suffer.*"  Compl. ¶ 79 (emphasis added); Ex. A at 42-43.

Lastly, Plaintiffs challenge as false DXC's expectation that "the size and scale of the combined company will enhance its ability to provide value to its customers through a broad range of resources and expertise to meet their needs."  Compl. ¶ 79; Ex. A at 69.

Plaintiffs assert, in conclusory fashion, that these 2017 statements of expectation, warning, and estimation were false and misleading when made because the Company allegedly "failed to disclose and/or misrepresented" a variety of "adverse facts" that allegedly "existed at the time of

the merger."  Compl. ¶¶ 78, 80.  Plaintiffs allege that such "facts" include that (i) the "workforce optimization" plan would "crippl[e] the Company's workforce infrastructure"; (ii) the Company "planned to jettison tens of thousands of employees on a destructively expeditious timeline"; and (iii) there were plans for "$2.7 billion of cost reductions in the first year."  *Id*.  Plaintiffs further contend that "these workforce reductions" rendered DXC unable to "attract and retain high-quality personnel," which "undermined its ability to deliver client services"; that "senior executives" voiced concerns over "targeted reductions," which would cause "massive damage to the Company's customer relationships"; and that "aggressive personnel cuts" would harm the Company's "client service delivery."  *Id*.

## III.    STANDARD OF LAW

"Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory."  *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Plausibility requires pleading facts, as opposed to conclusory allegations, *Twombly*, 550 U.S. at 555, and must rise above the mere conceivability or possibility of unlawful conduct that entitles the pleader to relief. *Iqbal*, 556 U.S. at 678-79.  "Factual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.

When the facts as pleaded in the complaint indicate that there are two alternative explanations, only one of which would result in liability, "plaintiffs cannot offer allegations that are merely consistent with their favored explanation but are also consistent with the alternative explanation.  Something more is needed, such as facts tending to exclude the possibility that the alternative explanation is true, in order to render plaintiffs' allegations plausible."  *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996-97 (9th Cir. 2014) (quoting *Petzchke v. Century Aluminum Co*. (*In re Century Aluminum Co. Sec. Litig.*), 729 F.3d 1104, 1108 (9th Cir. 2013)).

A court must consider the complaint in its entirety "as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

Plaintiffs here assert claims under Sections 11 and 15 of the Securities Act of 1933. *See* Compl. ¶¶ 100-16. Section 11 provides a private right of action for purchasers only if the relevant registration statement (1) "contained an untrue statement of a material fact," (2) "omitted to state a material fact required [by law] to be stated therein," or (3) "omitted to state a material fact … necessary to make the statements therein not misleading." 15 U.S.C. § 77k(a). Section 15 makes a "controlling person" liable for causing violations of Section 11. 15 U.S.C. § 77o.

## IV.    ARGUMENT

Plaintiffs' theory of falsity fails because their allegations do not establish that the Registration Statement contained any materially false statements or omissions, or that Defendants violated Items 303 or 503 of SEC Regulation S-K.

### A.    Plaintiffs Fail to Allege A Materially Misleading Statement Or Omission Under Section 11

The statements challenged in the Complaint are not actionable as a matter of law because they constitute protected forward-looking statements, immaterial puffery, and/or subjective opinion statements. Moreover, to the extent any of the alleged false statements are not categorically exempt from liability, the Complaint fails to identify any actual untrue statement of material fact or any omission of material fact required to be disclosed under Section 11.

#### 1.    Defendants' Forward-Looking Statements Are Not Actionable

The bulk of the statements Plaintiffs challenge are forward-looking, and the PSLRA's safe harbor provision therefore exempts them from liability under Section 11.

Forward-looking statements include, *inter alia*, "statement[s] containing a projection of . . . financial items," "plans and objectives of management for future operations," 15 U.S.C. § 78u-5(i)(1), and "the assumptions underlying or related to any of th[o]se issues," *Police Ret. Sys. v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1058 (9th Cir. 2014). A forward-looking statement is not

actionable (1) if it is couched in meaningful cautionary language, *or* (2) if the plaintiff fails to demonstrate that it was made with "actual knowledge" of falsity.  15 U.S.C. § 78u-5(c); *Onie v. Conners (In re Cutera Sec. Litig.)*, 610 F.3d 1103, 1113 (9th Cir. 2010) ("The logical reading of the statute is simply to take it as written—[it] offer[s] safe harbors for different categories of forward-looking statements."); *see also City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*, 2019 WL 6877195, at *9 (N.D. Cal. Dec. 17, 2019) ("PSLRA's Safe Harbor precludes liability for forward-looking statements in *either* of two circumstances." (emphasis added)).  As the Ninth Circuit has observed, the statutory protection for forward-looking statements reflects the principle that "[h]onest optimism followed by disappointment is not the same as lying or misleading with deliberate recklessness."  *Ronconi*, 253 F.3d at 432.

