LATHAM & WATKINS LLP
Jamie L. Wine (Bar No. 181373)
 *jamie.wine@lw.com*
Kevin McDonough (*pro hac vice*)
 *kevin.mcdonough@lw.com*
 885 Third Avenue
 New York, New York, 10022-4834
 T:  +1.212.906.1200 / F: +1.212.906.1200

Stephen P. Barry (*pro hac vice*)
 *stephen.barry@lw.com*
 555 Eleventh Street, NW, Suite 1000
 Washington, D.C.  20004
 T: +1.202.637.2200 / F: +1.202.637.2201

Nada L. Boutros (Bar No. 287163)
 *nada.boutros@lw.com*
 505 Montgomery Street, Suite 2000
 San Francisco, CA  94111
 T: +1.415.391.0600 / F: +1.415.395.8095

*Attorneys for Defendants DXC Technology Company,*
*Mukesh Aghi, Amy E. Alving, David Herzog, Sachin*
*Lawande, J. Michael Lawrie, Julio A. Portalatin,*
*Peter Rutland, Manoj P. Singh, and Robert F. Woods*

*Additional counsel of record listed on signature page*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA,

### SAN JOSE DIVISION

| | |
|---|---|
| NEIL COSTANZO, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>DXC TECHNOLOGY COMPANY, HEWLETT PACKARD ENTERPRISE COMPANY, RISHI VARMA, TIMOTHY C. STONESIFER, JEREMY K. COX, MUKESH AGHI, AMY E. ALVING, DAVID HERZOG, SACHIN LAWANDE, J. MICHAEL LAWRIE, JULIO A. PORTALATIN, PETER RUTLAND, MANOJ P. SINGH, MARGARET C. WHITMAN, and ROBERT F. WOODS,<br><br>Defendants. | CASE NO. 5:19-CV-05794-BLF<br><br>**DEFENDANTS' REPLY IN SUPPORT OF THEIR JOINT MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**<br><br>Date:     April 29, 2021<br>Time:    9:00 a.m.<br>Place:   Courtroom 3, 5th Floor<br>Judge:    Hon. Beth Labson Freeman |

**TABLE OF CONTENTS**

|  |  | **Page** |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | PLAINTIFFS STILL DO NOT ALLEGE THAT DXC ACTUALLY CUT MORE COSTS THAN IT PROJECTED, AND THEY CONCEDE THAT THE ALLEGED $2.7 BILLION TARGET WAS A MERE "GOAL" | 2 |
| III. | PLAINTIFFS FAIL TO OVERCOME THIS COURT'S PRIOR HOLDING THAT NUMEROUS STATEMENTS ARE INACTIONABLE AS A MATTER OF LAW | 5 |
|  | A.   As The Court Already Held, The Safe Harbor Applies | 6 |
|  | B.   Plaintiffs Cannot State Claims Based On Puffery | 8 |
|  | C.   Plaintiffs Cannot State Claims Based On Opinion Statements | 10 |
| IV. | PLAINTIFFS FAIL TO PLEAD VIOLATIONS OF ITEMS 303 AND 503 | 11 |
| V. | PLAINTIFFS' SECTION 15 CLAIM MUST BE DISMISSED | 13 |
| VI. | THE SECOND AMENDED COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE | 13 |
| VII. | CONCLUSION | 14 |

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Backe v. Novatel Wireless, Inc.*,
642 F. Supp. 2d 1169 (S.D. Cal. 2009)......................................................................................9

*Barry v. Wells Fargo Home Mortg.*,
2017 WL 1133516 (N.D. Cal. Mar. 27, 2017)..........................................................................13

*In re Century Aluminum Co. Sec. Litig.*,
729 F.3d 1104 (9th Cir. 2013) ...................................................................................................5

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
856 F.3d 605 (9th Cir. 2017) ...................................................................................................10

*Costanzo v. DXC Tech. Co.*,
2020 WL 4284838 (N.D. Cal. July 27, 2020)..................................................................... *passim*

*Diamond S.J. Enter. v. City of San Jose*,
2018 WL 5619746 (N.D. Cal. Oct. 29, 2018)............................................................................3

*Dinan v. SanDisk LLC*,
2020 WL 364277 (N.D. Cal. Jan. 22, 2020)............................................................................13

*In re Dura Pharmaceuticals, Inc. Securities Litigation*,
548 F. Supp. 2d 1126 (S.D. Cal. 2008)......................................................................................9

*In re Extreme Networks, Inc. Sec. Litig.*,
2018 WL 1411129 (N.D. Cal. Mar. 21, 2018)...........................................................................8

*Gerneth v. Chiasma, Inc.*,
2018 WL 935418 (D. Mass. Feb. 15, 2018) ............................................................................12

*Golub v. Gigamon Inc.*,
372 F. Supp. 3d 1033 (N.D. Cal. 2019) .....................................................................................6

*In re Immune Response Securities Litigation*,
375 F. Supp. 2d 983 (S.D. Cal. 2005)........................................................................................9

*In re InfoSonics Corp. Securities Litigation*,
2007 WL 2301757 (S.D. Cal. Aug. 7, 2007) .............................................................................9

*Markette v. XOMA Corp.*,
2017 WL 4310759 (N.D. Cal. Sep. 28, 2017) .........................................................................10