Here, Plaintiffs challenge several statements regarding DXC's projections of various financial items and plans for future operations that are "forward-looking on their face."  *Intuitive Surgical*, 759 F.3d at 1058.  For instance, the Complaint alleges that the Registration Statement, issued *before* the merger, included materially false statements regarding how DXC's workforce optimization strategy would affect DXC *after* the merger, including:

- "The combined company *expects* that the merger of Everett with CSC will produce first-year synergies of approximately $1.0 billion post-close, with a run rate of $1.5 billion by the end of year one.  The $1.0 billion post-close and $1.5 billion run rate at the end of year one were each calculated by *estimating* the expected value of harmonizing policies and benefits between the two companies, supply chain and procurement benefits from expected economies of scale such as volume discounts as well as cost synergies *expected* from workforce optimization such as elimination of duplicative roles and other duplicative general, administrative and overhead costs."  Compl. ¶ 77 (emphasis added).

- "[W]ith a collective workforce of approximately 178,000 employees, the size and scale of the combined company *will* enhance its ability to provide value to its customers through a broader range of resources and expertise to meet their needs."  *Id.* ¶ 79 (emphasis added).

This Court and others routinely deem such predictive statements forward-looking and not actionable.  *See, e.g.*, *Intuitive Surgical*, 759 F.3d at 1058 (finding that the statement that "we continue to expect *dVP* procedures to grow" was an inactionable forward-looking statement); *Fadia v. FireEye, Inc* No. 2:09-CV-00659-EJL, 2016 WL 6679806, at *12 (N.D. Cal. Nov. 14, 2016) (same regarding "expected benefits of the company's acquisition . . . and the expected capabilities and benefits of integrated and new products"); *Union Asset Mgmt. Holding AG v.*

*Sandisk Corp.*, 2016 WL 406283, at \*2 (N.D. Cal. Jan. 22, 2016) (same regarding "[w]e expect to generate synergies related to revenue, cost of goods sold, and expenses. . . . [T]he acquisition of Fusion-io will accelerate our ability to grow. . . ."); *City of Marysville Gen. Emps. Ret. Sys. v. Nighthawk Radiology Holdings, Inc.*, 2011 WL 4584778, at \*17 (D. Idaho Sep. 12, 2011) (same regarding "predictions about the success of its acquisitions and its ability to capitalize on new growth," "the benefits and integration of acquisitions," and "an outlook on the company's future financial results").

The forward-looking statements in the Complaint qualify for protection under both prongs of the PSLRA's safe harbor.

a.   The Registration Statement Contains Meaningful Cautionary Language

*First*, Defendants' forward-looking statements were appropriately couched in "cautionary" terms that, by itself, protect those statements from liability under the federal securities laws. *See* 15 U.S.C. § 78u-5(c)(1). "[F]orward-looking statements . . . accompanied by adequate cautionary language fall within the PSLRA safe harbor," *Cutera*, 610 F.3d at 1108, meaning "no liability may arise from them," *Golub v. Gigamon Inc.*, 372 F. Supp. 3d 1033, 1050 (N.D. Cal. 2019). Disclosing to investors that "[a]ctual results may differ materially from those expressed or implied, as a result of certain risks and uncertainties" is adequate cautionary language in the Ninth Circuit. *Intuitive Surgical*, 759 F.3d at 1059.

Here, the Registration Statement clearly identified statements regarding what the Company "anticipates," "believes," "estimates," "expects," "forecast[s]," "intends," "plans," "projects" and "targets" as forward-looking statements that "represent current expectations and beliefs." Ex. A at 54. It also cautioned that "no assurance can be given that the results described in such statements will be achieved," and specifically highlighted numerous "[i]mportant factors" outside of DXC's control "that could cause actual results to differ materially" from the Company's estimates. *Id.* The Registration Statement warned: "*No assurance can be given that any goal or plan set forth in any forward-looking statement can or will be achieved*, and readers are cautioned not to place

undue reliance on such statements, which speak only as of the date they are made." *Id.* at 55 (emphasis added).

The Registration Statement explicitly warned investors of the very risks that are alleged in the Complaint to have materialized years after the merger was complete:

- "The combined company's success in realizing [cost and revenue synergies, growth] benefits, and the timing of their realization, *depends on the successful integration of the business operations* of Everett with CSC." *Id.* at 33 (emphasis added).

- "CSC and Everett cannot predict with certainty if or when these cost and revenue synergies, growth opportunities and benefits will occur, or the extent to which they actually will be achieved." *Id.*

- "Realization of any benefits and synergies could be affected by a number of factors beyond CSC's, Everett's or the combined company's control." *Id.*

- "The amount of synergies actually realized in the Transactions . . . could differ materially from the expected synergies . . . regardless of whether the two business operations are combined successfully." *Id.*

- "*If the integration is unsuccessful or if the combined company is unable to realize the anticipated synergies and other benefits of the Transactions*, there could be a material adverse effect on the combined company's business, financial condition and results of operations." *Id.* (emphasis added).

The Registration Statement also warned investors that DXC may lose business because its ability to "provide customers with competitive services is dependent on the ability of the combined company to attract and retain qualified personnel." *Id.* at 42.  More specifically, the Registration Statement warned:

- "*The loss of personnel could impair the ability of the combined company to perform under certain contracts*, which could have a material adverse effect on the consolidated financial position, results of operations and cash flows of the combined company." *Id.* (emphasis added).