*Marsh Grp. v. Prime Retail, Inc.*,
46 F. App'x 140 (4th Cir. 2002) .................................................................................................6

*Panther Partners, Inc. v. Ikanos Commc'ns, Inc.*,
    538 F. Supp. 2d 662 (S.D.N.Y. 2008)................................................................12

*Police Ret. Sys. of St. Louis v. Intuitive Surgical*,
    759 F.3d 1051 (9th Cir. 2014) ........................................................................6

*Prodanova v. H.C. Wainwright & Co., LLC*,
    2018 WL 8017791 (C.D. Cal. Dec. 11, 2018) ................................................6, 7

*In re Rigel Pharm., Inc. Sec. Litig.*,
    697 F.3d 869 (9th Cir. 2012) ........................................................................13

*In re Sanofi Sec. Litig.*,
    87 F. Supp. 3d 510 (S.D.N.Y. 2015)..............................................................10

*See In re Restoration Robotics, Inc. Sec. Litig.*,
    417 F. Supp. 3d 1242 (N.D. Cal. Oct. 18, 2019) ............................................12

*SriCom, Inc. v. EbisLogic, Inc.*,
    2012 WL 4051222 (N.D. Cal. Sept. 13, 2012) ..................................................3

*In re Time Warner, Inc. Securities Litigation*,
    9 F.3d 259 (2d Cir. 1993) ............................................................................11

*Webb v. Solarcity Corp.*,
    884 F.3d 844 (9th Cir. 2018) ..........................................................................3

**STATUTES**

15 U.S.C. § 78u-5(i)(1)(A) ..................................................................................7

**OTHER AUTHORITIES**

Statement of Comm'n Regarding Disclosure of Year 2000 Issues &
    Consequences by Pub. Cos., Inv. Adv., Inv. Cos., & Mun. Sec. Issuers, SEC
    Release No. 1149 (July 29, 1998)....................................................................12

CASE NO. 5:19-cv-05794-BLF
DEFENDANTS' REPLY ISO
JOINT MOTION TO DISMISS

## I.    INTRODUCTION[1]

Plaintiffs have no answer for the central—and fatal—flaw in the Second Amended Complaint.  While they continue to attack the prediction in DXC's February 2017 Registration Statement that the Company would reduce its operational costs by $1 billion in the first year following the merger of HPES and CSC, Plaintiffs do not (and cannot) point to a single allegation of fact that DXC *actually* "cut any more cost than it said it would in the *first year*," which is "the only year that is relevant."  Dkt. No. 75 (*Costanzo v. DXC Tech. Co.*, 2020 WL 4284838, at *6 (N.D. Cal. July 27, 2020)) (the "Dismissal Order").  As the Court's Dismissal Order makes clear, this pleading deficiency defeats Plaintiffs' claim that Defendants' prediction was materially false.

Unable to plead that DXC cut more costs in the first year than it told investors it would, Plaintiffs resort to a game of semantics.  They argue that Mr. Lawrie's "$2.7 billion target" was not "simply 'aspirational,'" as this Court characterized it previously, but rather "serious"—"an actual, operational objective."  Opp. at 1, 4; *see also* Second Am. Compl. ¶¶ 6, 80.  That argument entirely misses the point.  In dismissing the First Amended Complaint, this Court already accepted "that Plaintiffs ha[d] sufficiently pled that there was *an internal goal* at DXC to cut $2.7 [billion] in costs at the time the Registration Statement was issued."  *Costanzo*, 2020 WL 4284838, at *6 (emphasis added).  Plaintiffs' insistence that Mr. Lawrie's alleged aim was "a real goal" is thus irrelevant. Opp. at 1.  The bottom line is that the sparse allegations added to the Second Amended Complaint still cannot demonstrate as a pleading matter that DXC was "secretly cutting more" than $1 billion in costs or that the Company "actually achieved" anywhere close to $2.7 billion in savings in that first year.  *Costanzo*, 2020 WL 4284838, at *6.

Further, Plaintiffs concede that the Second Amended Complaint challenges the exact same statements alleged in the First Amended Complaint—most of which this Court held were inactionable as forward-looking, puffery, and opinions.  Nothing in the Opposition justifies disturbing the Court's well-supported holdings as to those statements.  Plaintiffs' failure to state a

---

[1] Capitalized terms herein have the same meaning as in Defendants' Joint Motion to Dismiss the Second Amended Complaint and Supporting Memorandum (Dkt. No. 79, filed Nov. 12, 2020) ("Defs.' Br."), and "Ex." refers to an exhibit to the Declaration of Nada L. Boutros (Dkt. No. 40, filed Feb. 24, 2020).

CASE NO. 5:19-cv-05794-BLF
DEFENDANTS' REPLY ISO
JOINT MOTION TO DISMISS

claim despite two bites at the apple (and three complaints in total) makes clear that further amendment would be futile.  Accordingly, the Second Amended Complaint should be dismissed with prejudice.