- "If the combined company does not hire, train, motivate and effectively utilize employees with the right mix of skills and experience in the right geographic regions to meet the needs of its clients, its financial performance could suffer." *Id.*

Courts in the Ninth Circuit consistently hold that cautionary language of the type found in the Registration Statement immunizes forward-looking statements of the kind complained of here. *See, e.g.*, *Intuitive Surgical*, 759 F.3d at 1059 ("Actual results may differ materially from those expressed or implied, as a result of certain risks and uncertainties"); *Cutera*, 610 F.3d at 1112 ("[T]hese prepared remarks contain forward-looking statements concerning future financial

performance and guidance . . . management may make additional forward-looking statements in response to questions, and . . . factors like Cutera's ability to continue increasing sales performance worldwide could cause variance in the results."); *Golub*, 372 F. Supp. 3d at 1049 ("Management Projections do not take into account any circumstances or events occurring after the date that they were prepared and do not give effect to the Merger. As a result, there can be no assurance that the Management Projections will be realized, and actual results may be materially better or worse than those contained in the Management Projections."); *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 880 F. Supp. 2d 1045, 1062 (N.D. Cal. 2012) (the "ability to develop, market, and sell products could be harmed if [the company is] unable to retain or hire key personnel.").

Plaintiffs' claims are foreclosed by this settled law.

b.  <u>Plaintiffs Have Not Pleaded That Defendants Had Actual Knowledge That Their Forward-Looking Statements Were False</u>

*Second*, and in any event, Plaintiffs' claims fail for the independent reason that Plaintiffs have not satisfied their heavy burden of alleging facts establishing that Defendants actually knew the forward-looking statements in the Registration Statement were false when made. *See* 15 U.S.C. § 78u-5(c); *Cutera*, 610 F.3d at 1113. To the contrary, Plaintiffs expressly disavow all such allegations in an effort to avoid triggering fraud-based pleading standards. *See, e.g.*, *In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 885 (9th Cir. 2012) ("[P]articularity requirements … apply to claims brought under section 11 when such claims are grounded in fraud."); Compl. ¶ 100 ("specifically disclaim[ing] any allegations that are based on fraud, recklessness or intentional misconduct."). But if Plaintiffs want to premise their case on forward-looking statements, they must allege "actual knowledge" of falsity—the highest degree of scienter—and plead their claims with particularity. Plaintiffs fall far short from doing so.

Plaintiffs suggest that, when the Registration Statement was filed, Mr. Lawrie had plans for $2.7 billion in cost reductions in DXC's first year, and that DXC somehow knew its workforce optimization plan would harm the Company. *See* Compl. ¶¶ 3, 5, 51-53, 78(b), 80(c). These allegations are conclusory at best. Moreover, it cannot be disputed that DXC actually achieved the $1 billion in post-close synergies that it forecasted in the Registration Statement, and its

CASE NO. 5:19-cv-05794-BLF
DEFENDANTS' JOINT MOTION TO DISMISS
AND SUPPORTING MEMORANDUM

workforce optimization plan was a success in year one (as even Hilton admits).  Ex. D at 1-2 (announcing financial results for its first (2018) fiscal year in May 2018, including more than $1.1 billion in cost savings); Ex. H ¶ 70.  It is axiomatic that an accurate prediction cannot have been knowingly false when made.  And as Plaintiffs expressly disclaim the very type of allegations required to establish actual knowledge of falsity, it fails to show that the forward-looking statements are actionable.  *See In re Deutsche Bank AG Sec. Litig.*, 2016 WL 4083429, at *17 (S.D.N.Y. July 25, 2016) ("Having disclaimed any allegations sounding in fraud or deception, plaintiffs' allegations did not give rise to a claim as a material misstatement."); *Maverick Fund, L.D.C. v. Comverse Tech., Inc.*, 801 F. Supp. 2d 41, 64 (E.D.N.Y. 2011) ("Furthermore, to the extent that plaintiffs argue that their negligent misrepresentation claim concerning the 2007 statements should be sustained because the defendants acted intentionally or recklessly, plaintiffs' complaint expressly disclaims any claim of fraud or intentional misconduct with regard to its negligent misrepresentation claim.").

Plaintiffs also fail to plead facts showing the Individual Defendants "knew what the [Complaint] says 'would' occur in what was then the future."  *Ronconi*, 253 F.3d at 430; *see Emp'rs Teamsters Local Nos. 175 & 505 Pension Tr. Fund v. Clorox Co.*, 353 F.3d 1125, 1134-35 (9th Cir. 2004) ("The statement alleged does not say, or strongly imply, that Sullivan knew in October 1998 that the acquisition would not add earnings per share.").[3]  None of the facts alleged in the Complaint contradict Defendants' challenged statements—much less show that Defendants had knowledge of those facts at the times the alleged misstatements were made.  Relatedly, the passage of more than two years between the date the Registration Statement was issued, on February 27, 2017, and the August 8, 2019 guidance revision that triggered this lawsuit further cuts against any indication that Defendants knew that statements in the Registration Statement were false when made.  *See In re Barrick Gold Corp. Sec. Litig.*, 341 F. Supp. 3d 358, 379 (S.D.N.Y. 2018) (noting that "any inference that defendants knew that" statements were false was

---

[3] This is particularly true with respect to Defendants Stonesifer, Cox, and Varma, who had no ongoing role after the merger and presumably would have no role in planning DXC's operations. Defendant Whitman is in a similar position as she left DXC's board *twenty* months before DXC announced that its operations had hit some setbacks causing it to revise down its guidance.