## II.    PLAINTIFFS STILL DO NOT ALLEGE THAT DXC ACTUALLY CUT MORE COSTS THAN IT PROJECTED, AND THEY CONCEDE THAT THE ALLEGED $2.7 BILLION TARGET WAS A MERE "GOAL"

In dismissing the First Amended Complaint, the Court observed that, "[i]mportantly, there are no allegations in the Complaint that DXC actually achieved this alleged [$2.7 billion] internal target or cut costs in excess of the disclosed $1 billion."  *Costanzo*, 2020 WL 4284838, at *6.  There are no such allegations in the Second Amended Complaint either (nor could there be), and Plaintiffs do not say otherwise in their Opposition.  This basic pleading deficiency is dispositive of Plaintiffs' claims.

Plaintiffs try in vain to overcome that defect by arguing that the thirteen paragraphs of confidential witness allegations they added to the Second Amended Complaint transform what the Court held was "an internal goal at DXC to cut $2.7 [billion] in costs" to something more serious and concrete.  *Id.* (finding Plaintiffs "failed to sufficiently allege that this goal was anything more than an aspirational internal target or that it was actually achieved (or was even meant to be achieved)").  But as the Opposition reveals, Plaintiffs' attempt to avoid dismissal rests entirely on the allegations of CW1; Plaintiffs tellingly mention CW2 and CW3 only in passing in the Opposition, and neither anonymous witness describes an internal budget for DXC's first year post-Merger, let alone alleges that DXC cut more costs than the Registration Statement projected.  *See* Defs.' Br. at 8, 10-12; Second Am. Compl. ¶¶ 83–88; Opp. at 5, 14.  CW1's allegations fail to establish that DXC's Registration Statement contained materially false statements or omissions.

*First*, Plaintiffs attempt (improperly) to amend their pleading via the Opposition by asserting that "[a]s a Senior Vice President throughout this time period, CW1 attended numerous Operational Committee meetings and not just the four meetings in 2017 listed in the SAC."  Opp. at 2.  The paragraph they cite in support contains only a generic reference to CW1's alleged attendance at "[r]egular meetings of the executive Operations Committee," Second Am. Compl. ¶ 79, and the Second Amended Complaint subsequently clarifies that "CW1 attended . . . meetings

on" four specific dates between June 21, 2017 and November 15, 2017, *id.* ¶ 81. Plaintiffs "cannot amend the complaint through briefing," and these vague references to additional meetings do not bolster CW1's allegations in any event. *Diamond S.J. Enter. v. City of San Jose*, 2018 WL 5619746, at *6 (N.D. Cal. Oct. 29, 2018) ("[A]llegations raised for the first time in the briefing are not considered in determining the sufficiency of the complaint."); *see also SriCom, Inc. v. EbisLogic, Inc.*, 2012 WL 4051222, at *6 (N.D. Cal. Sept. 13, 2012) (same). Plaintiffs also do not dispute that CW1 "left DXC in January 2018," Opp. at 4—two months before the close of DXC's first fiscal year on March 31, 2018. As a matter of common sense and as Plaintiffs' own authority confirms, confidential witnesses who "were not employed during" the relevant period can "offer little reliable insight into what occurred during [that] period." *Webb v. Solarcity Corp.*, 884 F.3d 844, 851 n.1 (9th Cir. 2018). As a result, CW1 cannot reliably speak to *either* the veracity of the Registration Statement or whether DXC's cost reductions at the end of its first year were more than $1 billion. Second Am. Compl. ¶¶ 39, 79; *see also* Defs.' Br. at 7-8.

*Second*, and in any event, CW1 does not allege that DXC implemented first-year cost reductions in excess of the $1 billion projected in the Registration Statement. Plaintiffs attempt to dress up the deficient CW1 allegations by referring to his alleged attendance at "Operational Committee" meetings that "consistently featured discussion about DXC's workforce reductions and its progress towards achieving the $2.7 billion target." Opp. at 4. But that allegation says nothing of the first-year cost reduction that DXC actually achieved, and there is not a single allegation anywhere in the Second Amended Complaint that DXC cut more costs in the Company's first year than it predicted in the Registration Statement.

*Third*, and relatedly, Plaintiffs have no answer for the fact that CW1 never specifies the period of time applicable to the "internal budget cut goal" he purports to describe. *See* Defs.' Br. at 1, 15; *see generally* Opp. As the Court has made clear, DXC's first year is "the only year that is relevant because the challenged statements only cover the first after the Merger was completed." *Costanzo*, 2020 WL 4284838, at *6. Yet CW1 does not say whether the $2.7 billion internal goal applied to DXC's first year or was intended to be achieved over a series of years. CW1's lack of specificity in this regard is not surprising. His allegations are purportedly based on four meetings

CASE NO. 5:19-cv-05794-BLF
DEFENDANTS' REPLY ISO
JOINT MOTION TO DISMISS

that occurred between June 2017 and November 2017, *see* Second Am. Compl. ¶ 81—*after* the Registration Statement was issued and *before* the end of DXC's first fiscal year. Plaintiffs speculate that CW1 conceivably could possess knowledge regarding statements in the Registration Statement because before the Merger he was an employee at HPES, one of DXC's predecessor entities. Opp. at 9-10. But Plaintiffs fail to explain how CW1 could have had knowledge of Mr. Lawrie's plans leading up to the Merger—particularly given that Mr. Lawrie worked at CSC, *not* HPES, prior to the Merger. *See, e.g.*, Second Am. Compl. ¶¶ 26, 47. And the Second Amended Complaint alleges that the first meeting at which CW1 purportedly overheard discussion of an internal goal did not occur until June 2017—four months after the Registration Statement was issued. Second Am. Compl. ¶ 81. Plaintiffs' assertion that "information from before or after a particular point in time still" can "evidence[] what existed or what was known at that particular point in time," Opp. at 10, is therefore irrelevant. CW1 does not allege that the meeting he attended in June 2017 included discussion of a plan that existed as of February 2017—and Plaintiffs cannot cure that factual gap with bald speculation.