"undermined . . . by the fact that nine months" intervened between the statements and the relevant events.).

Plaintiffs rely heavily on Hilton's alleged warnings about the pace of DXC's cost cuts (*see, e.g.*, Compl. ¶¶ 50-63), but those allegations fail to establish that any statement in the Registration Statement was false when made. All of Hilton's supposed concerns relate to the execution of the Company's workforce optimization plan *post*-merger. Ex. H ¶¶ 65-70. Hilton himself states that the Company's first-year plan, as disclosed in the Registration Statement, was to reduce costs by $1 billion and that he achieved that plan. *Id*. ¶ 70. Contrary to Plaintiffs' suggestion, Hilton does not contend that DXC had a secret $2.7 billion cost reduction plan that the Company hid from investors while predicting cost savings of $1.0 billion. In fact, Hilton's complaint alleges the opposite: that DXC had no actual plan to cut $2.7 billion in costs; it was merely an aspirational target that Hilton thought could be achieved in later years; and that he was unfairly terminated for failing to achieve an aspirational target that executives at DXC understood to be a tool to generate "internal debate" at the Company, and not an actionable plan (much less an actionable plan that was in place at the time of the Registration Statement). *Id*. ¶¶ 67-69. Further, Hilton's complaint expressly acknowledges that Mr. Lawrie did not expect Hilton to meet the aspirational budgets prior to the merger, and that it was only after the merger closed that Mr. Lawrie started "moving the goal posts" and attempting to reduce his actual budget targets closer to the aspirational $2.7 billion, allegedly as a guise for terminating him for cause. *Id*. ¶¶ 42, 88.

Accordingly, Plaintiffs have failed to allege actual knowledge of falsity, and Defendants' forward-looking statements are not actionable for that independent reason.

### 2.     Plaintiffs Cannot State A Claim Based On Inactionable Puffery

Plaintiffs' attempt to rely on immaterial business puffery—*i.e.*, "vague statements of optimism" and "mildly optimistic, subjective assessment[s]"—also fails as a matter of law. *Cutera*, 610 F.3d at 1111. Such generalized statements, even if they turn out to be overly optimistic, cannot support a securities violation because "professional investors, and most amateur investors as well, know how to devalue the optimism of corporate executives." *Id.* (quoting *In re VeriFone Sec. Litig.*, 784 F. Supp. 1471, 1481 (N.D. Cal. 1992), *aff'd sub nom. Halkin v. Verifone*

*Inc. (In re Verifone Sec. Litig.)*, 11 F.3d 865 (9th Cir. 1993)).  That is, such statements are immaterial as a matter of law because no reasonable investor would rely on them.

*First*, Plaintiffs allege the Registration Statement falsely stated that DXC would generate enormous "net synergies" and "strategic and financial benefits."  Compl. ¶ 77.  In addition to the fact that these generalized optimistic statements proved true in DXC's first year, these statements qualify as inactionable puffery.  Indeed, as this Court and many others have held, "general statements in anticipation of synergies resulting from the merger . . . are not actionable."  *Jui-Yang Hong v. Extreme Networks, Inc.*, No., 2017 WL 1508991, at *12 (N.D. Cal. Apr. 27, 2017) (Freeman J.); *see, e.g.*, *In re Level 3 Commc'ns, Inc. Sec. Litig.*, 667 F.3d 1331, 1340 (10th Cir. 2012) ("The integration of all the acquired companies is progressing well and we're beginning to see the benefits of synergies from those transactions." (citation omitted)); *Oliver Wyman, Inc. v. Eielson*, 282 F. Supp. 3d 684, 702 (S.D.N.Y. 2017) (describing statement about "multiple synergies" as "generic and relative corporate platitudes" that "is nonactionable puffery"); *Albert Fadem Tr. v. Am. Elec. Power Co.*, 334 F. Supp. 2d 985, 1026 (S.D. Ohio 2004) ("the Company is on target to achieve projected 'synergies' and cost savings").

*Next*, Plaintiffs challenge the statement that DXC's "turn-around plan" included "a cost reduction initiative to align costs to its revenue trajectory" and "initiatives to improve execution in sales performance and accountability."  The Complaint is devoid of any facts showing that DXC did not have a plan that included these initiatives.  *See generally* Compl.  In any event, such vague descriptions of the Company's plans and focus areas likewise constitute inactionable puffery.  *See, e.g.*, *Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843, 854 (N.D. Cal. 2012) (vague and unspecified "statements about performance . . . constitute non-actionable puffery"); *In re Wet Seal, Inc. Sec. Litig.*, 518 F. Supp. 2d 1148, 1167-68 (C.D. Cal. 2007) (finding statement that company was "on track to deliver improved financial performance in the fall, in line with our turnaround plan" was puffery); *In re Kidder Peabody Sec. Litig.*, 10 F. Supp. 2d 398, 413 n.15 (S.D.N.Y. 1998) ("statements about [defendant's] 'culture,' 'cost controls,' 'integrity,' 'strategic planning,' and 'personal accountability' . . . amount to mere puffery"); *Plevy v. Haggerty*, 38 F. Supp. 2d

816, 827 (C.D. Cal. 1998) ("crisp execution" is "best described as hyperbole or corporate puffery").