*Fourth*, Plaintiffs make no effort to explain how CW1's allegation of $800 million in cost reductions in the Global Delivery Division—where, as Plaintiffs themselves assert, DXC planned "primarily" to focus its streamlining efforts, Opp. at 3—was in any way inconsistent with DXC's $1 billion target for the full fiscal year. Defs.' Br. at 7. That is especially true given that CW1's allegations, and the Second Amended Complaint as a whole, are silent as to the magnitude of cost cuts implemented in DXC's two other business divisions (as of January 2018 or at any other time). Furthermore, CW1's allegations are entirely unclear as to whether the $800 million in cuts that CW1 describes amounted to actual dollar savings in the first year following the merger or the run rate based on the first-year cuts made in the Global Delivery Division. The cost reduction projection in the Registration Statement distinguished between those two concepts by stating that the merged company expected to achieve "first-year synergies of approximately $1.0 billion post-close, with a run rate of $1.5 billion by the end of year one," meaning that the cost reductions achieved by the end of the combined company's first year were expected to save $1 billion in that first year and $1.5 billion on an annualized basis going forward. Ex. A at 69. CW1's failure to

specify whether his $800 million number is properly measured against the $1 billion in projected first-year savings or the $1.5 billion projected run rate further underscores the inadequacy of his allegations.

*Finally*, and perhaps most tellingly, Plaintiffs' ultimate argument is that CW1's allegations "corroborate[]" those of Stephen Hilton.  Opp. at 2.  But as the Court already found, Hilton's allegations demonstrate only that the "internal budget [was] merely aspirational and a tool to reduce internal debate."  *Costanzo*, 2020 WL 4284838, at *5.  Specifically, the Court concluded that "no allegations in the [First Amended] Complaint," including the Hilton allegations, indicated "DXC actually achieved this alleged internal target [of $2.7 billion] or cut costs in excess of the disclosed $1 billion."  *Id.* at *6.  And without actually cutting more than $1 billion in costs in its first fiscal year, DXC's use of a more ambitious internal goal—as "a tool to 'reduce internal debate'" and to "achieve the promised cuts"—was simply "a business decision without any consequence to the investors."  *Id*. (quoting Hilton Compl. ¶ 69).  CW1's purported "corroborat[ion] of the statements from Stephen Hilton"—that the Court already accepted as true and held were insufficient to demonstrate the falsity of any challenged statement—cannot revive Plaintiffs' claims.  Opp. at 2.  Rather, as the Court explained, "if DXC disclosed in the Registration Statement that it intended to cut $1 billion in costs through workforce optimization in the first year post-Merger, and then went on to cut that same $1 billion in cost, the investors were not misled."  *Costanzo*, 2020 WL 4284838, at *6.  CW1's account does not alter that inescapable conclusion.  *See In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013) (requiring plaintiffs to "exclude the possibility that the alternative explanation is true").

## III.    PLAINTIFFS FAIL TO OVERCOME THIS COURT'S PRIOR HOLDING THAT NUMEROUS STATEMENTS ARE INACTIONABLE AS A MATTER OF LAW

In the Second Amended Complaint, Plaintiffs admittedly repeat their challenge to the same forward-looking statements, opinions, and corporate puffery that the Court already held were not actionable as a matter of law.  Plaintiffs attempt to brush aside the Court's prior holdings, but they point to nothing in the Second Amended Complaint that can overcome those holdings and

transform DXC's forward-looking statements, opinions, and corporate puffery into actionable statements this time around.  Defs.' Br. at 9-15.

### A.    As The Court Already Held, The Safe Harbor Applies

The Court previously held that Defendants' statements regarding expected synergies, future cost savings, and DXC's anticipated workforce and capabilities following the Merger were "facially forward-looking" and protected from liability under the PSLRA safe harbor.  Defs.' Br. at 9; *Costanzo*, 2020 WL 4284838, at *7-*10.  Plaintiffs now seek to undo that holding.  But their arguments, many of which the Court already analyzed and rejected, are all fatally flawed.

*First*, Plaintiffs repeat their unsuccessful arguments that DXC cannot avail itself of the PSLRA safe harbor because of (i) the IPO exception and (ii) the existence of a cease-and-desist order entered against CSC (one of DXC's predecessor entities).  Opp. at 18.  The Court previously considered and rejected both arguments, because the transaction for which DXC issued the Registration Statement was not an IPO, and there is no basis to "hold an administrative order related to [CSC] against [DXC]," considering the two are "legally distinct entities."  *Costanzo*, 2020 WL 4284838, at *7-*8 (noting the Court was "not persuaded that the Merger should be treated [as] an IPO").  Plaintiffs cite no new allegations or law in support of their recycled arguments, and there is no reason to revisit the Court's holdings on these points.  Defs.' Br. at 9.