*Finally*, Plaintiffs challenge statements indicating DXC will "attract and retain highly motivated people," "hire, train, motivate and effectively utilize employees with the right mix of skills and experience," to "enhance its ability to provide value to its customers through a broader range of resources and expertise." Compl. ¶ 79. Plaintiffs mischaracterize these statements— DXC made no such promises but rather *warned* investors about its potential inability to execute on the above. *See* Section IV.A.4. Moreover, even if DXC had made the statements Plaintiffs claim, such statements are puffery and thus cannot be actionable under the securities laws. *See, e.g., Phila. Fin. Mgmt. of S.F., LLC v. DJSP Enters., Inc.*, 572 F. App'x 713, 716 (11th Cir. 2014) ("'effective' staff training" inactionable); *Hertz Corp. v. Accenture LLP*, 2019 WL 5537997, at *5 (S.D.N.Y. Oct. 25, 2019) ("Accenture's representation that it housed . . .'[t]he best talent in the world,' along with its promise that it had 'the skills you need to win' and would 'put the right team on the ground [on] day one,' are quintessential examples of puffery."); *Bhatt v. Tech Data Corp.*, 2018 WL 6504375, at *4 (M.D. Fla. Dec. 11, 2018) ("ensur[ing] . . . a strong coverage model with the right skill sets employed" is "immaterial puffery").

Plaintiffs' puffery-based claims thus fail as a matter of law.

### 3. Defendants' Opinion Statements Are Not Actionable

Defendants' statements of expectation and other subjective assertions are not actionable for the independent reason that they are opinion statements, and the Complaint falls woefully short of satisfying the strict test for opinion liability under Section 11. *See Markette v. XOMA Corp.*, 2017 WL 4310759, at * 5 (N.D. Cal. 2017) ("There is no reasonable basis to read a statement of hopefulness, encouragement, or expectation as anything other than an opinion."). These include statements that DXC "expect[ed]" to achieve certain cost synergies, "estimat[ed]" the extent of certain benefits flowing from the workforce optimization plan, and believed its workforce would enhance its ability to provide value to customers. Compl. ¶¶ 77, 79.

As noted above, the allegations concerning opinion statements fall into two categories: (i) Plaintiffs fault statements in the Registration Statement concerning the synergies that could be

achieved through the merger, and the potential impact of management's turnaround plan, *see* Compl. ¶ 77; and (ii) Plaintiffs allege that opinion statements concerning the effectiveness of the merged company's hiring practices were false and misleading, *id*. ¶ 79.  *See* Section II.E. Plaintiffs' allegations of false opinion statements fail to state a claim under either the untrue statement or omission prong of Section 11.  As the United States Supreme Court has explained, a plaintiff must follow one of two paths to state a claim for relief under Section 11 based on an opinion statement.  *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175 (2015).  To allege that an opinion contains an untrue statement of fact, Plaintiffs must demonstrate that the "speaker d[id] not honestly hold the stated belief and the belief is objectively incorrect." *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 615 (9th Cir. 2017) (citing *Omnicare*, 575 U.S. at 193-94).  To assert a claim under the material omission prong of Section 11, Plaintiffs must "identify particular (and material) facts going to the basis for the issuer's opinion—facts about the inquiry the issuer did or did not conduct or the knowledge it did or did not have—whose omission makes the opinion statement at issue misleading to a reasonable person reading the statement fairly and in context." *Omnicare*, 575 U.S. at 194.  Meeting this pleading burden is "no small task," *id.*, and Plaintiffs have failed to do so.

*First*, Plaintiffs have not shown that the opinions in the Registration Statement contained an untrue statement of material fact because they do not (and cannot) allege that Defendants disbelieved the opinion statements in the Registration Statement.  *See Align Tech., Inc.*, 856 F.3d at 615.  For example, the Complaint is devoid of allegations that Defendants did not actually believe they could achieve the synergies described in the Registration Statement, and in fact DXC actually met those goals. *See supra* Section II.  Nor are there any allegations that Defendants knew DXC would not be able to attract employees in the manner described in the Registration Statement.

*Second*, Plaintiffs fail under the omissions prong because they have not adequately alleged (nor could they) that Defendants omitted material information regarding the basis for their opinions. *See Omnicare*, 575 U.S. at 194.  As discussed in more detail below, Plaintiffs' omissions

theory is based entirely on untested allegations in an unrelated lawsuit.  *See infra* Section IV.B.4. Such allegations cannot support a claim for relief under Section 11.  *Id.*

### 4.    DXC's Risk Disclosures Are Not Actionable

Plaintiffs allege that the Registration Statement falsely represented that DXC "could 'attract and retain highly motivated people with the skills necessary to serve their customers,'" and that DXC would continue to "hire, train, motivate and effectively utilize employees with the right mix of skills and experience to meet the needs of its clients.'"  Compl. ¶ 79.  But Plaintiffs' partial (and misleading) quotation from the Registration Statement omits the fact that these alleged misstatements are actually part of DXC's *risk disclosures*, and they explicitly cautioned that the outcome of DXC's planned employee hiring and retention efforts was uncertain:

- "If the combined company *does not* hire, train, motivate and effectively utilize employees with the right mix of skills and experience in the right geographic regions to meet the needs of its clients, its financial performance could suffer."
- "The ability of the combined company to grow and provide customers with competitive services is partially *dependent on the ability* of the combined company to attract and retain highly motivated people with the skills necessary to serve their customers."