*Second*, Plaintiffs ask the Court to revisit its earlier determination that statements concerning "$1 billion expectation in cost cut" were "facially forward-looking and related to financials," rather than "mixed" statements of present and future fact.  Opp. at 19 (citing *Costanzo*, 2020 WL 4284838, at *8).  The Court should reject that invitation.  The notion that DXC's predictive statements about future cost cutting referred to a present belief does not make those statements any less forward-looking, because "[a]ll projections can be characterized as presently held beliefs" to some extent.  *Marsh Grp. v. Prime Retail, Inc.*, 46 F. App'x 140, 146 (4th Cir. 2002); *Golub v. Gigamon Inc.*, 372 F. Supp. 3d 1033, 1048 (N.D. Cal. 2019) ("It strains logic to suggest that it is possible to make a forward looking statement that is not in at least some way based on a belief about the present state of things.").  Because Defendants' statements, "examined as a whole," are unquestionably future-focused, they are forward-looking statements for purposes

CASE NO. 5:19-cv-05794-BLF
DEFENDANTS' REPLY ISO
JOINT MOTION TO DISMISS

of the PSLRA. *Police Ret. Sys. of St. Louis v. Intuitive Surgical*, 759 F.3d 1051, 1059 (9th Cir. 2014). And the decision in *Prodanova v. H.C. Wainwright & Co., LLC* does not compel a different result. 2018 WL 8017791 (C.D. Cal. Dec. 11, 2018) (cited in Opp. at 19-20). There, the defendants allegedly "omitted the disclosure" of "the forthcoming announcement of [an] Offering," which the court found to be a "contemporaneous fact" that should have been disclosed because it was not "a projection" of financial data that is clearly protected by the safe harbor. *Id.* at *12-*13 (citing 15 U.S.C. § 78u-5(i)(1)(A)). There is no such "contemporaneous fact" alleged here, and no basis for the Court now to credit Plaintiffs' strained "mixed" statement argument.

Plaintiffs argue that "[h]aving now established that the $2.7 billion target was a real objective, it follows that Defendants' statements did in fact concern or omit facts that existed at the time[,]" and the safe harbor thus should not apply. Opp. at 19-20. As discussed in Section II *supra*, however, the Second Amended Complaint—like the First Amended Complaint—does not plausibly allege that Mr. Lawrie's alleged $2.7 billion "goal" was anything more than aspirational, or that DXC expected to (or did) cut more than the $1 billion it told investors to anticipate in the first year following the Merger. Defs.' Br. at 10-12.

*Third*, Plaintiffs restate the same criticisms of the cautionary language accompanying DXC's forward-looking statements—suggesting that the Company's robust warnings to investors regarding the uncertainty and risks surrounding its post-Merger business plans were "boilerplate" and "generalized." Opp. at 20-21. The Court rejected those assertions in its Dismissal Order, holding that "Defendants' forward-looking statements were accompanied by meaningful cautionary language," because "that cautionary language warned investors . . . [of] precisely what Plaintiffs allege eventually happened." *Costanzo*, 2020 WL 4284838, at *9. Plaintiffs' Opposition simply ignores the Court's prior holding, and argues anew that because an internal "$2.7 billion cost reduction target" supposedly "existed at the time of the Registration Statement," any cautionary statements about the potential consequences of the business initiatives that DXC would ultimately execute were not "meaningful." Opp. at 20-21. As noted, however, the Court already assumed "that Plaintiffs ha[d] sufficiently pled that there was an internal goal at DXC to cut $2.7 [billion] in costs at the time the Registration Statement was issued," and nonetheless held that the

cautionary language prong of the PSLRA safe harbor was satisfied. *Costanzo*, 2020 WL 4284838, at *6. Plaintiffs' request for a "re-do" should be rejected.

*Fourth*, Plaintiffs argue that that because Mr. Lawrie allegedly "knew that the $2.7 billion target existed at the time of the Registration Statement," Defendants had actual, contemporaneous knowledge that all of their forward-looking statements were false. Opp. at 21. But as Plaintiffs admit, "this Court already held" that the facts alleged in the First Amended Complaint were sufficient to support a finding that Mr. Lawrie advocated a $2.7 billion target internally. *Id.* And the Court found that "the mere existence of this goal"—even if assumed true—"is not a sufficient basis for securities violations," and therefore "Defendants' knowledge of it is irrelevant to this Complaint." *Costanzo*, 2020 WL 4284838, at *10. Because Plaintiffs fail to allege anything different this time around, *see supra* Section II, Plaintiffs again fail to satisfy the requirement to plead that Defendants had "actual knowledge" that their forward-looking statements were false.

### B.   Plaintiffs Cannot State Claims Based On Puffery

Plaintiffs also re-challenge the statement that DXC's "turn-around plan" included "a cost reduction initiative to align costs to its revenue trajectory" and "initiatives to improve execution in sales performance and accountability[,]" despite the Court's clear holding that it is non-actionable puffery. *See* Defs.' Br. at 12; *Costanzo*, 2020 WL 4284838, at *10-11. In their Opposition, Plaintiffs incorrectly argue that Defendants "abandoned" puffery arguments with respect to statements about "net synergies," "strategic and financial benefits," and DXC's "ability to attract and retain" personnel. Opp. at 15-16. Of course, Defendants' briefing merely reflects that the Court already found those statements were not puffery insofar as they were "tied to the disclosure of the anticipated $1 billion cost reduction target and therefore are not merely expressions of corporate optimism." *Costanzo*, 2020 WL 4284838, at *10.