Ex. A at 42-43 (emphasis added).

Plaintiffs' selective quotation of the above disclosures alone is sufficient to reject the theory that these statements can support a claim under the federal securities laws.  *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (examining entirety of cited documents prevents "plaintiff[s] [from] maintain[ing] a claim of fraud by extracting an isolated statement from a document and placing it in the complaint"); *Sturm v. Marriott Marquis Corp.*, 85 F. Supp. 2d 1356, 1366 (N.D. Ga. 2000) ("The district courts cannot fulfill their gatekeeping role if plaintiffs are  free  to quote selectively or  out  of context from  documents  that  they  rely upon. . . .").

Moreover, the prospective nature of the risk factors renders them inactionable in light of Plaintiffs' theory of liability, which is based on conduct that occurred after the transaction closed. Numerous courts have found that risk factors are not actionable because they warn of future events and do not attempt to describe current events at the company.  *See, e.g.*, *Bondali v. Yum! Brands, Inc.*, 620 F. App'x. 483, 491 (6th Cir. 2015); *In re ChannelAdvisor Corp. Sec. Litig.*, 2016 WL

CASE NO. 5:19-cv-05794-BLF
DEFENDANTS' JOINT MOTION TO DISMISS
AND SUPPORTING MEMORANDUM

1381772, at *5 (E.D.N.C. Apr. 6, 2016), *aff'd sub nom. Dice v. ChannelAdvisor Corp.*, 671 F. App'x. 111 (4th Cir. 2016); *Cody v. Conformis, Inc.*, 199 F. Supp. 3d 409, 417 & n.5 (D. Mass. 2016). The Complaint provides no basis for the Court to reach the rare conclusion that DXC's risk factor disclosures were misleading, and there is none. *In re FBR Inc. Sec. Litig.*, 544 F. Supp. 2d 346, 360-63 (S.D.N.Y. 2008) (finding that risk factors could be actionable only if the risk had materialized or a reasonable investor could have been misled by the risk). Plaintiffs make no attempt to plead that risks arising from workforce cuts had occurred because those cuts did not even begin until after the transaction closed, nor could risks regarding DXC's ability to hire and retain talented employees have materialized as of the time of the Registration Statement because DXC did not even exist before the transaction closed. Further, Plaintiffs do not and cannot explain how DXC misled investors by cautioning them about the potential adverse consequences in the event the Company was not able to attract and retain employees with the right skills.

### 5. In Any Event, Plaintiffs Fail To Allege That Any Of The Challenged Statements Were False Or Misleading

Even setting aside the multiple obstacles barring Plaintiffs' claims as a matter of law, the Complaint separately fails for the simple reason that it is devoid of contemporaneous facts demonstrating that any challenged statement was false when made—or that Defendants omitted facts they were required to disclose. The Supreme Court has emphasized that the omissions prong of Section 11 "is not a general disclosure requirement; it affords a cause of action only when an issuer's failure to include a material fact has rendered a published statement misleading." *Omnicare*, 575 U.S. at 194. And an omitted fact is material only where "a reasonable investor would have viewed the nondisclosed information as having *significantly* altered the total mix of information made available." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44 (2011) (internal quotation marks omitted).

Plaintiffs' laundry list of so-called "adverse facts" comes nowhere close to meeting this standard. First, Plaintiffs offer nothing more than conclusory assertions to support the absurd notion that positive statements in the Registration Statement were misleading because the Company actually intended to cripple itself with its restructuring plan. Compl. ¶¶ 78 (a, b, c, e),

80 (a, b, d).  For example, Plaintiffs assert that the Registration Statement's indication that the Company could "produce first-year synergies of approximately $1.0 billion post-close" from the implementation of its "workforce optimization" was false and misleading because "the so-called 'workforce optimization' highlighted in the Registration Statement involved crippling the Company's workforce infrastructure," Compl. ¶ 78(a), and because "DXC planned to jettison tens of thousands of employees on a destructively expeditious timeline," *id*. ¶ 78(b).  Plaintiffs do not cite any actual facts to support this outlandish theory, and the Court need not credit the Complaint's bald conclusions.  *Iqbal*, 556 U.S. at 678 ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'").

As a further example of Plaintiffs' failure adequately to plead the factual basis for these claims, Plaintiffs assert that that same statement was false and misleading because "Defendant Lawrie had plans for $2.7 billion of cost reductions in the first year, nearly double the $1.5 billion run rate savings target that was made public."  Compl. ¶ 78(d).  However, the Hilton Complaint makes clear that reducing costs by $2.7 billion was not in fact DXC's first-year plan.  Ex. H ¶¶ 67-69.