Plaintiffs next attempt to reargue the Court's finding that statements about DXC's "turn-around plan" were "incapable of objective verification and constitute[d] non-actionable puffery" *as a matter of law*. *Costanzo*, 2020 WL 4284838, at *10. But Plaintiffs do not (and cannot) explain how the allegations added to the Second Amended Complaint in any way impact that legal holding, nor do they identify any error in the Court's analysis. *See In re Extreme Networks, Inc. Sec. Litig.*,

2018 WL 1411129, at *21 (N.D. Cal. Mar. 21, 2018) (Freeman, J.) (rejecting plaintiffs' challenge to a statement regarding a business partnership's "meaningful revenue impact" where the prior dismissal order "already held" the statement was inactionable puffery).  Plaintiffs re-tread familiar ground and argue that the differences between what DXC stated publicly regarding its turnaround plan and "what Plaintiffs now allege occurred internally is stark enough to render the former a material misrepresentation."  Opp. at 15.  But because the statement they challenge constitutes puffery, it simply cannot be made false, and thus is immaterial because it "does not mention the amount by which the Company was to cut costs, [and] instead, expresses vague corporate optimism."  *Costanzo*, 2020 WL 4284838, at *10.

Furthermore, Plaintiffs' cited authority is inapposite.  Unlike here, the defendants in those cases made specific statements about a past event or current condition that contradicted the reality of the circumstances at the time the statement was made.  In *In re Dura Pharmaceuticals, Inc. Securities Litigation*, for example, the defendants stated they were "close to" bringing an inhaler to market despite knowing that its clinical trials had "progressed in a way that doomed the inhaler's prospects of FDA approval."  548 F. Supp. 2d 1126, 1136-1137 (S.D. Cal. 2008).  In *Backe v. Novatel Wireless, Inc.*, the defendants represented they were "ramp[ing] [production] to meet increasing demand in the marketplace," despite knowing that one of the company's largest customers was discontinuing further orders of a popular product.  642 F. Supp. 2d 1169, 1181 (S.D. Cal. 2009).  In *In re InfoSonics Corp. Securities Litigation*, the defendants claimed that a product had been "well received," despite allegations that the product had been "plagued with defects."  2007 WL 2301757, at *6 (S.D. Cal. Aug. 7, 2007).  And *In re Immune Response Securities Litigation*, which does not address puffery arguments at all, the defendants "portray[ed] the results of [a] clinical trial in an unduly optimistic light," by providing *verifiable* "corroborating details of the internal reports, cit[ing] to specific reports, mention[ing] the dates or contents of reports and alleg[ing] their sources of information about the reports."  375 F. Supp. 2d 983, 1019 (S.D. Cal. 2005).  Here, at best, Plaintiffs' confidential witnesses offer subjective accounts of the effects that DXC's actual cost-reduction actions caused.  But none even purports to describe circumstances that existed at the time of the Registration Statement's publication—let alone that

contradicted the generalized description of DXC's "turn-around plan" as of February 2017. The Court's earlier conclusion should therefore stand. *Costanzo*, 2020 WL 4284838, at *10, *12.

## C.    Plaintiffs Cannot State Claims Based On Opinion Statements

Plaintiffs continue to challenge opinion statements, including: (i) predictive statements about the future synergies that could be achieved through the merger, *see* Second Am. Compl. ¶ 90; and (ii) statements about the expected effectiveness of the merged company's hiring practices, *id.* ¶ 92; *see also* Defs.' Br. at 12. The Court previously dismissed claims based on these statements because Plaintiffs "failed to allege facts establishing that the internal target was more than aspirational to make its omission misleading." *Costanzo*, 2020 WL 4284838, at *12. Nevertheless, Plaintiffs assert that the statements are not "on their face" statements of opinion, and that their "new allegations" demonstrate that the $2.7 billion target is "more than aspirational." Opp. at 16. Neither argument should change this Court's previous determination.

To the extent Plaintiffs rely on the Court's comment that such statements are not "on their face" opinions, Plaintiffs ignore that this was only the first step of the Court's analysis. The Court went on to evaluate these statements under the legal framework applicable to opinions, concluding that "Plaintiffs have failed to sufficiently plead that the omission of Lawrie's internal target was 'misleading to a reasonable person reading the statement fairly and in context.'" *Costanzo*, 2020 WL 4284838, at *12 (citing *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 615-16 (9th Cir. 2017)). Plaintiffs also wholly ignore Defendants' additional authority, which explains that because these statements refer to DXC's future expectations, like the Company's "expect[ed]" results and "estimate[ed]" future benefits, these statements reflect an opinion. Defs.' Br. at 13 (citing *Markette v. XOMA Corp.*, 2017 WL 4310759, at *5 (N.D. Cal. Sep. 28, 2017) ("There is no reasonable basis to read a statement of hopefulness, encouragement, or expectation as anything other than an opinion."); and *In re Sanofi Sec. Litig.*, 87 F. Supp. 3d 510, 530-31 (S.D.N.Y. 2015) ("These six statements are statements of opinion—they express Sanofi's expectations for the future rather than presently existing, objective facts.")). Plaintiffs, by contrast, offer no reason to suggest why statements about DXC's future expectations should not be protected as opinion statements.