The remaining "adverse facts" merely repeat—out of context—the untested allegations of Hilton's unrelated employment dispute. Compl. ¶¶ 78(d & f), 80(c).  As an initial matter, Plaintiffs cannot blindly parrot allegations by another party in another lawsuit—none of which Plaintiffs themselves have independently validated (or even attempted to confirm)—to support their claim.  But even if the Court determines to consider these allegations, they do not demonstrate any actionable omissions by Defendants because they relate to alleged events that occurred *after* the merger, not events that existed at the time of the merger.[4]  Plaintiffs' cite "concerns" that Hilton purportedly expressed regarding the pace of DXC's cuts during the first year, and that Hilton became frustrated when Mr. Lawrie allegedly "mov[ed] the goal posts" after the merger, such as

---

[4] And here, Hilton alleges that he agreed with the Company's actual workforce optimization plan and "faithfully" executed it during DXC's first year.  Compl. ¶¶ 51, 56.

when Mr. Lawrie allegedly gave Hilton one set of cost reduction targets in *September/October 2017* and increased those targets two weeks later. *See* Compl. ¶¶ 87-89.

Even if internal disagreement or concerns existed *at the time of the Registration Statement*—which Plaintiffs have not alleged with reference to any specific facts—courts in the Ninth Circuit have held that such disagreements are immaterial as a matter of law and need not be disclosed. *See Hanrahan v. Hewlett Packard Co.*, 2006 WL 1699573, at *4 (N.D. Cal. June 16, 2006) ("[D]isclosure of the business strategy supported by the majority of the Board did not obligate defendants also to disclose the fact that [the CEO]—a distinct minority of a multi-member Board—opposed that strategy.") (quoting *Cooperman v. Individual, Inc.*, 171 F.3d 43, 51-52 (1st Cir. 1999)); *see also Kane v. Madge Networks N.V.*, 2000 WL 33208116, at *9 (N.D. Cal. 2000) ("[G]eneral positive statements do not give rise to a duty to disclose the details of internal corporate disputes."). To the extent that Plaintiffs' theory is that "workforce optimization" and cost cuts crippled DXC, they are non-actionable claims for mismanagement based upon internal disagreements about how to run the merged entity. *See, e.g.*, *Hanrahan*, 2006 WL 1699573, at *4. Companies have no duty to disparage their management decisions. *See, e.g.*, *Allstate Life Ins. Co. v. Robert W. Baird & Co.,* 756 F. Supp. 2d 1113, 1131 (D. Ariz. 2010) ("There simply is no per se rule requiring companies to disclose every internal disagreement that occurs in the course of a company's decision-making process."); *In re Syntex Corp. Sec. Litig.*, 1993 WL 476646, at *7 (N.D. Cal. Sept. 1, 1993) ("A company has no duty to disparage its own competitive position in the market where it has provided accurate hard data from which analysts and investors can draw their own conclusions about the company's condition and the value of its stock.").

## B.     Plaintiffs Fail To Plead Violations Of Items 303 Or 503

Plaintiffs also allege that the Registration Statement failed to disclose certain information that Defendants were required to include under Items 303 and/or 503(c) of SEC Regulation S-K. *See* Compl. ¶¶ 83-91. Those provisions, respectively, require disclosure of (1) "known trends or uncertainties that have had or the registrant reasonably expects will have a material favorable or unfavorable impact on net sales or, revenues or income from continuing operations," and (2) "risk factors" sufficient to warn investors as to the most significant factors that make an offering

speculative or risky. 17 C.F.R. §§ 229.303(a)(3)(ii), 229.503(c). But because Plaintiffs have not pled that any material impact was likely to result at the time of the Registration Statement's filing from the purported "trends" Defendants allegedly failed to disclose, these allegations fail. *See In re Restoration Robotics, Inc. Sec. Litig.*, 2019 WL 5295059, at *15 (N.D. Cal. Oct 18, 2019) (granting motion to dismiss where "[p]laintiff's [c]omplaint does not demonstrate that a material impact from any such warehousing trend was 'reasonably likely to occur' at the time of the IPO.").

As noted above, Plaintiffs rely exclusively on subjective concerns that one former employee supposedly raised internally months—and even years—*after* the merger was completed and only after the company "moved the goal posts" on him. Compl. ¶ 87. As a matter of common sense, however, the allegation that an employee *later* voiced concerns about newly articulated goals cannot demonstrate that those concerns were likely to materialize at the time the earlier-filed Registration Statement became effective. *See Rubke v. Capitol Bancorp, Ltd.*, 551 F.3d at 1156, 1164 (9th Cir. 2009) ("A claim under [S]ection 11 based on the omission of information must demonstrate that the omitted information existed at the time the registration statement became effective.").

Finally, Plaintiffs' own allegations preclude their use of Items 303 or 503 to state a claim. Under those regulations, "[t]he law is clear that what must be disclosed are material 'known trends' or 'uncertainties,' or the 'most significant' risk factors with respect to an offering, which are known to the offering company at the time the registration statements are made." *Panther Partners, Inc. v. Ikanos Commc'ns, Inc.*, 538 F. Supp. 2d 662, 669 (S.D.N.Y. 2008) (citing 17 C.F.R. §§ 229.303 and 229.503). "The critical inquiry for the Court, then, is whether—and to what extent—[the issuer] was aware of the issues and their potential impacts at the time of the offering statements." *Id*.; *see also Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1297-98 (9th Cir. 1998) (holding that Item 303 "mandates not only knowledge of an adverse trend . . . and material impact . . . but also that the future material impacts are *reasonably likely to occur* from the present-day perspective"); *In re VeriFone Sec. Litig.*, 784 F. Supp. 1471, 1483 (N.D. Cal. 1992) (Item 303(a)(3)(ii) "does not provide a basis of liability where a corporation fails to 'disclose' the future."). Here, however, Plaintiffs have "specifically disclaim[ed] any allegations that are based on fraud, recklessness, or

intentional misconduct." Compl. ¶ 100. And that concession—which inherently disclaims any knowledge on Defendants' part of material misstatements or omissions—is dispositive. As Items 303 and 503 both require Plaintiffs to plead the very knowledge they disclaim, Plaintiffs have failed to plead violations of those provisions.