Plaintiffs argue that statements regarding DXC's hiring practices and the Company's post-merger synergies are actionable because they "omitted its plan to terminate a substantial portion of its workforce." Opp. at 16. This generalization is simply not true; the Court previously recognized that DXC told investors to expect $1.0 billion in cuts in the first year after the Merger, with cuts expected "from workforce optimization such as *elimination* of duplicative roles[.]" *Costanzo*, 2020 WL 4284838, at *7 (emphasis added). Given the combination of the two entities, this would include cutting even "critical" or "key" employees, Opp. at 11-12, to the extent they were duplicative. And even an alleged plan to cut "well over 20%" of DXC's combined employees, Opp. at 11, is not inconsistent with the plan to "eliminat[e] . . . duplicative roles." *Costanzo*, 2020 WL 4284838, at *9. Plaintiffs also advance the recycled assertion that Defendants were aware of Mr. Lawrie's more aggressive cost reduction plan, and therefore their opinion statements were actionable. Opp. at 16. But as discussed *supra*, the few new allegations contained in the Second Amended Complaint still do not support the conclusion that the internal plan was anything more than aspirational.

*In re Time Warner, Inc. Securities Litigation* is not to the contrary. Opp. at 16 (citing 9 F.3d 259, 268 (2d Cir. 1993)). That case merely suggests that when a corporation publicly announces "an intended approach for reaching" a "specific business goal," the company may be obligated to disclose other approaches to achieving that goal if they are "under active and serious consideration." *Id*. But Plaintiffs here have not alleged any facts indicating that DXC was actually pursuing any "specific business goal" beyond the $1 billion worth of cuts it told investors to expect. *See supra* Section II; *Costanzo*, 2020 WL 4284838, at *12.

## IV.   PLAINTIFFS FAIL TO PLEAD VIOLATIONS OF ITEMS 303 AND 503

Plaintiffs also continue to assert that the Registration Statement failed to disclose information required to be included under Items 303 and 503(c) of SEC Regulation S-K. Opp. at 17-19. These claims hinge on their already-rejected argument that the $2.7 billion plan was a "substantial and known uncertainty that existed prior to the [Merger,]" and that "the severe risks" of this plan were "protested by top management." *Id.* at 17-18. As Plaintiffs acknowledge, the Court previously rejected those claims because Plaintiffs had "failed to allege facts sufficient to

lead to a reasonable inference that the $2.7 billion internal target was achieved or was even meant to be achieved in the first year after the Merger was concluded." *Id.* at 18 (citing *Costanzo*, 2020 WL 4284838, at *14). But Plaintiffs do not (and cannot) explain how the Second Amended Complaint cures that deficiency. And it does not.

As to Item 303, Plaintiffs do not allege that the $2.7 billion plan was actually implemented, or even intended to be implemented in DXC's first year. *Costanzo*, 2020 WL 4284838, at *14; *supra* Section II. Plaintiffs accordingly still fail to plead that at the time of the Registration Statement's filing any material impact was likely to result from the purported "trends" Defendants allegedly failed to disclose. *See In re Restoration Robotics, Inc. Sec. Litig.*, 417 F. Supp. 3d 1242, 1264 (N.D. Cal. Oct. 18, 2019) (dismissing an Item 303 claim because "Plaintiff's Complaint does not demonstrate that a material impact from any such . . . trend was 'reasonably likely to occur' at the time of the [offering]").

Plaintiffs' Item 503 claim similarly fails. Plaintiffs are unsuccessful in showing that the $2.7 billion target was anything more than an aspirational goal at the time of the Merger. *See supra* Section II; *Panther Partners, Inc. v. Ikanos Commc'ns, Inc.*, 538 F. Supp. 2d 662, 669 (S.D.N.Y. 2008) (noting Item 503 requires disclosure of the most significant risks "known . . . at the time the registration statements are made"). Indeed, Plaintiffs' own authority confirms that Item 503 requires disclosure of *known* events only. *See* Statement of Comm'n Regarding Disclosure of Year 2000 Issues & Consequences by Pub. Cos., Inv. Adv., Inv. Cos., & Mun. Sec. Issuers, SEC Release No. 1149 (July 29, 1998) ("The essence of MD&A is whether the consequences of a known event, trend, or uncertainty are likely to have a material effect on the company's results of operations, liquidity, and financial condition."); *Gerneth v. Chiasma, Inc.*, 2018 WL 935418, at *4 (D. Mass. Feb. 15, 2018) (requiring plaintiff to "allege sufficient facts to infer that a registrant knew, as of the time of an offering," of purported problems with risk disclosures in the registration statement).

Finally, Plaintiffs' assertion that the Registration Statement lacks the "most significant risk factors" required by Item 503, because it failed to disclose "the internal plan to cut $2.7 billion in costs the first year" and "the severe risks to expected revenue and income therefrom," falls flat.