## C.    Plaintiffs Fail To State A Claim Under Section 15

Because Plaintiffs have failed to state a viable claim under Section 11, Plaintiffs' Section 15 claim fails and must similarly be dismissed. *See In re Rigel Pharm.*, 697 F.3d at 886 ("[S]ection 15 . . . require[s] underlying primary violations of the securities laws. Because Plaintiff[s] here ha[ve] failed to adequately plead a violation of the federal securities laws, it follows that Plaintiff[s] also ha[ve] failed to adequately plead violations of . . . [S]ection 15."); *see also Greenberg v. Sunrun Inc.*, 233 F. Supp. 3d 764, 772 (N.D. Cal. 2017) ("[T]o state a claim . . . under Section 15, Plaintiffs must plausibly allege . . . an underlying violation of Section 11 or 12 . . . . ").

## V.    CONCLUSION

Defendants respectfully request that the Court dismiss the Complaint in its entirety.

Dated:  February 24, 2020                    Respectfully submitted,

                                             LATHAM & WATKINS LLP

                                             By: */s/ Jamie L. Wine*
                                                 Jamie L. Wine (Bar No. 181373)
                                                 Kevin McDonough (*pro hac vice*)
                                                 885 Third Avenue
                                                 New York, New York, 10022-4834
                                                 T:  +1.212.906.1200 / F:  +1.212.906.1200
                                                 jamie.wine@lw.com
                                                 kevin.mcdonough@lw.com

                                                 Stephen P. Barry (*pro hac vice*)
                                                 555 Eleventh Street, NW, Suite 1000
                                                 Washington, D.C.  20004
                                                 T: +1.202.637.2200 / F: +1.202.637.2201
                                                 stephen.barry@lw.com

CASE NO. 5:19-cv-05794-BLF
DEFENDANTS' JOINT MOTION TO DISMISS
AND SUPPORTING MEMORANDUM

Nada L. Boutros (Bar No. 287163)
505 Montgomery Street, Suite 2000
San Francisco, CA  94111
T: +1.415.391.0600 / F: +1.415.395.8095
nada.boutros@lw.com

*Attorneys for Defendants DXC Technology Company, Mukesh Aghi, Amy E. Alving, David Herzog, Sachin Lawande, J. Michael Lawrie, Julio A. Portalatin, Peter Rutland, Manoj P. Singh, and Robert F. Woods*

Dated:  February 24, 2020

WILSON SONSINI GOODRICH & ROSATI

By:  */s/ Steven M. Schatz*
Steven M. Schatz (Bar No. 118356)
Benjamin J. Tolman (Bar No. 301942)
Douglas W. McManaway (Bar No. 317067)
650 Page Mill Road
Palo Alto, CA 94304-1050
T: +1.650.493.9300 / F: +1.650.565.5100
sschatz@wsgr.com
btolman@wsgr.com
dmcmanaway@wsgr.com

Katherine L. Henderson (Bar No. 242676)
One Market Street
Spear Tower, Suite 3300
San Francisco, CA 94105-1126
T: +1.415.947.2000 / F: +1.415.947.2099
khenderson@wsgr.com

Dated:  February 24, 2020

MORGAN, LEWIS & BOCKIUS LLP

By: */s/ Joseph E. Floren*
Joseph E. Floren (Bar No. 168292)
One Market, Spear Street Tower
San Francisco, CA 94105
T: +1.415.442.1391 / F: +1.415.442.1001
joseph.floren@morganlewis.com

Marc J. Sonnenfeld (*pro hac vice to be filed*)
Laura H. McNally (*pro hac vice to be filed*)
Karen Pieslak Pohlmann (*pro hac vice to be filed*)
1701 Market Street
Philadelphia, PA 19103-2921
T: +1.215.963.5000 / F: +1.215.963.5001
marc.sonnenfeld@morganlewis.com
laura.mcnally@morganlewis.com

karen.pohlmann@morganlewis.com

*Attorneys for Defendants*
*Hewlett Packard Enterprise Company, Rishi Varma, Timothy C. Stonesifer, Jeremy K. Cox, and Margaret C. Whitman*

## ATTESTATION

I, Jamie L. Wine, am the ECF user whose ID and password are being used to file Defendants' Notice of Motion and Joint Motion to Dismiss the Amended Complaint and Supporting Memorandum of Points and Authorities.  In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that concurrence in the filing of this document has been obtained from each of the other Signatories.

Dated:  February 24, 2020            */s/ Jamie L. Wine*
                                     Jamie L. Wine

CASE NO. 5:19-cv-05794-BLF
DEFENDANTS' JOINT MOTION TO DISMISS
AND SUPPORTING MEMORANDUM