Opp. at 18. This Court already found that, because "Plaintiffs have failed to allege facts sufficient to lead to a reasonable inference that the $2.7 billion internal target was achieved or was even meant to be achieved," it was certainly not among the "most significant risks" that are subject to disclosure under Item 503. *Costanzo*, 2020 WL 4284838, at *14. Further, this Court recognized that "the Registration Statement disclosed the state of affairs as they were [at] the time," and Defendants' risk disclosures were in accordance with Ninth Circuit law. *See* Defs.' Br. at 14-15. The Second Amended Complaint contains no allegations to the contrary, *see supra* Section II, these claims must again be dismissed.

## V.   PLAINTIFFS' SECTION 15 CLAIM MUST BE DISMISSED

Plaintiffs do not dispute that their secondary claim under Section 15 rises—and falls—with their primary Section 11 claim. Opp. at 22. Plaintiffs' failure to state a primary claim under Section 11 mandates dismissal of the Section 15 claim as well. *See In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 886 (9th Cir. 2012); Defs.' Br. at 17.

## VI.   THE SECOND AMENDED COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE

The Court should deny Plaintiffs' "request" for leave to amend yet a third time in the event that the Court "dismiss[es] any aspect of the Complaint." Opp. at 22; *see* Defs.' Br. at 17. Plaintiffs have now had more than a year to develop their theory of falsity and facts in support— including over nine months between the filing of their First and Second Amended Complaints. But the most Plaintiffs could muster in this latest pleading were broad-brushed criticisms of DXC's business execution by three former employees—none of which comes close to establishing the falsity of any statement in the Registration Statement. And the Opposition does not offer any hint as to how Plaintiffs would propose to bolster their claims any further. Any further amendment would be futile, and accordingly, the Second Amended Complaint should be dismissed with prejudice. *See* Defs.' Br. at 17 (citing *Barry v. Wells Fargo Home Mortg.*, 2017 WL 1133516, at *6 (N.D. Cal. Mar. 27, 2017) (Freeman, J.) (granting motion to dismiss second amended complaint with prejudice); *Dinan v. SanDisk LLC*, 2020 WL 364277, at *12 (N.D. Cal. Jan. 22, 2020) (Freeman, J.) (same)).

## VII.   CONCLUSION

For the reasons detailed above and in Defendants' Opening Brief, Defendants respectfully request that the Court dismiss the Second Amended Complaint in its entirety, with prejudice.

Dated:  January 21, 2021

Respectfully submitted,

LATHAM & WATKINS LLP

By:  /s/ Jamie L. Wine
Jamie L. Wine (Bar No. 181373)
Kevin McDonough (*pro hac vice*)
885 Third Avenue
New York, NY 10022-4834
T:  +1.212.906.1200 / F:  +1.212.906.1200
jamie.wine@lw.com
kevin.mcdonough@lw.com

Stephen P. Barry (*pro hac vice*)
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
T: +1.202.637.2200 / F: +1.202.637.2201
stephen.barry@lw.com

Nada L. Boutros (Bar No. 287163)
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
T: +1.415.391.0600 / F: +1.415.395.8095
nada.boutros@lw.com

*Attorneys for Defendants DXC Technology Company,
Mukesh Aghi, Amy E. Alving, David Herzog, Sachin
Lawande, J. Michael Lawrie, Julio A. Portalatin, Peter
Rutland, Manoj P. Singh, and Robert F. Woods*

Dated:  January 21, 2021

WILSON SONSINI GOODRICH & ROSATI

By:  /s/ Steven M. Schatz
Steven M. Schatz (Bar No. 118356)
Douglas W. McManaway (Bar No. 317067)
650 Page Mill Road
Palo Alto, CA 94304-1050
T: +1.650.493.9300 / F: +1.650.565.5100
sschatz@wsgr.com
dmcmanaway@wsgr.com

Katherine L. Henderson (Bar No. 242676)
One Market Street
Spear Tower, Suite 3300
San Francisco, CA 94105-1126
T: +1.415.947.2000 / F: +1.415.947.2099
khenderson@wsgr.com

Dated:  January 21, 2021

MORGAN, LEWIS & BOCKIUS LLP

By: /s/ Joseph E. Floren
Joseph E. Floren (Bar No. 168292)
One Market, Spear Street Tower
San Francisco, CA 94105
T: +1.415.442.1391 / F: +1.415.442.1001
joseph.floren@morganlewis.com

Marc J. Sonnenfeld (*pro hac vice*)
Laura H. McNally (*pro hac vice*)
Karen Pieslak Pohlmann (*pro hac vice*)
1701 Market Street
Philadelphia, PA 19103-2921
T: +1.215.963.5000 / F: +1.215.963.5001
marc.sonnenfeld@morganlewis.com
laura.mcnally@morganlewis.com
karen.pohlmann@morganlewis.com

*Attorneys for Defendants*
*Hewlett Packard Enterprise Company, Rishi Varma,*
*Timothy C. Stonesifer, Jeremy K. Cox, and Margaret C.*
*Whitman*

**ATTESTATION**

I, Jamie L. Wine, am the ECF user whose ID and password are being used to file Defendants' Joint Reply in Support of Their Motion to Dismiss the Second Amended Complaint. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that concurrence in the filing of this document has been obtained from each of the other Signatories.

Dated: January 21, 2021          /s/ Jamie L. Wine
                                 Jamie L. Wine

CASE NO. 5:19-cv-05794-BLF
DEFENDANTS' REPLY ISO
JOINT MOTION TO DISMISS