# EXHIBIT "B"

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION


| | | |
|---|---|---|
| COSTANZO, | ) | CV-19-5794-BLF |
| | ) | |
| PLAINTIFF, | ) | SAN JOSE, CALIFORNIA |
| | ) | |
| VS. | ) | JUNE 4, 2020 |
| | ) | |
| DXC TECHNOLOGY COMPANY ET AL, | ) | PAGES 1-51 |
| | ) | |
| DEFENDANT. | ) | |
| | ) | |
| _____ | ) | |

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE BETH LABSON FREEMAN
UNITED STATES DISTRICT JUDGE

A P P E A R A N C E S

FOR THE PLAINTIFF:          **BY:  KARA M WOLKE**
                            GLANCY PRONGAY & MURRAY LLP
                            1925 CENTURY PARK EAST
                            SUITE 2100
                            LOS ANGELES, CA 90067


FOR THE PLAINTIFF:          **BY:  NICHOLAS IAN PORRITT**
                            LEVI AND KORSINSKY
                            1101 30TH STREET NW SUITE 115
                            WASHINGTON, DC 20007

APPEARANCES CONTINUED ON THE NEXT PAGE

OFFICIAL COURT REPORTER:          SUMMER FISHER, CSR, CRR
                                  CERTIFICATE NUMBER 13185


PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
TRANSCRIPT PRODUCED WITH COMPUTER

APPEARANCES CONTINUED:

FOR THE DEFENDANT:          **BY:  JAMIE LYNNE WINE**
                                **KEVIN M. MCDONOUGH**
                           LATHAM & WATKINS LLP
                           885 THIRD AVENUE
                           SUITE 1000
                           NEW YORK, NY 10022


FOR THE DEFENDANT:          **BY:  KATHERINE HENDERSON**
HP                              **STEVEN MARK SCHATZ**
                           WILSON SONSINI GOODRICH & ROSATI
                           650 PAGE MILL ROAD
                           PALO ALTO, CA 94304


ALSO PRESENT:
FOR THE PLAINTIFF:          **BY:  THOMAS ELROD**
KINGSTOWN                  KIRBY MCINERNEY LLP
                           825 THIRD AVENUE
                           NEW YORK, NY 10022

Case 5:19-cv-05794-BLF Document 102 Filed 06/10/21 Page 3 of 52
Case 5:19-cv-05794-BLF Document 107 Filed 06/10/21 Page 4 of 52

SAN JOSE, CALIFORNIA                    JUNE 4, 2020

P R O C E E D I N G S

(COURT CONVENED AT 10:07 A.M.)

THE COURT:  ALL RIGHT.  GOOD MORNING TO EVERYONE.
THANK YOU FOR WAITING FOR YOUR CASE TO COME UP.

WE HAVE A LOT TO TALK ABOUT ON THIS CASE, AND THEN WE WILL
GO RIGHT INTO YOUR CASE MANAGEMENT CONFERENCE.

AND IT WASN'T CLEAR TO ME THAT ANYONE FROM -- SORRY.  FOR
THE CASE MANAGEMENT, WE MAY FINISH A LITTLE BIT EARLY, THAT I
WAS GOING TO HAVE AN APPEARANCE FROM ANYONE FROM KINGSTOWN
PARTNERS, FROM THE PLAINTIFF.

THE CLERK:  YOUR HONOR, SORRY TO INTERRUPT.
I DID ASK COUNSEL FOR THAT CASE TO BE HERE AT 9:00, JUST
IN CASE.  SO --

THE COURT:  OH, THAT'S GREAT.

THE CLERK:  I CAN BRING THEM OVER NOW.

THE COURT:  NO, NO, THAT'S NOT NECESSARY.  I JUST WAS
GOING TO ASK SOMEONE TO TEXT THE ATTORNEYS.  BUT YOU WERE AHEAD
OF ME, TIFFANY, THANK YOU.

OKAY.  SO LET'S DEAL WITH THE MOTION TO DISMISS FIRST.
AND LET'S CALL THE CASE AND GET APPEARANCES ON THE RECORD.

THE CLERK:  CALLING CASE 19-5794.  COSTANZO VERSUS
DXC TECHNOLOGY.

COUNSEL, IF YOU COULD PLEASE STATE YOUR APPEARANCES.  AND
WE WILL START WITH PLAINTIFFS AND THEN MOVE TO DEFENDANTS.

MS. WOLKE: HI.

THIS IS KARA WOLKE FROM GLANCY PRONGAY & MURRAY FOR THE PLAINTIFFS.

THE COURT: GOOD MORNING.

MR. PORRITT: GOOD MORNING, YOUR HONOR.

IT'S NICHOLAS PORRITT OF LEVI AND KORSINSKY, ALSO ON BEHALF OF THE PLAINTIFFS.

THE COURT: GOOD MORNING.

ALL RIGHT. DO I HAVE ANYONE ELSE FROM PLAINTIFF? THEN WE WILL MOVE FORWARD TO THE DEFENDANTS.

MS. WINE: GOOD MORNING, YOUR HONOR.

THIS IS JAMIE WINE OF LATHAM AND WATKINS ON BEHALF OF THE DXC DEFENDANTS.

THE COURT: GOOD MORNING.

MR. MCDONOUGH: GOOD MORNING, YOUR HONOR.

KEVIN MCDONOUGH, ALSO OF LATHAM AND WATKINS, ON BEHALF OF THE DXC TECHNOLOGY DEFENDANTS.

THE COURT: GOOD MORNING.

ALL RIGHT. AND IS MR. SCHATZ GOING TO MAKE AN APPEARANCE OR NOT?

MR. SCHATZ: I WAS ON, AND FOR SOME REASON I JUST -- LOST YOU. HERE I AM.

THE COURT: OH, GOOD.

ALL RIGHT. MR. SCHATZ, I WILL LET YOU MAKE YOUR APPEARANCE.

MR. SCHATZ: YOUR HONOR, I HAVE BEEN BEFORE YOU, AND YOU SHOULD NOT BE SURPRISED THAT I AM TECHNOLOGICALLY BEHIND THE TIMES, BUT THANK YOU FOR THE OPPORTUNITY TO WEAR A COLLARED SHIRT.

THE COURT: YES.

YOU KNOW, BOTH MY HUSBAND, WHO IS A PRACTICING LAWYER, AND I, BOTH HAD HEARINGS TODAY, SO WE WERE SO UNACCUSTOMED TO ACTUALLY WEARING OUR PROFESSIONAL CLOTHES TODAY INSTEAD OF OUR DIRTY T-SHIRTS AND OUR FLIP FLOPS. BUT YES, IT DOES SEEM A LITTLE BIT MORE REAL. SO THERE WE ARE.

ALL RIGHT. ANYONE ELSE STATING AN APPEARANCE THIS MORNING?

MS. HENDERSON: YOUR HONOR, KATHERINE HENDERSON.

I'M AT WILSON SONSINI WITH MR. SCHATZ, ALSO ON BEHALF OF THE HP DEFENDANTS.

THE COURT: GOOD MORNING.

OKAY. WELL, LET'S SEE, I THOUGHT I HAD A PRETTY GOOD HANDLE ON THINGS UNTIL YESTERDAY WHEN I GOT A COPY OF THE EASTERN DISTRICT OF VIRGINIA ORDER ON THE -- I GUESS I WILL CALL IT THE COMPANION CASE, THAT IS THE SECTION 10(B) CASE PENDING THERE.

I DIDN'T ACTUALLY PRINT IT OUT. IT WAS QUITE A LENGTHY ORDER, BUT THE BOTTOM LINE IS THAT THE JUDGE IN THE EASTERN DISTRICT OF VIRGINIA HAS DISMISSED THE CASE WITHOUT LEAVE TO AMEND, AND DID CONSIDER THE HILTON COMPLAINT AND THE WORK FORCE

OPTIMIZATION ISSUES POST-MERGER, NOT DEALING WITH THE REGISTRATION STATEMENT AT ALL. BUT I IMAGINE BOTH OF YOU WILL BE GIVING ME YOUR TAKE ON HOW THAT PLAYS INTO WHAT I'M DECIDING HERE.

AND SO, YOU KNOW, I GUESS I READ THE HILTON COMPLAINT UP AND DOWN TO SEE WHAT MR. HILTON WAS ACTUALLY SAYING. AND OF COURSE, AT THE END OF THE DAY, WHATEVER HIS ATTORNEY IS ALLEGING IN THAT COMPLAINT IS NOT EVIDENCE OF ANYTHING. IT IS THEIR STORY, JUST LIKE THIS COMPLAINT IS THE PLAINTIFF'S STORY, AND IT'S NOT EVIDENCE.

SO I ALWAYS STRUGGLE WHEN THE CASE THAT I HAVE IS BASED ON THE ALLEGATIONS IN ANOTHER CASE, AND IN AN UNVERIFIED COMPLAINT, BECAUSE I DON'T KNOW WHETHER THERE'S BEEN ANY INDEPENDENT INVESTIGATION TO DETERMINE WHETHER ANY OF THE ALLEGATIONS IN THAT COMPLAINT HAVE ANY BASIS IN FACT, WHICH WOULD BE THE RULE 11 REQUIREMENT. SO I'M TROUBLED BY THAT.

IT MAY BE THAT MR. HILTON IS COOPERATING WITH PLAINTIFFS, OR IT MAY BE THAT HE SIGNED A CONFIDENTIALITY AGREEMENT WHEN HE SETTLED HIS CASE AND HE'S COMPLETELY UNAVAILABLE. THERE ARE ALSO SOME OTHER OPTIONS TOO, BUT THOSE ARE THE TWO THAT I THOUGHT WOULD BE THE MOST POSSIBLE.

THIS IS A CASE WHERE I HAVE NO CONFIDENTIAL WITNESSES. I WAS A LITTLE BIT SURPRISED BY THAT. AND I'M REALLY STRUGGLING MS. WOLKE OR MR. PORRITT, TO DETERMINE WHETHER THERE ARE ANY UNDERLYING FACTUAL ALLEGATIONS TO SUPPORT THE CLAIM.

AND I HAVE TO SAY THE E.D. VIRGINIA DECISION AT PAGE 23 WHERE THEY DISCUSS THE HILTON COMPLAINT, REALLY ESTABLISHES THAT THAT JUDGE VIEWED THE HILTON COMPLAINT VERY SIMILARLY TO THE DEFENDANT'S VIEW OF IT HERE AS NOT ESTABLISHING ANY FACTUAL ALLEGATION THAT THE $2.7 BILLION SAVINGS OR WORK FORCE CUTS WERE A PLAN TO BE IMPLEMENTED IN THE FIRST YEAR, WHICH IS THE BASIS OF THIS COMPLAINT. SO I'M REALLY STRUGGLING WITH WHAT FACTUAL ALLEGATIONS I HAVE HERE AS THE UNDERPINNING.

WE NEED TO GET INTO SOME OF THE -- THERE ARE DIFFERENT ISSUES WITH RULE 11 THAN -- AND WE DON'T HAVE SCIENTER REQUIREMENTS HERE, BUT I'M REALLY STRUGGLING WITH THAT.

I DO THINK WHAT ARE FRANKLY THE -- MAYBE THE PERIPHERAL ISSUES, I THINK THERE'S SOME PUFFERY HERE, I THINK THAT WOULD COME OUT. I THINK THERE'S SOME OPINIONS UNDER OMNICARE THAT ARE NOT GOING TO GO FORWARD.

IT APPEARS TO ME THAT THE CAUTIONARY LANGUAGE IS SUFFICIENT AND IS WHAT THE NINTH CIRCUIT HAS ACCEPTED. SO I'M REALLY STRUGGLING WITH THE BASIC THEORY OF THE CASE AS TO WHETHER THERE'S ANY FACTUAL ALLEGATIONS TO SUPPORT IT.

SO THAT'S NOT MY RULING, I JUST WANT YOU TO KNOW WHERE I'M STRUGGLING. THESE CASES ARE ALWAYS COMPLEX, AND I TEND TO AGREE WITH THE DEFENDANTS THAT WHEN YOU READ THE ALLEGATIONS, IT APPEARS THAT THE REGISTRATION PROMISED A BILLION DOLLARS IN SAVINGS IN THE FIRST YEAR THROUGH WORK FORCE OPTIMIZATION, A NICE EUPHEMISM THAT EVERYBODY KNOWS MEANS LAYOFFS AND JOB CUTS

AND FIRINGS.

NO ONE IS FOOLED BY WHAT THAT WORD MEANS, AND IT CAN BE DONE WELL, AND IT CAN BE DONE BADLY, AND WE ALL KNOW A STRING OF COMPANIES WHO HAVE FALLEN ON BOTH SIDES OF THAT EQUATION. BUT IT LOOKS LIKE THE COMPLAINT ALLEGES THAT, IN FACT, $1 BILLION WAS SAVED IN THE FIRST YEAR, THAT THAT'S WHAT HAPPENED.

AND WHAT HAPPENED AFTER THAT, IS, I'M NOT SURE IT'S THE SUBJECT OF THIS LAWSUIT, WHAT HAPPENED IN YEAR TWO AND YEAR THREE. SO I'M STRUGGLING WITH THAT, THAT'S WHY I'M STRUGGLING WITH THE UNDERLYING THEORY IN THE CASE.

SO WHO IS GOING TO START? MS. WINE, ARE YOU GOING TO TAKE THE LABORING OR ON THE DEFENSE ARGUMENT?

MS. WINE: I AM, YOUR HONOR.

THE COURT: OKAY. WHY DON'T YOU GO AHEAD THEN.

MS. WINE: OKAY. GREAT. THANK YOU SO MUCH, YOUR HONOR.

AND AGAIN, THIS IS JAMIE WINE FROM LATHAM & WATKINS ARGUING ON BEHALF OF THE DEFENDANTS TODAY.

YOU KNOW, THANK YOU FOR THOSE INTRODUCTORY REMARKS. I'M GOING TO TRY TO TAILOR MY REMARKS THIS MORNING TO THOSE ISSUES THAT YOU RAISED.

AND I WOULD SUBMIT, JUST AS A GENERAL MATTER, THAT IN FACT THIS COMPLIANT IS NOT THAT COMPLEX COMPARED TO WHAT WE TYPICALLY SEE IN SECURITIES CASES. THE PLAINTIFFS ARE

CHALLENGING ONLY FOUR OR FIVE STATEMENTS OUT OF A VERY LENGTHY REGISTRATION STATEMENT, NONE OF WHICH ARE STATEMENTS OF FACT, WE AGREE WITH YOU THERE, AND ALL OF WHICH PERTAIN ONLY TO THE FIRST YEAR AFTER THE MERGER, AS YOU POINTED OUT.

AND SO REALLY WHEN YOU LOOK AT EVERYTHING THEY HAVE PUT IN THEIR COMPLAINT, IT BOILS DOWN TO TWO THINGS:

ONE, THEIR CLAIM THAT THERE WAS A SECRET UNDISCLOSED PLAN TO CUT 2.7 BILLION IN COSTS IN THAT FIRST YEAR AFTER THE MERGER, DIFFERENT FROM THE 1 BILLION THAT WAS DISCLOSED.

AND TWO, AS YOU ALSO POINTED OUT, THEIR MISREADING OF THE HILTON COMPLAINT.

SO I'M GOING TO ADDRESS THOSE AND TRY TO GET TO HILTON PRETTY QUICKLY, BECAUSE I THINK THAT'S REALLY THE CRUX OF THE ARGUMENT TODAY.

SO FIRST, JUST STARTING WITH THE COST CUTTING PREDICTIONS, THEY ARE TRYING TO BRING A SECURITIES ACTION NOT BASED ON FALSE STATEMENTS, WHICH IS OF COURSE WHAT WE TYPICALLY SEE IN A SECURITIES CASE. BUT INSTEAD, BASED ON CORPORATE PREDICTIONS ABOUT THE $1 BILLION COST CUTTING, THAT ACTUALLY CAME TRUE. THERE'S NO DISPUTE ABOUT THAT.

SO PLAINTIFFS ARE NONETHELESS CLAIMING, THAT THE FALSITY OF THAT TRUE PROJECTION WAS REVEALED, WHEN MORE THAN TWO YEARS AFTER THE MERGER, DXC'S STOCK PRICE DECLINED AFTER EXPERIENCING SOME BUSINESS SETBACKS.

BUT AS WE HAVE ALL FOCUSED ON, THE REGISTRATION STATEMENT

ITSELF TALKED ONLY ABOUT THE EXPECTATIONS FOR THE FIRST YEAR OF THE MERGED COMPANY AND DIDN'T SAY ANYTHING ABOUT TWO OR THREE YEARS INTO THE FUTURE.

SO IT CANNOT BE THAT INVESTORS WERE MISLEAD BY DXC DOING PRECISELY WHAT IT TOLD INVESTORS THE COMPANY PLANNED TO DO IN THAT FIRST YEAR.

SO THAT BRINGS US TO THE HILTON ALLEGATIONS.  YOU KNOW, PLAINTIFFS ARE TRYING TO STITCH TOGETHER A STORY ABOUT A SUPPOSED UNDISCLOSED PLAN TO CUT 2.7 BILLION IN COSTS, BUT BADLY MISCHARACTERIZE THE ALLEGATIONS IN THAT HILTON COMPLAINT, WHICH WE KNOW PLAINTIFFS CONSPICUOUSLY DID NOT PUT IN FRONT OF YOUR HONOR.

NOW, PLAINTIFFS HAVE NOT SPOKEN, AS WE UNDERSTAND IT, TO HILTON HIMSELF, THEY HAVE NOT UNDERTAKEN ANY KIND OF INDEPENDENT INVESTIGATION OF THOSE CLAIMS.  THERE WERE CERTAINLY NO ALLEGATIONS IN THEIR PLEADING THAT WOULD REFLECT THAT.

THEY HAVE NO CONFIDENTIAL WITNESSES, AS YOU POINT OUT, AND SO REALLY THEY ARE RELYING ONLY ON THE BARE ALLEGATIONS IN HIS EMPLOYMENT LAWSUIT AGAINST DXC THAT WERE NEVER LITIGATED OR TESTED IN ANY WAY.  IT WAS VOLUNTARILY DISMISSED FOUR MONTHS AFTER IT WAS FILED.  THERE WAS ABSOLUTELY NO REAL LITIGATING OF THE ALLEGATIONS THAT HE MADE IN THAT COMPLAINT.

AND MOREOVER, IF YOU DO LOOK AT THE ALLEGATIONS, WHICH I KNOW YOU HAVE NOW, THEY DON'T EVEN SUPPORT WHAT THE PLAINTIFFS

HERE ARE TRYING TO SAY.

SO AS AN INITIAL MATTER, WE HAVE IT AS UNDISPUTED THAT DXC DID NOT CUT $2.7 BILLION OF COST IN ITS FIRST YEAR, THERE'S NO DISPUTE OF THAT, PLAINTIFFS DON'T ALLEGE OTHERWISE.  AND HILTON, HIMSELF, DOES NOT ALLEGE THAT DXC HAD OR EXECUTED A $2.7 BILLION COST CUTTING PLAN FOR THE FIRST FISCAL YEAR, LET ALONE THAT SUCH A PLAN EXISTED PRIOR TO THE FILING OF THE REGISTRATION STATEMENT IN FEBRUARY OF 2017.

NOW WE'VE ATTACHED AS EXHIBIT H, WHICH I NOW KNOW AND YOU HAVE LOOKED AT IT, HIS CENTRAL ALLEGATION IS THAT HE WAS WRONGFULLY TERMINATED FOR FAILING TO ACHIEVE INTERNAL COST SAVING GOALS THAT HE SAYS, HE ALLEGES THIS, THEY WERE UNIVERSALLY UNDERSTOOD TO BE "PURELY ASPIRATIONAL, AND NOTHING MORE THAN A TOOL TO REDUCE INTERNAL DEBATE."  THAT AT PARAGRAPHS 69 AND 99(A) OF HIS COMPLAINT.

HE ALSO SAYS HE, HILTON, WAS A CONTRIBUTOR TO AND HELPED ACHIEVE THE SUCCESSES THAT DXC ACHIEVED IN THE FIRST YEAR, NAMELY THE $1 BILLION IN COST CUTTING SAVINGS THAT THEY PREDICTED.

HILTON DOES NOT SAY ANYWHERE IN HIS COMPLAINT THAT DXC HAD A PLAN WHEN IT FILED THE REGISTRATION STATEMENT TO CUT $2.7 BILLION IN COSTS AND LIED ABOUT IT TO INVESTORS, HE DOESN'T SAY THAT ANYWHERE.

NOW HE DOES ALLEGE THAT LATER IN TIME, IN ABOUT SEPTEMBER/OCTOBER OF 2017, WELL AFTER THE REGISTRATION

STATEMENT, THAT HE DID EXPRESS CONCERNS ABOUT THE INTERNAL TARGETS THAT WERE BEING SET. BUT THAT WAS SEVEN MONTHS AFTER THE MERGER, AND SAYS NOTHING ABOUT A PLAN OR ANY DISCUSSIONS ABOUT A PLAN, PRIOR TO THE REGISTRATION STATEMENT BEING FILED.

SO WE WOULD SUBMIT THAT TO THE EXTENT YOU EVEN CONSIDER THE HILTON ALLEGATIONS IN THE CONTEXT OF THIS CASE, THE ONLY CONCLUSION TO BE DRAWN IS THAT THEY DO NOT SUPPORT PLAINTIFF'S THEORY THAT THE REGISTRATION STATEMENT CONTAIN FALSE STATEMENTS.

NOW, WE DID SUBMIT JUDGE TRENGA'S DECISION TO YOU YESTERDAY THAT WAS JUST ISSUED EARLIER THIS WEEK. AND WHILE THAT WAS A SECTION 10 CASE AS OPPOSED TO A SECTION 11 CASE THAT WE HAVE HERE, BOTH COMPLAINTS ARE SIMILARLY PREMISED ON THE HILTON ALLEGATIONS FROM HIS EMPLOYMENT LAWSUIT.

AND AS YOU NOTED, I WON'T BELABOR IT, BUT I JUST WANT TO WALK THROUGH SOME OF IT, JUDGE TRENGA, MUCH LIKE I DID, NOTED THAT ACCORDING TO HILTON'S COMPLAINT, HILTON SUPPORTED AND HELPED ACHIEVE DXC'S ACTUAL PLAN COST IN YEAR ONE, THAT'S THE 1 BILLION IN COST SAVINGS, AND FOUND THAT HILTON SUCCESSFULLY EXECUTED ON THE WORK FORCE OPTIMIZATION GOALS.

JUDGE TRENGA FURTHER FOUND THAT HILTON'S ALLEGATIONS CONCERN ASPIRATIONAL TARGETS IN AN INTERNAL BUDGET AND DID NOT RELATE TO THE WORK FORCE BUDGETS THAT HAD BEEN ACHIEVED, AND THEN BASED ON ALL OF THAT, AS YOU'VE SEEN, JUDGE TRENGA CONCLUDED THAT HILTON'S ALLEGATIONS DO NOT MAKE PLAUSIBLE THAT

DEFENDANT'S STATEMENTS TO INVESTORS WERE ACTUALLY OR KNOWINGLY FALSE.

YOUR HONOR, FOR THE SAME REASONS -- FOR THOSE SAME REASONS, WE WOULD SAY HERE THE HILTON COMPLAINT CANNOT SERVE AS THE BASIS FOR PLAINTIFF'S ALLEGATIONS. AT BOTTOM, THEIR RELIANCE ON HILTON IS ACTUALLY COMPLETELY UPSIDE DOWN. THEY POINT TO HIM AS THEIR SOURCE FOR THE SUPPOSED PLAN TO CUT 2.7 BILLION IN THE FIRST YEAR. BUT HERE'S WHAT HE SAYS, HE SAYS THERE WAS NO SUCH PLAN, THE COMPANY DID NOT CUT $2.7 BILLION IN COSTS IN THE FIRST YEAR, AND HE WAS UNFAIRLY FIRED AFTER HELPING DXC ACTUALLY ACHIEVE ITS STATED FIRST YEAR GOALS.

THE SECRET PLAN THAT NEVER EXISTED, WAS NEVER IMPLEMENTED, CANNOT GIVE RISE TO A FEDERAL SECURITIES COMPLAINT. AND WE WOULD SUBMIT THAT ON THAT BASIS, THIS COMPLAINT SHOULD BE DISMISSED.

I'M HAPPY, YOUR HONOR, TO TAKE MORE QUESTIONS RIGHT NOW AND MAYBE I'LL JUST PAUSE FOR A BIT, IF THERE'S SOME CONCERN AGAIN THAT THE OTHER CASE IS A SECTION 10(B) CASE AND THAT WE'VE GOT A SECTION 11 CASE HERE.

LET ME JUST BRIEFLY SAY THAT FIRST OF ALL, AS YOU KNOW, WE BELIEVE THAT THE STATEMENTS AT ISSUE IN THIS SECTION 11 CASE ARE FORWARD LOOKING STATEMENTS AND OPINIONS. AND SO THOSE WOULD REQUIRE PLAINTIFFS TO PLEAD ACTUAL KNOWLEDGE OF FALSITY AND ACTUAL DISBELIEF. SO IN THAT SENSE, THERE'S MORE SIMILARITY IN THIS SECTION 11 CASE TO A SECTION 10(B) CASE,

THAN PERHAPS MY FIRST THING.

I WOULD ALSO SAY THAT THE TIME PERIODS ARE RELEVANT TO ME IN LOOKING AT THIS. SO THE CLAIM HERE IS MORE ATTENUATED IN TIME THAN THE CLAIM IN THE EASTERN DISTRICT OF VIRGINIA CASE. THERE, IN THAT CASE, THE PLAINTIFFS WERE COMPLAINING ABOUT STATEMENTS, AS YOU NOTED, ABOUT STATEMENTS THROUGHOUT FISCAL 2018, AND SO AFTER THE MERGER, AND LEADING UP TO AND DURING A TIME THAT THE STOCK WAS ACTUALLY DECLINING IN 2018. AND FRANKLY, DURING A TIME THAT HILTON DOES ALLEGE HE WAS RAISING CONCERNS INTERNALLY ABOUT THE TARGETS THAT WERE BEING SET.

AND EVEN IN THAT CONTEXT, WITH MUCH CLOSER IN TIME OF ALL THOSE FACTS, JUDGE TRENGA SAID WHAT HE ALLEGED IN HIS COMPLAINT DOESN'T DO THE TRICK FOR PURPOSES OF THE PLEADING STANDARDS.

YOU KNOW, HERE, AS I SAID AT THE OUTSET, PLAINTIFFS ARE COMPLAINING ABOUT STATEMENTS MADE BACK IN FEBRUARY OF 2017 WHEN THE REGISTRATION STATEMENT WAS ISSUED, WHEN NO ONE IS SAYING THAT THERE WAS A PLAN AT THAT TIME TO CUT MORE THAN WHAT WAS DISCLOSED, AND THEY ARE TRYING TO TIE THOSE 2017, EARLY 2017 STATEMENTS, TO A STOCK DROP MORE THAN TWO YEARS LATER THAT GETS THEM TO A POINT WHEN THE STOCK FINALLY GOT BELOW THE REGISTRATION STATEMENT PRICE.

SO I WOULD SUGGEST THAT DESPITE THIS BEING A SECTION 11 CASE, WHEREAS WITH A 10(B) CASE, THAT WE ARE MORE ENTITLED TO A DISMISSAL IN THIS CASE GIVEN THE ATTENUATED NATURE, AS I'VE JUST LAID OUT.

THE COURT: MS. WINE, WOULD YOU LIKE TO COMMENT ON THE SECTION 303, OR ITEM 303, ITEM 503 ARGUMENTS?

MS. WINE: SURE. ABSOLUTELY.

SO ITEM 303 AND 503, AS YOU ARE WELL AWARE, BOTH TALK ABOUT DISCLOSING CERTAIN SUPPOSEDLY KNOWN TRENDS AND RISK FACTORS, THAT'S IN BOTH ITEM 303 AND 503.

NOW HERE, PLAINTIFFS FIRST OF ALL RELY HEAVILY ON THE HILTON ALLEGATIONS, WHICH WE WOULD SAY DON'T HELP THEM, FOR ALL THE SAME REASONS I JUST ARTICULATED DON'T HELP THEM MORE GENERALLY FOR THIS CASE. YOU KNOW, HERE IN PARTICULAR, THE SUBJECTIVE CONCERNS THAT MR. HILTON ALLEGEDLY RAISED WERE RAISED AFTER THE REGISTRATION STATEMENTS'S EFFECTIVE DATE. SO THEY CAN'T ESTABLISH A KNOWN TREND THAT WAS KNOWN TO THE SPEAKERS AT THE TIME THAT THEY MADE THEIR STATEMENTS IN THE REGISTRATION STATEMENTS.

AND THEN I WOULD ALSO SAY, AS I REFERRED TO BEFORE, THAT FOR ITEM 303 AND 503, BECAUSE IT HAS TO BE A KNOWN TREND, THERE IS AN ELEMENT OF KNOWLEDGE, AN AWARENESS OF STATING WRONG FACTS, OR NOT STATING THINGS THAT YOU KNEW YOU SHOULD HAVE DISCLOSED.

AND PLAINTIFF'S DECISION IN THEIR COMPLAINT TO SPECIFICALLY DISCLOSE ANY ALLEGATIONS THAT ARE BASED ON FRAUD, RECKLESSNESS OR INTENTIONAL MISCONDUCT, THAT'S FOUND IN PARAGRAPHS 100 AND 110 OF THEIR COMPLAINT, UNDERCUTS THEIR ITEM 303 AND 503 CLAIMS BECAUSE BOTH REQUIRE DISCLOSURE OF

KNOWN TRENDS.

THE COURT: YOU KNOW, THAT WAS -- I THINK THERE'S A DIFFERENCE BETWEEN KNOWLEDGE AND FRAUD. BUT -- SO I'M NOT SURE THAT THERE'S A DISCLAIMER, I'M NOT SURE THAT THERE ARE FACTS THAT SUPPORT THE KNOWLEDGE PORTION OR THAT THE RISK FACTORS WEREN'T ADEQUATELY DISCLOSED. BUT I UNDERSTAND YOUR ARGUMENT, I'M NOT SURE I CAN GO THAT FAR WITH YOU, THAT THAT WAS AN ACTUAL DISCLAIMER OF KNOWLEDGE. IT'S A CLOSE CALL.

MS. WINE: YEAH.

I MEAN, IT'S HARD TO IMAGINE IF YOU HAVE KNOWLEDGE OF SOMETHING THAT YOU DIDN'T DISCLOSE, HOW THAT DOESN'T RISE TO INTENTIONAL OR RECKLESS CONDUCT. BUT I --

THE COURT: IT COULD BE PURE NEGLIGENT CONDUCT. IT COULD BE, WELL CUTTING A BILLION IS SO BIG, WHAT'S ANOTHER BILLION.

I MEAN, SO IT'S JUST NEGLIGENT, AND IT'S -- YOU KNOW, I'M NOT SURE THAT REALLY -- I DON'T KNOW THAT I NEED TO GO DOWN THAT ROAD IN PARSING THE DIFFERENCE OF THE WAIVER.

MS. WINE: AND WE WOULD SAY YOU WOULDN'T EITHER, FOR THE REASONS I FIRST SAID, IN THAT WE AGREE WITH YOU, WE DON'T THINK THERE WAS A KNOWN TREND THAT WASN'T DISCLOSED, OR AT LEAST THERE HASN'T BEEN ANY ALLEGATIONS THAT WOULD SUPPORT THAT.

THE COURT: OKAY. ALL RIGHT. I WILL COME BACK TO YOU AT THE END, MS. WINE, TO FINISH UP, SINCE IT'S YOUR MOTION.

BUT LET ME TURN TO PLAINTIFFS.  MS. WOLKE, ARE YOU TAKING THE LEAD ON THIS?

MS. WOLKE:  ACTUALLY, CO-COUNSEL, MR. PORRITT IS, YOUR HONOR.

THE COURT:  OKAY.  MR. PORRITT, GOOD MORNING.

MR. PORRITT:  GOOD MORNING, YOUR HONOR.

THANK YOU.

COULD YOU HEAR ME?

THE COURT:  I CAN.

MR. PORRITT:  GREAT.  THANK YOU.

SO A BUNCH OF THINGS TO DISCUSS THERE, YOUR HONOR, BUT I WOULD AGREE -- PLAINTIFF WOULD AGREE THIS REALLY COMES DOWN TO WHETHER PLAINTIFF HAS ADEQUATELY ALLEGED -- PLAINTIFFS HAVE ADEQUATELY ALLEGED WHETHER A PRE-EXISTING PLAN TO CUT 2.7 BILLION IN COSTS EXISTED BEFORE THE MERGER.  AND NATURALLY, WE SUBMIT WE HAVE ADEQUATELY PLEADED THAT.  I THINK IT'S VERY CLEARLY PLEADED.

FIRST OF ALL, WHILE THERE'S BEEN A LOT OF DISCUSSION ABOUT HILTON'S COMPLAINT, OF COURSE THE MOTION IS TO DISMISS PLAINTIFF'S COMPLAINT, AND SO I WOULD POINT TO THE RELEVANT PARAGRAPHS IN PLAINTIFF'S COMPLAINT WHICH ARE ENTIRELY TO BE TAKEN AS TRUE FOR THIS PURPOSE, ASSUMING THEY ARE WELL PLEADED, AND WE BELIEVE THEY ARE, THEY ARE PARTICULARIZED, THEY ARE NOT JUST CONCLUSORY.

BUT WE HAVE QUITE CLEARLY IN PARAGRAPH 53 OF OUR

COMPLAINT, SAYS, DXC HAD AN INTERNAL BUDGET ESTABLISHED BY DEFENDANT LORRY, CALLING FOR 2.7 BILLION IN CUTS WITHIN THE FIRST 12 MONTHS AFTER THE MERGER.

SO I MEAN, THAT'S ABOUT AS CLEAR AN ALLEGATION AS YOU COULD HAVE THAT THERE WASN'T A PRE-EXISTING PLAN. AND IT RELIES UPON, ADMITTEDLY, THE ALLEGATION IN HILTON'S COMPLAINT. AND WE DIDN'T SET FOURTH THE ENTIRE ALLEGATIONS IN HILTON'S COMPLAINTS, OR ATTACH IT TO OUR COMPLAINT, MAINLY BECAUSE IT LARGELY ADDRESSES POST-MERGER ACTIVITY. AND THAT IS REALLY THE FOCUS OF THE 10(B)(5) CLAIM AND HILTON'S CLAIM.

AND NONE OF THOSE ACTIONS REALLY WITH RESPECT ARE RELEVANT TO THIS ALLEGATION, TO THIS CASE.

THE COURT: BUT MR. PORRITT, I GUESS I'M REALLY TROUBLED BY YOUR OTHER ALLEGATION THAT IN THE FIRST YEAR, $1 BILLION WAS ACHIEVED. AND I CAN'T IGNORE THAT. THAT'S A FACT YOU'VE ALLEGED, OR YOU'VE ACKNOWLEDGED YOU CAN'T WALK AWAY FROM THAT, THAT WAS ALL OVER WALL STREET.

SO I DON'T JUDGE CREDIBILITY OF ANYTHING NOW, THAT'S CERTAINLY TRUE, BUT I DO HAVE TO LOOK AT THE CLEAR DISCREPANCIES AND CONTRADICTIONS WITHIN YOUR COMPLAINT IN EVALUATING WHETHER STATEMENTS, SUCH AS PARAGRAPH 53, ARE ACTUALLY FACTUAL ALLEGATIONS OR CONCLUSORY.

MR. PORRITT: WELL, CERTAINLY I DON'T BELIEVE THEY ARE CONCLUSORY. SO I THINK THE MISREPRESENTATION HERE IS REALLY -- CAN BE STATED IN VERY CLEAR TERMS, WHICH IS THEY SAID

THEY HAD A PLAN TO CUT BY A BILLION AND A HALF IN THE FIRST 12 MONTHS AFTER THE MERGER, AND THE FACT THEY HAD A PLAN TO CUT 2.7 BILLION. THAT WAS EXISTING AT THE TIME, SO IT'S A MISREPRESENTATION.

THE COURT: IN THE FIRST YEAR.

MR. PORRITT: IN THE FIRST YEAR.

AND SO THE FACT THAT THEY ULTIMATELY ONLY ACHIEVED ONE BILLION OF THOSE CUTS, IT DOESN'T -- I DON'T THINK CONTRADICTS, OR IS NOT ENOUGH TO CONTRADICT OUR ALLEGATION, BASED UPON MR. HILTON'S STATEMENTS, THAT --

THE COURT: BUT I DO LOOK AT PLAUSIBILITY. AND IN LOOKING AT YOUR ALLEGATIONS, AND I GUESS ONE THING THAT I'M REALLY CONCERNED ABOUT IS THAT GIVEN THAT THE REGISTRATION STATEMENT PROMISED A BILLION DOLLARS IN CUTS IN THE FIRST YEAR, AND THE -- AND THIS IS JUST BASED ON YOUR ALLEGATIONS.

AND AT THE END OF THE FIRST YEAR, A BILLION DOLLARS IN CUTS WAS ACHIEVED. HOW IS IT PLAUSIBLE THAT THERE WAS A PLAN TO CUT MORE, WHEN NEITHER THE REGISTRATION STATEMENT NOR THE ON-THE-GROUND RESULTS AT THE END OF THE YEAR SHOW ANY SUPPORT FOR THAT?

YOU KNOW, IT JUST SEEMS IMPLAUSIBLE THAT THERE WAS A SECRET PLAN THAT UTTERLY AND COMPLETELY AND RIDICULOUSLY FAILED AND THAT THAT SHOULD BE SECURITIES FRAUD, WHEN I MIGHT HAVE SAID IT OUT LOUD, BUT NOBODY PAID ANY ATTENTION TO ME, IS REALLY WHAT IT SOUNDS LIKE.

SO MAYBE THIS REALLY IS WHAT MS. WINE ARGUES IS JUST CORPORATE CHATTER IN THE BOARD ROOM, OR THIS ISN'T EVEN THE BOARD ROOM, IN THE EXECUTIVE SUITE, ABOUT HOW FAR CAN WE TAKE THIS OVER TIME.

THAT'S WHERE I'M REALLY STRUGGLING HERE.

MR. PORRITT:  WELL, THE ALLEGATIONS IN OUR COMPLAINT AND REFLECTED IN MR. HILTON'S COMPLAINT, FOLLOW, I THINK WE CAN BE MORE AGGRESSIVE HERE WITH THE CUTS WE HAVE ANNOUNCED.

IT REFERS TO AN INTERNAL BUDGET IN AN OFFICIAL CORPORATE DOCUMENT CONTAINING $2.7 BILLION IN CUTS.  THAT'S NOT CHITCHAT, THAT'S NOT DO YOU THINK YOU CAN GO A BIT BETTER, THAT'S NOT WATER COOLER TALK, THAT'S AN INTERNAL BUDGET OF 2.7 BILLION.

AND YOU GO OUT TO THE PUBLIC AND SAY 1.5 BILLION, WHICH BY THE WAY, EVEN THE ANALYSTS AT THAT TIME THOUGHT 1.5 BILLION WAS AGGRESSIVE AND UNACHIEVABLE.  SO THE FACT THAT --

THE COURT:  BUT THAT'S NOT THE ISSUE.  YOU KNOW, BUT THAT'S NOT FRAUD, THAT THE ANALYST DISAGREE.  THAT'S CORPORATE MISMANAGEMENT, AND I'M NOT HERE TO DETERMINE THAT.

MR. PORRITT:  WELL, THIS ISN'T A FRAUD CLAIM, YOUR HONOR.

THE COURT:  WELL, FAIR ENOUGH.

BUT A BILLION WAS PROMISED IN THE FIRST YEAR, AND YOUR JP MORGAN ANALYST SEEMED TO THINK IN THREE YEARS, THAT WOULD BE A GOOD IDEA.  WELL, GOOD FOR HIM, BUT THAT DOESN'T MATTER.  AND HE MIGHT HAVE BEEN RIGHT, I'M NOT SUGGESTING OTHERWISE, BUT THE

REGISTRATION STATEMENT DID PROMISE A BILLION DOLLARS IN CUTS IN ONE YEAR, AND THAT WAS DELIVERED.

MR. PORRITT: OUR POINT IS WE WOULD SUBMIT THAT IF YOU HAVE A PLAN, IF YOU MAKE A REPRESENTATION -- IF YOU HAVE A PLAN TO 2.7 BILLION IN BUDGET CUTS AND YOU PUT A STATEMENT IN THE REGISTRATION STATEMENT SAYING, WE HAVE A PLAN TO MAKE CUTS, YOU HAVE TO PULL THE $2.7 BILLION IN, OTHERWISE THAT'S A MISREPRESENTATION.

IN A SECTION 11 -- WE DON'T HAVE TO SHOW, MANY OF MS. WINE'S ARGUMENTS ARE ALL ADDRESSED ESSENTIALLY TO RELIANCE AND LOSS CAUSATION ITEMS WHICH ARE NOT ELEMENTS HERE IN SECTION 11.

THE COURT: NO, THEY ARE NOT.

MR. PORRITT: SO IT DOESN'T MATTER TWO YEARS FROM NOW IS WHEN THE STOCK PRICE WENT DOWN OR HOW WE ACTED OR HOW IT WAS IMPLEMENTED. WHAT MATTERS IS THAT THERE WAS A -- ALL WE HAVE TO YOU SHOW IS THERE WAS A FACTUAL MISREPRESENTATION IN THE REGISTRATION STATEMENT.

AND THEY SAID THEIR PLAN WAS, AS OF THE REGISTRATION STATEMENT, WAS TO DO BUDGET CUTS OF 1.5. AND THAT'S A FALSE STATEMENT, IT WAS 2.7 BILLION. AND THAT'S A MATERIAL MISREPRESENTATION, THAT'S THE ELEMENT, THAT'S ALL WE NEED TO PLEAD AT THIS POINT.

THE COURT: ALL RIGHT.

AND AS MS. WINE SAID IT, AND I THINK YOU PROBABLY AGREE,

THAT'S A VERY STRAIGHTFORWARD THEORY. PROVING IT IS NOT MY CONCERN RIGHT NOW, IT'S JUST ALLEGING ENOUGH FACTS TO SUPPORT IT.

SO I -- I MEAN, IT'S ALWAYS TRICKY TO ME HOW CAREFULLY TO PARSE THE ALLEGATIONS. AND OF COURSE IN SECURITIES CASES, CONGRESS TELLS US THAT WE PARSE THEM MUCH MORE STRICTLY THAN IN OTHER CASES. SECTION 11 DOESN'T HAVE THE SAME ELEMENTS, WE ARE NOT LOOKING AT SCIENTER HERE, THERE MAY BE SOME KNOWLEDGE REQUIREMENTS FOR SOME OF THE ISSUES, BUT MS. WINE WILL COME BACK TO PARAGRAPH 53 AS TO WHETHER THAT IS -- WHY SHE THINKS THAT'S NOT A FACTUAL ALLEGATION.

WHY DON'T I LET YOU MOVE ON FROM THAT.

MR. PORRITT: SO THAT IS, TO MY MIND, ONCE YOU ACCEPT, AS I THINK WITH RESPECT, YOU MUST, THAT WE HAVE ADEQUATELY PLEADED THAT THERE WAS THE BUDGET AS OF THE TIME OF THE REGISTRATION STATEMENT WAS TO CUT 2.7 BILLION, THEN I THINK EVERYTHING ELSE, THE CLAIM, EVERYTHING ELSE FALLS, ALL THEIR ARGUMENTS REALLY FALL AWAY BY DEFENDANTS.

FIRST OF ALL, WE SUBMIT THAT THE RISK FACTORS ARE NOT -- WE DON'T THINK THE SAFE HARBOR APPLIES HERE, YOUR HONOR, BECAUSE WE THINK THIS IS AKIN TO AN IPO. THAT'S BRIEFED. DXC DID NOT EXIST BEFORE THIS MERGER, SO IT'S AN IPO.

TO THE EXTENT IT'S A CONTINUING BUSINESS, WHICH IS WHAT DEFENDANTS ARGUED IN THEIR REPLY BRIEF, THAT THESE WERE WELL-TESTED COMPANIES, THEN IT'S A CONTINUATION OF CSC, IT'S

THEIR MANAGEMENT THAT CONTINUED.  AND CSC ISN'T ENTITLED TO RELY ON SAFE HARBOR EITHER BECAUSE OF THEIR IMMEDIATE RECENT SEC SANCTION AT THE TIME OF THE OFFERING.

SO THE SAFER HARBOR, PSLRA/SAFE HARBOR, WE WOULD SUBMIT JUST DOESN'T APPLY.  THE COURT SHOULD NOT CONSIDER IT.  BUT EVEN IF IT DID, IT WOULDN'T EXCUSE THIS SORT OF MISREPRESENTATION OF A KNOWN FACT.

THE RISK FACTORS ARE GENERIC, BOILER PLATE, ABOUT HOW GENERALLY IT MAY NOT BE ABLE TO ACCOMPLISH THE 1.5 BILLION IN CUTS THAT ARE DISCLOSED.  I DON'T THINK THAT ADEQUATELY DISCLOSES THE FACT THAT THEY HAD A 2.7 MILLION PLAN TO CUT.

THE COURT:  SO LET ME ASK --

MR. PORRITT:  SO WE DON'T THINK THE SAFE HARBOR -- YES, YOUR HONOR.

THE COURT:  SO LET ME JUST ASK YOU THIS.

YOU ALLEGE THAT AS OF THE TIME OF THE REGISTRATION STATEMENT, THAT THERE WAS AN ACTUAL BUDGET TO CUT 2.7 BILLION.  AND YOUR ALLEGATION IS LIMITED, I BELIEVE, TO THE PLAN, THE SECRET PLAN WAS TO CUT 2.7 IN YEAR ONE; IS THAT CORRECT?  THAT'S WHAT YOUR CASE IS?

MR. PORRITT:  THAT'S CORRECT, YOUR HONOR.

THE COURT:  OKAY.  SO CUTS IN YEARS TWO AND THREE, WERE -- I'M SORRY, LET ME SAY THAT ANOTHER WAY.

IF I READ THE HILTON COMPLAINT TO SAY THAT THERE WAS A PLAN TO CUT 2.7 BILLION IN A LONGER PERIOD OF TIME, SAY THREE

YEARS, BECAUSE THAT'S ALL I HAVE HERE, THAT'S NOT YOUR CLAIM. YOU WOULD NOT BE CLAIMING FALSITY IN THE REGISTRATION STATEMENT BASED ON AN EXTENSION OF THE 1 BILLION PLAN INTO YEARS TWO AND THREE TO FLOW IT TO 2.7 BILLION; IS THAT CORRECT?

MR. PORRITT: CORRECT, YOUR HONOR.

I MEAN, WHATEVER THEY MAY HAVE USED, WHATEVER ADAPTATIONS THEY MADE TO THE BUDGET CUTS AFTER THE MERGER AND AFTER THE REGISTRATION STATEMENT, IS REALLY BESIDE THE POINT TO THIS CASE.

I MEAN, TO REFER YOU TO PARAGRAPH 68 OF MR. HILTON'S COMPLAINT, I MEAN, I THINK IT'S VERY CLEAR THERE TOO. IT SAYS, QUITE CLEARLY, LAWRIE'S INTERNAL BUDGET TARGETS DEMANDED THAT THE GLOBAL DELIVERY ACHIEVE APPROXIMATELY 2.7 BILLION IN SAVINGS IN THE FIRST 12 MONTHS AFTER THE MERGER. I MEAN, I THINK THAT'S ABOUT AS STRAIGHTFORWARD AS YOU CAN GET.

THE COURT: I HAD TO READ ON. I ACTUALLY LOOKED TO SEE IF IT ACTUALLY USED THE WORD "DEMANDED." AND YOU CAN'T JUST READ THAT, YOU HAVE TO READ ON THROUGH PARAGRAPH 69 AND 70 TO REALLY GET THE CONTEXT OF THAT ALLEGATION.

MR. PORRITT: WELL, NONE OF THOSE ALLEGATIONS CONTRADICT THAT THE INTERNAL BUDGET TARGETS CALLED FOR 2.7 BILLION IN SAVINGS IN THE FIRST 12 MONTHS AFTER THE MERGER. NONE OF THEM TAKE THAT BACK.

IT SAYS THAT HE ADVISED THEM OF THOSE RESERVATIONS, ABOUT CONCERNS OR RESERVATIONS ABOUT THE PACE OF THOSE CUTS, WHICH TO

THE EXTENT IT'S RELEVANT IN THIS CASE, GOES TO LAWRIE'S KNOWLEDGE. HE OBVIOUSLY KNEW ABOUT THE CONTENTS OF HIS OWN BUDGET BECAUSE IT WAS HIS BUDGET, SO IT'S HARDLY AS IF HILTON NEEDED TO TELL HIM THE CONTENT OF THE BUDGET.

THE COURT: IF YOU LOOK AT THE LAST LINE OF PARAGRAPH 69 AS THE BOOKEND TO THE FIRST LINE OF PARAGRAPH 68, "UPON INFORMATION AND BELIEF," THIS IS HILTON'S SPEAKING, OR HIS LAWYER, "LAWRIE UNDERSTOOD HIS OWN INTERNAL BUDGET TO BE MERELY ASPIRATIONAL AND A TOOL TO REDUCE INTERNAL DEBATE."

I CAN'T IGNORE THAT AND JUST LOOK IN ISOLATION THAT LAWRIE'S INTERNAL BUDGET TARGETS DEMANDED THE 2.7 BILLION. IT CAN'T BE DEMANDED AND ASPIRATIONAL AT THE SAME TIME.

MR. PORRITT: WELL, WITH RESPECT, YOUR HONOR, FIRST OF ALL, THAT'S NOT IN OUR COMPLAINT.

SECONDLY, NOW YOU ARE GETTING INTO FACTUAL DETERMINATIONS, AND I DON'T THINK ANY OF US ARE IN A POSITION HERE TO DETERMINE QUITE EXACTLY WHAT IT MEANS.

WHAT WE DO KNOW IS THAT HE HAD AN INTERNAL BUDGET THAT REQUIRED 2.7 BILLION IN CUTS, THAT'S WHAT IS ALLEGED AND STATED CLEARLY IN MR. HILTON'S COMPLAINT. SO I DON'T THINK YOU CAN NOW GET INTO ADDRESSING CREDIBILITY OR EVEN WHAT HILTON IS SPECULATING TO WHAT IS IN LAWRIE'S MIND AT THIS POINT IN TIME.

THE COURT: SO, YOU KNOW, I CAN LOOK AT THE HILTON COMPLAINT BECAUSE IT'S ESSENTIALLY INCORPORATED INTO YOUR COMPLAINT. AND IF YOU MISREPRESENT WHAT MR. HILTON ALLEGED,

THEN I HAVE TO LOOK AT THAT.

YOU DIDN'T -- IF YOU HAD SPOKEN TO MR. HILTON AND HIS STATEMENTS IN YOUR PRE-SUIT DISCOVERY WERE DIFFERENT THAN WHAT HE ALLEGED, IT WOULD BE ONE THING. BUT YOUR COMPLAINT MAKES NO INDICATION THAT YOU KNOW ANYTHING OTHER THAN WHAT HE ALLEGED.

AND IF THAT'S THE CASE, YOU HAVE TO ALLEGE IT FAIRLY. YOU HAVE TO CHARACTERIZE IT PROPERLY. AND FRANKLY, I THINK THE E.D. VIRGINIA JUDGE FELT THE SAME WAY AT PAGE 22 WHEN HE EVALUATED WHAT THOSE CLAIMS WERE. AND SO, YOU KNOW, I JUST DON'T THINK YOU GET TO DO THAT. I DON'T THINK ABSENT ANY OTHER INVESTIGATION THAT IS REVEALED TO ME IN THE COMPLAINT, THAT YOU DRAFTED, I HAVE TO CONSIDER WHETHER YOU'VE PROPERLY GLEANED THE ALLEGATIONS FROM THE HILTON COMPLAINT, AND I DON'T THINK YOU HAVE.

MR. PORRITT: WELL, WITH RESPECT, YOUR HONOR, I WOULD SUBMIT WE DID NOT MISREPRESENT, CERTAINLY IT WAS NOT OUR INTENTION TO MISREPRESENT.

THE COURT: OF COURSE.

MR. PORRITT: IN THE ASPECT OF THE COMPLAINT. IT'S A PUBLIC DOCUMENT WE ARE LOOKING AT. SO IT'S NOT AS IF WE WERE HIDING THE BALL HERE.

I DON'T THINK THAT -- I DON'T READ THAT STATEMENT, FRANKLY, AS CONTRADICTING THERE WAS AN INTERNAL BUDGET REQUIRED FOR 2.7 BILLION, PRESUMABLY THE 1.5 BILLION WAS ASPIRATIONAL AS WELL.

AND THERE WAS ALLEGATIONS LATER IN MR. HILTON'S COMPLIANT ABOUT HOW IN GENERAL, 80 PERCENT OF THE TARGET WAS GOOD ENOUGH FOR MR. LAWRIE IN TERMS OF MEETING BUDGET TARGETS.  SO EVEN 80 PERCENT OF 2.7 BILLION WOULD BE AN EXTRAORDINARILY NUMBER OF CUTS.

SO I GUESS WE FUNDAMENTALLY WOULD DISAGREE WITH YOUR HONOR'S READING THAT THIS STATEMENT -- SENTENCE THAT'S IN THE PARAGRAPH 69, UNDERMINES OR TAKES AWAY THE FACT THAT THERE WAS NO BUDGET FOR 2.7 BILLION AS OF THE TIME OF THE REGISTRATION STATEMENT.  WE THINK THAT'S VERY CLEARLY SET OUT IN 68.  AND MR. HILTON DOESN'T SAY THAT THERE'S ANY INCENTIVE TO STATE THAT HE SOMEHOW GOT MR. LAWRIE TO CHANGE HIS INTERNAL BUDGET, YOU KNOW, DOWNWARDS TO BE MORE LIKE 1.5 BILLION.

SO WE WOULD SUBMIT THAT, AGAIN, I THINK THIS COMES DOWN TO A VERY SIMPLE FACTUAL ALLEGATION THAT THERE WAS A BUDGET TO CUT 2.7 BILLION.  WE PLEADED THAT.  WE ARE UNDER RULE 8, YOUR HONOR, SO ONLY PLAUSIBLE, WE DON'T HAVE TO DO PARTICULARIZED PLEADING HERE.

AND SO WE HAVE A PLAUSIBLE PLEADING THAT THERE WAS A BUDGET TO CUT 2.7 BILLION, AS PLEADED IN OUR COMPLAINT, AND THAT HAS TO BE ACCEPTED AS TRUE AT THIS PARTICULAR POINT IN TIME.  THAT SHOWS THERE WAS A MISREPRESENTATION MADE IN THE REGISTRATION STATEMENT, WHICH IS NOT COVERED -- WHICH IS MATERIAL, IT WAS NOT PUFFERY, AND IS NOT COVERED BY THE SAFE HARBOR, EITHER BECAUSE THE SAFE HARBOR DIDN'T APPLY, OR BECAUSE

THE LANGUAGE IS TOO GENERIC AND NOT MEANINGFUL.

THE COURT: OKAY.

AND THEN JUST SO THAT I UNDERSTAND YOUR ARGUMENT, MR. PORRITT, IF I ACCEPT YOUR PREMISE FROM PARAGRAPH 53 THAT YOU HAVE FACTUALLY ALLEGED THIS INTERNAL $2.7 BILLION BUDGET, THEN IT'S YOUR POSITION THAT THE -- ANYTHING LABELED AS OPINION OR RISK FACTORS, ARE INADEQUATE OR INCORRECT BECAUSE THEY PRESUME THE 1 BILLION THAT WAS DISCLOSED AS OPPOSED TO BEING -- DISCLOSURES BASED ON 2.7 BILLION; WOULD THAT BE FAIR?

MR. PORRITT: I THINK THAT'S FAIR, YOUR HONOR.

YOUR HONOR, WE ALLEGED A NUMBER OF MISREPRESENTATIONS, ABOUT FIVE, I THINK, IN TOTAL, PLUS OMISSIONS. THEY ALL REALLY CENTER ON THIS 2.7 BILLION BUDGET CUTS.

AND SO YES, THEY ARE MISLEADING, I THINK, AS THEY DON'T GIVE A FULL IMPRESSION, BUT YOU DO HAVE TO READ THE REGISTRATION STATEMENT WITH RESPECT TO MATERIALS, AND THERE'S A LOT OF THEM, AS A WHOLE, AND THEY ALL HAVE TO BE READ IN THE CONTEXT OF THE 1.5 BILLION STATEMENT WHICH WE ALLEGE IS MISLEADING.

AND JUST TO CLOSE OUT THE DISCUSSION ON THE RELIANCE ON THE HILTON COMPLAINT, I DETECT YOUR HONOR HAS EXPRESSED SOME DOUBT AS TO THE DEGREE TO WHICH WE ARE ENTITLED TO RELY ON ALLEGATIONS IN THE COMPLAINT TO FORM ALLEGATIONS IN OUR OWN COMPLAINT.

AND THE NINTH CIRCUIT HAS ACCEPTED THESE ALLEGATIONS AS AN

APPROPRIATE MATERIAL THAT A PLAINTIFF MAY RELY ON, THAT THESE ALLEGATIONS FILED BY MR. HILTON WERE FILED, THEMSELVES, UNDER RULE 11 CERTIFICATION, IF YOU LIKE, OR SIGNATURE.

SO THE NINTH CIRCUIT IN VERIFONE -- I MEAN, IT'S ALSO BRIEFED, YOUR HONOR, IT WASN'T RAISED BY DEFENDANTS, SO WE DID NOT CITE THIS, BUT I WOULD CITE THE VERIFONE DECISION BY THE NINTH CIRCUIT, 704 F.3D, 694, IT'S A 2012 DECISION IN THE NINTH CIRCUIT WHICH ACCEPTED -- PROPERLY ACCEPTED COMPLAINT ALLEGATIONS IN A SEPARATE COMPLAINT AS BEING A BASIS FOR ALLEGATIONS --

THE COURT: THAT'S HELPFUL.

MR. PORRITT: AND IT WAS RECENTLY CITED BY A DECISION BY JUDGE BREYER IN MCKESSON. YOUR HONOR, WE CAN SUBMIT THAT CASE. I ONLY HAVE THE SLIP OPINION IN FRONT OF ME, I'M AFRAID, YOUR HONOR, BUT IT HAS --

THE COURT: IF SOMEONE ON YOUR TEAM CAN LOOK UP A CITE AND GIVE IT TO ME BEFORE WE CONCLUDE, THAT WOULD BE REALLY HELPFUL. AND MAYBE YOU'VE GOT SOMEONE ELSE THERE WHO CAN JUST LOOK UP MCKESSON FOR ME. I DON'T WANT ADDITIONAL SUBMISSIONS BECAUSE THAT OPENS UP A WHOLE PANDORA'S BOX.

MR. PORRITT: I'VE WRITTEN ENOUGH ON THIS CASE AS WELL, YOUR HONOR. I'M NOT LOOKING TO ADD MORE PAPER TO YOUR HONOR'S BUSY DOCKET.

THE COURT: OKAY.

MR. PORRITT: SO WE WOULD SUBMIT THOSE CASES, THEY

ARE WELL REASONED.  AND THE MCKESSON CASE, JUDGE BREYER, HIMSELF, CITES IT, AND A LOT OF CASES OUT OF THE SOUTHERN DISTRICT OF NEW YORK WHERE THESE ALLEGATIONS ARE LOOKED AT AS WELL.

THE COURT:  OKAY.  I APPRECIATE THAT CITATION AND I WILL CERTAINLY LOOK AT VERIFONE AND I THINK VERIFONE IS CITED IN THE PAPERS FOR OTHER PURPOSES AS WELL.  I ASSUME IT'S THE SAME VERIFONE I THINK IT IS.

MR. PORRITT:  I SUSPECTED THIS TOO, YOUR HONOR.  I WILL SIMPLY CHECK.

THE COURT:  I MEAN, VERIFONE IS A CASE WE RELY ON A LOT IN THESE CASES, SO I DON'T THINK THERE'S ANOTHER NINTH CIRCUIT DECISION IN VERIFONE.  IT DOESN'T MATTER, YOU GAVE ME A CITE AND WE CAN MOVE ON.

ALL RIGHT.  THANK YOU.  MR. PORRITT, I APPRECIATE THAT.

I WANT TO RETURN TO MS. WINE, BECAUSE I THINK YOUR ARGUMENT BOILS DOWN TO A VERY SIMPLE PROPOSITION.  IF I ACCEPT THAT PARAGRAPH 53 IS A FACTUAL PLEADING, THEN ALTHOUGH I MIGHT GIVE YOU A LITTLE HAIRCUT ON SOME OF THE OTHER ALLEGATIONS, THAT'S, AT THE END OF THE DAY, NOT YOUR CONCERN, NOR WOULD IT BE CONSIDERED A VICTORY BY MS. WINE IF ALL SHE GOT WAS A HAIRCUT.

SO MS. WINE, WHY DON'T YOU ADDRESS THE CLAIMS REGARDING PARAGRAPH 53, AND WHY I SHOULD NOT ACCEPT THAT?

MS. WINE:  ABSOLUTELY.

AND THIS RELATES TO WHAT PLAINTIFFS NEED TO DO TO PLEAD A FACT, FALSE STATEMENTS. AND I JUST WANT TO NOTE WE ARE WELL AWARE OF WHAT THE ELEMENTS OF THE SECTION 11 CLAIM ARE.

MY OPENING STATEMENTS ALL POINT TO THIS POINT, I WAS ARGUING FALSITY, AS YOU KNOW, AND WITHIN THAT, FORWARD LOOKING STATEMENTS AND OPINIONS. SO THIS IS ALL GOING TO THE SAME ELEMENT.

AND IT'S NOT SUFFICIENT, AS MY COLLEAGUE JUST SAID, THAT ALL THEY NEED TO DO IS ALLEGE A MATERIAL MISSTATEMENT. WHAT THEY NEED TO DO IS ALLEGE SUFFICIENT FACTS THAT THE STATEMENTS WERE FALSE AT THE TIME THEY WERE MADE.

THEY POINTED TO PARAGRAPH 53. IF YOU LOOK RIGHT BEFORE IT, PARAGRAPH 52 SAYS, AS ALLEGED IN THE HILTON COMPLAINT, AND SO 53 IS PREMISED ON HILTON. MUCH LIKE ALMOST THE ENTIRETY OF THEIR COMPLAINT, I THINK HILTON IS MENTIONED IN 25 DIFFERENT PARAGRAPHS THROUGHOUT THEIR COMPLAINT. SO THAT IS THE PREMISE FOR THE STATEMENTS THAT THEY ARE ALLEGING ARE FALSE IN 53.

PLAUSIBILITY IS KEY, AS YOU POINTED OUT, AND MY COLLEAGUE JUST ACKNOWLEDGED. AND HERE, IT IS JUST NOT PLAUSIBLE THAT THERE WAS THIS PLAN THAT, YOU KNOW, EITHER WAS NEVER EXECUTED OR FAILED IN EXECUTION. IT'S JUST NOT PLAUSIBLE.

THERE IS NO SUGGESTION THAT THERE WAS A PLAN TO CUT 2.7 BILLION IN COSTS PRIOR TO THE TIME THAT THE REGISTRATION STATEMENT WAS FILED. THEY REFERENCED AN INTERNAL BUDGET. NOWHERE DO THEY ALLEGE NOR DOES HILTON SAY THAT THAT BUDGET

DOCUMENT WAS CREATED PRIOR TO THE FILING OF THE REGISTRATION STATEMENT.

I CAN'T FIND ANYTHING ANYWHERE THAT SHOWS THAT THERE WAS A PLAN, IT WAS AN ACTUAL PLAN, AND IT EXISTED PRIOR TO THE TIME OF THE REGISTRATION STATEMENT, LET ALONE THAT IT WAS A PLAN THAT WAS FOLLOWED. BECAUSE WE KNOW WHAT HAPPENED WAS ACTUALLY WHAT DXC SAID IT WOULD DO, WHICH WAS TO CUT THE 1 BILLION.

AND I JUST WANT TO MAKE ONE MORE NOTE. YOU MENTIONED PARAGRAPH 68 AND 69 OF THE HILTON COMPLAINT WHERE EVEN HILTON ACKNOWLEDGES THAT LAWRIE VIEWED THE ADDITIONAL CUTS AS PURELY ASPIRATIONAL.

I WOULD ALSO POINT YOUR HONOR TO PARAGRAPH 66 OF THE HILTON COMPLAINT WHERE HILTON SAYS, IN ROUGH NUMBERS, HILTON AND LAWRIE AGREED THAT GLOBAL DELIVERY COULD ULTIMATELY ACHIEVE APPROXIMATELY 2.7 BILLION IN ANNUAL SAVINGS. ULTIMATELY ACHIEVE. NOT IN THE FIRST YEAR, ULTIMATELY ACHIEVE. THAT IS WHAT HILTON SAYS. AND THESE ALLEGATIONS, IN NO WAY SUPPORT THE PLAINTIFF'S CLAIM HERE IN PARAGRAPH 53 OF THEIR COMPLAINT.

THE COURT: SO -- BUT LET ME BACK UP ON THAT, BECAUSE I'M NOT SURE YOU'VE REALLY ADDRESSED, HEAD ON, WHAT MR. PORRITT IS ARGUING.

HE'S SAYING THAT UNDER NINTH CIRCUIT LAW, THAT THE PLAINTIFF CAN RELY ON THE PLEADINGS OF ANOTHER CASE AND THAT THIS, THEREFORE, IN PARAGRAPH 53, IS A FACTUAL ALLEGATION THAT THERE WAS A SECRET $2.7 BILLION BUDGET FOR ATTAINING IN THE

FIRST 12 MONTHS. HE'S SAYING THIS IS A FACTUAL ALLEGATION, AND I NEED YOU TO ADDRESS THAT EITHER AGAIN OR DIRECTLY.

MS. WINE: SURE.

WE COULD RELY ON ANOTHER PLEADING IN THEORY, IF THAT PLEADING ACTUALLY SAID WHAT PLAINTIFFS ARE SAYING IT SAYS HERE.

SO THEY ARE TRYING TO RELY ON THE HILTON COMPLAINT TO SAY THAT THERE WAS A PLAN TO CUT 2.7 BILLION IN COSTS IN THE FIRST YEAR AND THAT THAT PLAN WAS KNOWN PRIOR TO THE REGISTRATION STATEMENT.

THAT IS NOT IN THE HILTON COMPLAINT ANYWHERE.

THE COURT: SO I CAN'T MAKE CREDIBILITY DETERMINATIONS OR FACTUAL DETERMINATIONS HERE.

SO IF THE HILTON COMPLAINT DIDN'T EXIST, A PLAINTIFF IS NOT REQUIRED TO ANNOTATE WHERE THEIR FACTS COME FROM. NORMALLY IN A CASE LIKE THIS, I GET CONFIDENTIAL WITNESSES. AND I DON'T HAVE THAT HERE, IT'S NOT REQUIRED, IT'S A TOOL.

BUT I THINK MR. PORRITT IS SAYING TO ME, TAKE THIS AT FACE VALUE, THIS IS A FACTUAL ELECTION, MAYBE HE WILL PROVE IT, MAYBE HE WON'T. WE DON'T DO THAT AT THE MOTION TO DISMISS STAGE.

SO I JUST NEED TO BE -- LET'S PUT ASIDE HILTON, ALTHOUGH I'M NOT SAYING I WILL PUT IT ASIDE, BUT IF HILTON DIDN'T EXIST AND THIS WAS JUST AN ALLEGATION, WHAT WOULD BE WRONG WITH IT, IN YOUR VIEW?

MS. WINE: WELL, I WOULD SAY THEY HAVE TO HAVE SOME

SUPPORT FOR THEIR ALLEGATIONS.  THEY HAVE TO -- THEY CAN'T JUST STATE SOMETHING IN A CONCLUSORY FASHION WITHOUT ANY SUPPORT FOR IT.

SO IF WE DON'T HAVE HILTON, AND WE DON'T THINK HILTON SUPPORTS IT ANYWAY, BUT IF WE DON'T HAVE HILTON, THEY HAVE POINTED TO NOTHING ELSE.  THE ONLY FACTS THAT WE HAVE ARE THAT DXC MADE A DISCLOSURE ABOUT A PLAN TO CUT A BILLION DOLLARS IN COSTS, AND THEY ACHIEVED THAT PLAN.  THEY DID EXACTLY WHAT THEY TOLD THE MARKET THEY WERE GOING TO DO.  THERE'S NO MISSTATEMENT THERE.  THERE'S NO FALSE STATEMENT.

THEY HAVE NO SUPPORT TO SUPPORT THEIR ALLEGATION THAT A FALSE STATEMENT WAS MADE AT THE TIME OF THE REGISTRATION STATEMENT WHEN THEY ANNOUNCED THAT PLAN TO CUT THE BILLION DOLLARS IN COSTS.  THEY JUST HAVE NOTHING.  AND THAT'S NOT ENOUGH.

THE COURT:  SO YOUR ARGUMENT TO ME IS THAT PARAGRAPH 53 IS A CONCLUSION AND THERE IS NO FACTUAL SUPPORT FOR IT.

AND MR. PORRITT TELLS ME, THIS IS A FACT, HE'S ARGUING A FACT OR HE'S ALLEGING A FACT HERE THAT LAWRIE HAD A $2.7 BILLION BUDGET PLAN FOR THE FIRST YEAR, THAT'S A FACT, THAT'S NOT A CONCLUSION.

I DON'T MEAN TO PLAY A SEMANTIC GAME, BUT I THINK THAT'S WHAT MR. PORRITT IS TELLING ME.  THIS IS A FACT, PROOF IT OR DISPROVE IT, THAT'S FINE, THAT'S LATER.

MS. WINE:  IT'S A COMPLETELY UNSUPPORTED ALLEGATION. THERE IS NOTHING ELSE OUT THERE TO SUPPORT THAT THEY HAVE ANY BASIS FOR MAKING THAT ASSERTION.

THE COURT:  SO WHERE'S THE PLEADING REQUIREMENT THAT UNDER RULE 8, THAT THEY HAVE TO THEN PLEAD THE SUPPORT FOR EACH FACT?

I MEAN, A CONCLUSION WOULD BE THAT THE REGISTRATION STATEMENT CAN TAKE FALSE STATEMENTS.  THAT'S A CONCLUSION. THIS IS A FACT.  THIS IS THE UNDERLYING FACT OF WHY IT CONTAINED FALSE STATEMENTS, BECAUSE THE REAL BUDGET WAS 2.7. THE DISCLOSED BUDGET WAS 1 BILLION.

MS. WINE:  YEAH.  I THINK THEY ARE NOT ALLOWED TO JUST MAKE STUFF UP, OKAY.

SO THERE'S A LOT OF THE ISSUES -- I MEAN, UNDER THAT, ANY COMPLAINT WOULD SURVIVE A MOTION TO DISMISS.  THEY CAN'T JUST SAY ANYTHING WITHOUT --

THE COURT:  SO RULE 11, RULE 11, AT THE END OF THE DAY, COULD SHOW THAT THE FACTUAL ALLEGATIONS WERE MADE UP OUT OF WHOLE CLOTH.  THAT'S RARE.  OR MORE LIKELY, THE FACTUAL ALLEGATIONS JUST SIMPLY DON'T PAN OUT IN THE DISCOVERY PROCESS OR BEFORE A JURY, THEY ARE DISBELIEVED.

SO I DON'T TAKE ANY BAD FAITH HERE AT ALL, BUT, YOU KNOW, WHAT I SEE IN COMPLAINTS AND WHAT'S PROVED AT TRIAL ARE OFTEN QUITE DIVERGENT.

IN THE LAST CASE YOU WERE LISTENING TO, ONE PARTY SAYS, I

DIDN'T AUTHORIZE MY NAME TO BE ON THAT LETTER, AND THE OTHER PARTY SAID, YOU TOLD ME YOU SIGNED THIS LETTER.

WELL, YOU KNOW, SOMEBODY IS MAKING IT UP, AND THE JURY WILL DECIDE, IF IT BECOMES A RELEVANT POINT.

SO I'M NOT SURE. IF THIS IS A FACTUAL ALLEGATION, I TAKE IT AS TRUE. I JUST DON'T GET BENEATH IT. I DON'T KNOW WHERE THE REQUIREMENT IS THAT IT THEN BE ANNOTATED WITH, THIS FACT IS BASED ON THE FOLLOWING BUILDING BLOCKS. EVEN UNDER THE PSLRA, I DON'T HAVE THAT REQUIREMENT.

MS. WINE: YOUR HONOR, I WOULD ALSO COME BACK TO WHAT I STARTED WITH HERE, WHICH IS, SO THEN YOU ARE LEFT WITH A SECURITIES CASE WHERE THEY ARE TRYING TO MAKE OUT A SECTION 11 CLAIM FOR STATEMENTS THAT WERE MADE TO THE PUBLIC THAT ACTUALLY BECAME TRUE.

THE COURT: YES.

MS. WINE: RIGHT. SO I DON'T KNOW HOW THERE'S ANY FRAUD ON THE INVESTORS BECAUSE DXC DID EXACTLY WHAT THEY SAID IN THEIR PUBLIC FILING THEY WOULD DO. THAT'S POINT NUMBER ONE.

AND POINT NUMBER TWO, AS I KNOW, AND YOU REFERENCED, WE WOULD ALSO COME BACK TO, EVEN IF YOU ARE STRUGGLING WITH THIS POINT, WE THINK THAT ALL THE STATEMENTS THEY HAVE POINTED TO ARE FORWARD LOOKING, PUFFERY, OPINION STATEMENTS AND ARE NOT ACTIONABLE.

THE COURT: OKAY.

ALL RIGHT. WELL, THANK YOU FOR INDULGING ME ON THAT. I

PUSHED MR. PORRITT, I WANTED TO PUSH YOU EQUALLY ON THIS. AND

I APPRECIATE THE FOCUS ON THAT ISSUE. THAT'S GOING TO HELP ME.

MS. WINE, IS THERE ANYTHING ELSE YOU WANTED TO COMMENT ON

IN THE BRIEFING OR THE ISSUES THAT I HAVE TO DECIDE?

MS. WINE: THAT'S ALL, FROM MY PERSPECTIVE.

THANK YOU FOR YOUR TIME THIS MORNING, YOUR HONOR.

THE COURT: OKAY. AND WE WILL MOVE ON TO OUR CASE

MANAGEMENT IN A MOMENT.

MR. PORRITT, IS THERE ANYTHING ELSE YOU WANTED TO ADD?

MR. PORRITT: THE ONLY THING I WOULD ADD, YOUR HONOR,

IS I HAD A CITATION FOR MCKESSON FOR YOU.

THE COURT: OH, THAT'S WONDERFUL.

MR. PORRITT: TIP OF THE HAT TO MY ASSOCIATE

ADAM MCCALL WHO WAS QUICK ON THE BUTTON, 411 F.SUPP.3D 580.

THE COURT: OKAY. IF YOU COULD DO THAT ONE MORE TIME

FOR ME, I'M SORRY. 411 --

MR. PORRITT: FEDERAL SUPPLEMENT THIRD, AT PAGE 580.

THAT'S THE START OF THE OPINION. I DON'T HAVE A PIN CITE, I'M

AFRAID, YOUR HONOR.

THE COURT: THAT'S FINE. I KNOW THE ISSUE. WE WILL

FIND IT OURSELVES. BUT THANK YOU, AND THANK YOU TO YOUR

ASSOCIATE WHO WAS HELPING OUT ON THAT. I APPRECIATE IT.

OKAY. WELL, THESE CASES ALWAYS TAKE ME A LITTLE BIT OF

TIME TO FIGURE OUT. IT LOOKS LIKE YOU WAITED FOR THE E.D.

VIRGINIA CASE FOR A LITTLE BIT OF TIME WHEN I SAW THAT, AND I

SO I DON'T TAKE THAT LONG.

AND MR. PORRITT, I DON'T KNOW HOW I'M GOING TO RULE, BUT I ALWAYS ASK THIS QUESTION, IF I WERE TO GRANT THIS MOTION, I ASSUME YOU ARE REQUESTING LEAVE TO AMEND; IS THAT CORRECT?

MR. PORRITT: YES, YOUR HONOR.

THE COURT: I MEAN, YOU DON'T HAVE TO AMEND. YOU CAN STAND ON THE COMPLAINT, BECAUSE WE WILL FIND OUT WHAT THE NINTH CIRCUIT IS DOING ABOUT THAT IN NOT TAKING ME UP ON THE LEAVE TO AMEND, THAT'S NOT MY CONCERN.

BUT YOU FEEL THAT -- OBVIOUSLY YOU WOULD FOLLOW THE GUIDANCE THAT I LAID OUT FOR YOU, BUT IF I WERE -- SO HERE'S THE FOLLOWUP QUESTION, IF I WERE TO GRANT LEAVE TO AMEND, I KNOW IT CAN OFTEN TAKE A BIT OF TIME BECAUSE YOU MAY FEEL YOU NEED ADDITIONAL INVESTIGATION, AND WE ARE NOT MOVING QUICKLY ON THIS AT ALL IN THIS DAY AND AGE. SO FROM THE TIME YOU RECEIVE MY ORDER, HOW MUCH TIME WOULD YOU ASK FOR BEFORE YOU HAVE TO FILE YOUR AMENDED PLEADING?

MR. PORRITT: AND I SHOULD SORT OF, I GUESS, CONDITION MY PRIOR STATEMENT ON, IT WOULD DEPEND A LITTLE BIT ON THE GROUNDS OF DISMISSAL, AS YOUR HONOR KNOWS, OF COURSE.

BUT, I MEAN, WE WOULD ASK FOR 60 DAYS. I KNOW THAT MIGHT BE A LONG TIME, BUT THAT'S WHAT WE WOULD ASK FOR, THAT'S WHAT WE WOULD LIKE. AGAIN, DEPENDING ON, OBVIOUSLY, THE GROUNDS OF WHICH YOUR HONOR MAY RULE.

THE COURT: I HAVE HAD PARTIES STAND ON THEIR

PLEADING AND TAKE IT UP ON APPEAL. SO, YOU KNOW, YOU DON'T KNOW HOW I'M GOING TO RULE, SO I APPRECIATE THAT.

MS. WINE, WOULD YOU OBJECT TO 60 DAYS?

MS. WINE: WITHOUT HAVING CONFIRMED WITH THE REST OF THE DEFENSE GROUP, THAT SOUNDS REASONABLE TO ME.

AND I KNOW YOU DIDN'T ASK ARGUMENT ON THIS, BUT I WOULD JUST REAL BRIEFLY SUGGEST THAT ALTHOUGH IT IS OFTEN THE CASE THAT PLAINTIFFS GET OPPORTUNITY FOR LEAVE TO AMEND, PICKING UP ON THE LAST POINT THAT I JUST MADE HERE, BECAUSE WE ARE TALKING ABOUT STATEMENTS THAT WERE MADE THAT ACTUALLY CAME TRUE, I FIND IT HARD TO BELIEVE THAT THEY ARE GOING TO BE ABLE TO GET AROUND THAT WITH ADDITIONAL INVESTIGATION. SO I WOULD JUST ASK THAT YOUR HONOR CONSIDER THAT IN CONSIDERING ANY OPPORTUNITY TO AMEND.

THE COURT: YOU KNOW, I HAVEN'T HAD VERY GOOD LUCK WITH THE NINTH CIRCUIT ON THAT ISSUE. AND ULTIMATELY, IT MEANS THAT'S BAD FOR YOU TO DELAY IT FOR THAT.

SO EVEN WITH HIGHLY SKILLED ATTORNEYS, THE NINTH CIRCUIT SEEMS TO WANT TO GIVE YOU AT LEAST ONE CHANCE AFTER YOU GET MY ORDER.

SO, YOU KNOW -- WELL, I GUESS PART OF THAT IS THAT RIGHT NOW I'VE GOT TWO CASES PENDING BEFORE THE NINTH CIRCUIT ON PLEADING STANDARD, SO I'M A LITTLE GUN SHY ON THAT NOW, I WILL BE HONEST.

MR. PORRITT: AND YOUR HONOR, TO EASE ANY CONCERN YOU

HAVE, AND DEFENDANT'S, WE DON'T GET PAID BY THE PAGE, WE HAVE NO INTEREST IN FILING AN AMENDED COMPLAINT THAT'S DOOMED TO FAIL BEFORE YOUR HONOR.

SO IF THAT'S THE CASE, WE WILL TAKE OUR LOSS AND WE WILL TAKE OUR LUMPS UP WITH THE NINTH CIRCUIT IF WE THINK WE HAVE A GOOD ARGUMENT.

THE COURT: I APPRECIATE THAT.

OKAY. WELL, I THINK THE 60 DAYS IS REASONABLE, AND THE -- AND THAT WOULD BE FROM THE DATE OF MY ORDER, NOT FROM TODAY, BECAUSE I DON'T KNOW WHEN I WILL GET THIS ORDER OUT. IT WILL BE LESS THAN 11 MONTHS, THAT'S ALL I CAN TELL YOU.

OKAY. THEN LET'S -- I DON'T THINK THE CASE MANAGEMENT PORTION OF THIS WILL TAKE VERY LONG BECAUSE WE ARE AT A PRELIMINARY STAGE, BUT I WAS -- I GUESS I'M A LITTLE CONCERNED ABOUT -- I WANT TO MAKE SURE I UNDERSTAND HOW YOU WANT TO PROCEED.

IF THE CASE PROCEEDS PAST THE PLEADING STAGE, THEN I MEAN, I GUESS THE FIRST THING TO DO IS TO CERTIFY A CLASS, AND I DON'T KNOW THAT THAT'S EVEN A PARTICULARLY CONTENTIOUS ISSUE IN A CASE LIKE THIS.

I'M NOT INCLINED TO SET A SCHEDULE RIGHT NOW. BUT WHAT'S YOUR THINKING, MR. PORRITT, ON HOW THE CASE WILL UNFOLD ONCE WE GET AN ANSWER ON FILE, IF WE GET TO THAT POINT?

MR. PORRITT: I MEAN, I THINK YOUR HONOR, AND I HEARD, AND YOU HAVE MY SYMPATHIES OF YOU TRYING TO SCHEDULE ONE

OF THE EARLIER CASE'S SCHEDULE FOR TODAY. WE ARE RESIGNED TO A 2024 TRIAL DATE AT THE EARLIEST IN THIS CASE, BUT I THINK AS YOUR HONOR KNOWS, THIS IS A FAIRLY NARROW ISSUE, CERTAINLY NARROW IN TIME FRAME. SO I WOULD NOT IMAGINE DISCOVERY IN THIS CASE DRAGGING ON FOR VERY LONG.

YOUR HONOR, I WOULD ALSO HOPEFULLY AGREE WITH YOU THAT I DON'T THINK CLASS CERTIFICATION HERE IS PARTICULARLY -- IT'S CONTENTIOUS. THERE'S NO -- YOU DON'T HAVE TO PROVE FORWARD IN THE MARKET, THERE'S NO EFFICIENT MARKET ANALYSIS IN SECTION 11 CASES. SO IT SEEMS VERY RARELY CERTIFIABLE AS A CLASS.

SO -- AND I'M NOT EXPECTING DEFENDANTS TO AGREE WITH THAT STATEMENT HERE AND NOW. SO WE WOULD LIKE TO MOVE THE CASE FORWARD FAIRLY QUICKLY, IF WE CAN. AGAIN, NOTING THAT ULTIMATELY, OF COURSE, WE ARE GETTING TOWARDS A TRIAL DATE AND INEVITABLY REQUESTING TO BE SUBJECT TO YOUR HONOR'S RATHER OVERBURDENED DOCKET, AND SO WE ARE STUCK WITH WHAT WE'VE GOT THERE.

SO I HAVEN'T REALLY THOUGHT AND I HAVEN'T DISCUSSED WITH EITHER CO-COUNSEL OR WITH DEFENDANTS OF A PROPOSED SCHEDULE HERE, BUT OBVIOUSLY THEIR FIRMS WE KNOW WELL, I EXPECT WE COULD COME UP WITH A VERY REASONABLE AND HOPEFULLY APPROPRIATELY FAST-MOVING SCHEDULE ONCE YOUR HONOR MAKES A RULING.

THE COURT: YEAH.

AND MR. PORRITT, SOMETIMES WHAT I DO, EVEN IN CASES LIKE THIS, BECAUSE MY CALENDAR FILLS UP SO QUICKLY, I GO AHEAD AND

GIVE YOU DATES, BECAUSE IF WE WAIT EIGHT MONTHS, IT WILL JUST BE WORSE.

SO I ACTUALLY THINK THAT I CAN SCHEDULE THIS CASE PROBABLY IN EARLY 2023, SO THAT'S JUST TWO YEARS FROM NOW. OH, THAT'S THREE YEARS, SORRY, BUT NOT 2024. AND IF I SAID I WAS ALREADY MID INTO 2023, I WAS MISTAKEN EARLIER. IN LOOKING AT MY CALENDAR, I'M REALLY PRETTY FULL IN 2022.

MAYBE THE THING THAT MAKES SENSE, I DIDN'T ACTUALLY WORK OUT ANY DATES BECAUSE YOU DIDN'T GIVE ME ANY SENSE OF WHAT YOU NEEDED, BUT CAN I JUST ISSUE AN ORDER WITH DATES, TRIAL DATES THAT WILL BE A PLACEHOLDER?

CLEARLY, IF THE CASE GOES OFF THE RAILS FOR YOU, IT WILL BE NO HARM, BUT IF IT STAYS ON, BECAUSE I DO AGREE IT'S LESS COMPLEX THAN OTHERS, I MIGHT BE ABLE TO SET THIS, I ACTUALLY MIGHT BE ABLE TO SET THIS AS EARLY AS OCTOBER/NOVEMBER OF 2022.

BUT I HAVEN'T WORKED OUT THE DATES. THAT TAKES ME A LITTLE BIT OF TIME. I DON'T WANT TO KEEP YOU ON THE PHONE FOR ME TO DO THAT.

DOES THAT MAKE SENSE TO YOU, MR. PORRITT?

MR. PORRITT: ABSOLUTELY.

YOUR HONOR, PLAINTIFF WILL TAKE THE EARLIEST AVAILABLE DATE.

THE COURT: OKAY. MS. WINE, YOUR VIEW?

MS. WINE: THAT SOUNDS REASONABLE.

I DO WANT TO FLAG THERE MIGHT BE A STANDING ISSUE THAT

WOULD HAVE TO BE RESOLVED IN CONNECTION WITH CLASS CERTIFICATION, BUT I THINK THAT THE TIMING THAT YOU'VE SET OUT IS WORKABLE.

THE COURT: OKAY.

SO TYPICALLY WHAT I WOULD DO IS SET, AND THIS IS JUST GUIDELINE, I TYPICALLY SET THE CLASS CERTIFICATION MOTION TO BE FILED ABOUT A YEAR FROM THE CASE MANAGEMENT CONFERENCE.

SO DOES THAT MAKE SENSE TO YOU, MR. PORRITT, THAT I WOULD ASK YOU TO FILE THAT MOTION APPROXIMATELY JUNE OF 2021?

MR. PORRITT: THAT IS PERFECTLY FINE FOR PLAINTIFF, THAT'S MORE THAN ENOUGH TIME, YOUR HONOR.

THE COURT: OKAY. AND IF IT COULD BE EARLIER, HOW MUCH EARLIER WOULD YOU BE COMFORTABLE WITH?

MR. PORRITT: OH, BOY, I'M SURE WE COULD DO IT IN 12 MONTHS.

THE COURT: THEN 12 MONTHS IT IS. I'M NOT PUSHING YOU. IF YOU WANT TO MOVE IT ALONG, I WANT TO KNOW WHAT A REASONABLE TIME IS, SO A YEAR SOUNDS REASONABLE TO YOU?

MR. PORRITT: CERTAINLY AT THIS STAGE, YOUR HONOR.

AND WE WOULD HAVE TO LOOK AT -- TO BE HONEST, I HAVEN'T LOOKED FURTHER AHEAD TO WHAT ISSUES THERE MAY BE, AND IF WE HAVE A STANDING ISSUE, THEN THAT'S SOMETHING WE MAY NEED TO ADDRESS WITH DEFENDANTS AND WE MAY NEED GUIDANCE FROM YOUR HONOR AS WELL.

THE COURT: OKAY.

THEN I WILL WORK THROUGH MY CALENDAR AND I WILL ISSUE A CASE MANAGEMENT ORDER. IT WILL TELL YOU THAT THE LAST DATE TO AMEND THE PLEADINGS, UNDER RULE 15, WILL BE 60 DAYS FROM TODAY.

THAT HAS NOTHING TO DO WITH AN ORDER FOLLOWING A MOTION TO DISMISS. THAT'S ALREADY AN ORDER. AND THEN AFTER 60 DAYS, YOU HAVE TO COMPLY WITH RULE 16. ANY AMENDED PLEADING DOES REQUIRE LEAVE OF COURT OR STIPULATION OF THE DEFENDANTS.

AND THEN THE REMAINDER OF MY ORDER WILL, I WILL GIVE YOU -- WHAT I DO WITH SUMMARY JUDGEMENT IS THAT I'M GOING TO GIVE YOU THE HEARING DATE, AND THAT WILL BE THE LAST DAY THAT I WILL HEAR SUMMARY JUDGEMENT.

I ONLY ALLOW ONE SUMMARY JUDGEMENT MOTION PER SIDE, AND IT'S STRICTLY LIMITED IN PAGES TO THE 25 PAGES THAT WE REQUIRE, OR THAT WE ALLOW UNDER OUR LOCAL RULES FOR THE NORTHERN DISTRICT.

AND I WILL GIVE YOU THE HEARING DATE. I'M GOING TO RESERVE THE HEARING DATE, YOU DON'T NEED TO WORRY ABOUT WHETHER IT WILL BE AVAILABLE, BUT YOU CERTAINLY CAN FILE THOSE MOTIONS, THE BARE 35 DAYS BEFORE THE HEARING, OR YOU CAN WORK OUT A MORE COMFORTABLE BRIEFING SCHEDULE IF YOU LIKE.

DIFFERENTLY, WITH THE CLASS CERTIFICATION, I'M GIVING YOU THE FILING DATE, THE LAST DAY TO FILE. AND THEN YOU WILL GET A HEARING DATE, IT'S TYPICALLY ABOUT FIVE MONTHS AFTER YOU'VE FILED THE MOTION. THAT WILL GIVE YOU AMPLE TIME TO WORK OUT A REASONABLE BRIEFING SCHEDULE TO GIVE THE DEFENSE AN OPPORTUNITY

TO TAKE SOME DISCOVERY, IF NECESSARY, BEFORE THEY FILE THEIR OPPOSITION TO CLASS CERTIFICATION, AND THEN I WILL GIVE YOU A FINAL PRETRIAL CONFERENCE DATE AND A TRIAL DATE.

AND I WILL LOOK FOR THE EARLIEST DATE THAT I CAN IN 2022, BECAUSE 2021 I'M GOING TO BE RESERVING FOR MY BACKLOG OF CRIMINAL TRIALS AND MY OTHER CIVIL TRIALS THAT I'VE ALREADY HAD TO CONTINUE. IF I END UP IN EARLY 2023, IT'S THE BEST THAT I COULD DO.

LET ME TELL YOU SOME OTHER REQUIREMENTS. FIRST OF ALL, I'M GOING TO ASK THAT YOU REVIEW MY STANDING ORDERS. I HAVE A PET PEEVE, EVERYONE LIKES TO KNOW THEIR JUDGE'S PET PEEVES, AND FOR ME IT'S FOOTNOTES.

IF YOU INSIST ON USING THEM, THEY HAVE TO BE 12 POINT FONT AND DOUBLE SPACED. IT'S NOT A METHOD OF EXPANDING THE PAGE LIMIT THAT OUR LOCAL RULES REQUIRE. AND IF YOU DON'T COMPLY WITH THAT, SOMETIMES I JUST THROW THE WHOLE BRIEF AWAY IF IT'S EXTENSIVE AND I DON'T LET YOU RE-FILE IT, OR I JUST IGNORE YOUR FOOTNOTES, AND YOUR ARGUMENTS THAT MAKE NO SENSE ARE DISCARDED BECAUSE THEY MAKE NO SENSE WITHOUT THE FOOTNOTE. I JUST DON'T LIKE FOOTNOTES.

IN YOUR SUMMARY JUDGEMENT -- LET ME TALK TO YOU A LITTLE BIT ABOUT DAUBERT MOTIONS. IN A CASE LIKE THIS, I MEAN, THERE WILL BE EXPERTS, I DON'T KNOW HOW CONTROVERSIAL THEY WILL BE. I'VE HAD A LOT OF SECURITIES CASES, I'VE NEVER HAD ONE GET PAST -- I'VE ONLY HAD ONE GET PAST THE MOTION TO DISMISS AND

THEN IT'S SETTLED, SO I HAVEN'T GOTTEN TO CLASS CERTIFICATION OR ANY OF THE SUBSTANTIVE ISSUES.  AND I DON'T KNOW WHAT YOUR EXPERIENCE IS, I'M SURE YOUR NUMBER OF TRIALS IS SMALL, BECAUSE THAT'S THE WAY IT SEEMS TO GO.

BUT IF WE GET TO SUMMARY JUDGEMENT, IF YOU ON OPPOSE ANY STATEMENTS OFFERED BY AN EXPERT, YOUR EVIDENTIARY OBJECTIONS UNDER OUR NORTHERN DISTRICT LOCAL RULES MUST BE CONTAINED WITHIN THE 25 PAGE LIMIT FOR YOUR BRIEF.

YOU CAN FILE A SEPARATE DAUBERT MOTION, I WILL NOT RULE ON IT FOR SUMMARY JUDGEMENT.  I WILL DELAY IT UNTIL TRIAL.  SO IF YOU WANT DAUBERT TO KNOCK OUT AN EXPERT ON SUMMARY JUDGEMENT, YOU HAVE TO FILE IT WITHIN THE CONFINES OF THAT MOTION.

FOR DAUBERT MOTIONS FOR TRIAL, I HAVE A LOT OF LIMITATIONS.  YOU HAVE TO OBTAIN A HEARING DATE 60 DAYS BEFORE TRIAL OR MORE.  IT TAKES FIVE TO SIX MONTHS TO GET A HEARING DATE.  SO ABOUT EIGHT MONTHS BEFORE TRIAL, YOU HAVE TO FILE -- YEAH, ABOUT EIGHT MONTHS BEFORE TRIAL, YOU HAVE TO FILE YOUR DAUBERT MOTIONS.

YOU ARE LIMITED TO 25 PAGES TOTAL.  NO MORE THAN TEN PAGES PER EXPERT.  SO IF YOU HAVE ONE EXPERT, IT'S A TEN-PAGE BRIEF. IF YOU HAVE FIVE EXPERTS YOU ARE OBJECTING, TO IT'S A 25-PAGE BRIEF.

IF YOU MISS THESE DEADLINES, YOU ARE WELCOME TO FILE YOUR DAUBERT MOTIONS AS MOTIONS IN LIMINE BEFORE TRIAL.

SO IT'S JUST FOR THESE MORE PONDEROUS MOTIONS, I JUST HAVE

TO HAVE SOME REGULATION. YOU ARE ALLOWED UP TO FIVE MOTIONS IN LIMINE PER TRIAL, AND EACH EXPERT WOULD BE A SEPARATE MOTION IN LIMINE TO FIVE PAGES EACH.

YOU ARE WELCOME TO USE YOUR MOTIONS IN LIMINE FOR DAUBERT. THOSE ARE ONLY FILED TWO WEEKS BEFORE THE FINAL PRETRIAL CONFERENCE, SO THERE'S A NICE FALLBACK FOR YOU, A FAILSAFE, IF YOU NEED IT. BUT THOSE ARE REQUIREMENTS THAT I NEED TO MANAGE THE CASES.

I NEVER HAVE ANY PROBLEM WITH THIS, AND SO I'M SURE WE WON'T HERE. AND MOST IMPORTANTLY, WE ARE LOOKING AT THE MOTION TO DISMISS STAGE. AND, YOU KNOW, I'VE HAD VERY GOOD ARGUMENT TODAY, AND I REALLY APPRECIATE THAT, SO I ACTUALLY DON'T HAVE A SENSE OF WHICH WAY I'M GOING TO RULE ON THIS, YOU'VE GIVEN ME A LOT TO THINK ABOUT.

ANY QUESTIONS FOR THE CASE MANAGEMENT SIDE OF THIS?

MR. PORRITT: NOTHING FROM PLAINTIFF, YOUR HONOR.

MS. WINE: NOTHING FROM DEFENDANT.

THE COURT: OKAY.

IF THERE ARE ANY DISCOVERY DISPUTES, THEY WILL GO TO THE MAGISTRATE JUDGE ASSIGNED TO THE CASE. AND WE DO HAVE THE KINGSTOWN PLAINTIFFS ON AS WELL, THAT CASE HAS BEEN STAYED, AND I GATHER THAT THAT CASE WILL REMAIN STAYED FOR THE LIFE OF THIS CASE; IS THAT CORRECT?

MR. ELROD: GOOD MORNING, YOUR HONOR.

THIS IS TOMAS ELROD, I REPRESENT THE PLAINTIFFS IN THE

KINGSTOWN MATTER.

THE COURT: GOOD MORNING.

MR. ELROD: THANK YOU FOR LETTING ME PARTICIPATE IN THIS CONFERENCE.

ACCORDING TO THE JOINT STIPULATION THAT DEFENDANTS PUT IN WITH PLAINTIFFS, WE ARE IN THE PROCESS OF EVALUATING THE EXTENT OF THE MOTION TO DISMISS IN THE DXC CLASS ACTION.

THE COURT: SURE.

MR. ELROD: AND THEIR POTENTIAL -- YOU KNOW, THE IMPACT ON THE KINGSTOWN ACTION.

ACCORDING TO THE STATEMENT ON COORDINATION, WE WOULD COORDINATE DISCOVERY WITH THE PLAINTIFFS IN THEIR RESPECTIVE CLASS ACTIONS, OR NOW THE SUBSTANTIAL ACTION.

THE COURT: OKAY. YES, YOU HAVE A LOT TO LOOK AT.

AND IN THE CASE YOU FILED IN THIS DISTRICT, YOU INCLUDE BOTH THE SECTION 11 CLAIMS AND CLAIMS UNDER 10(B), CORRECT?

MR. ELROD: THAT'S CORRECT, YOUR HONOR.

AND THIS IS A SOMEWHAT UNUSUAL CIRCUMSTANCE WHERE SECTION 11 CLAIMS AND SECTION 10(B) CLAIMS, IT'S JUST AT THE SAME TIME BUT ARE NOT THE SAME ACTION.

OBVIOUSLY THE COSTANZO ACTION WAS FILED AFTER THE TFC CLASS ACTION WAS FULLY BRIEFED ON THE MOTION TO DISMISS STAGE. WE FILED THE COMPLAINT, IN PART, TO PRESERVE KINGSTOWN'S STATUTE OF REPOSE AND THEIR CLAIMS.

THE COURT: OKAY.

SO IT'S YOUR DESIRE TO HAVE THE KINGSTOWN CASE REMAIN STAYED PENDING, AT LEAST PENDING THE MOTIONS TO DISMISS.

MR. ELROD:  THAT'S CORRECT, YOUR HONOR.

THE COURT:  OKAY.

NOW I ALSO NOTICED THAT THERE ARE COMPANION STATE COURT CASES IN SANTA CLARA COUNTY WITH A STAY MOTION PENDING.  IS THAT STILL PENDING, ARE YOU STILL WAITING FOR A DECISION FROM THE SANTA CLARA COURT?

MR. MCDONOUGH:  YOUR HONOR, THIS IS KEVIN MCDONOUGH FOR DEFENDANTS.

WE ARE STILL WAITING.  THE SCHEDULE ON THAT MOTION HAS GOTTEN QUITE DELAYED DUE TO THE PANDEMIC.  THE DEFENDANTS WILL BE SUBMITTING OUR REPLY BRIEF IN SUPPORT OF THAT MOTION LATER THIS MONTH, AND THE MOTION IS SCHEDULED TO BE HEARD IN EARLY JULY, SO THAT'S STILL AN OPEN ISSUE.

THE COURT:  OKAY.  THAT'S FINE.

ALL RIGHT.  WELL, THEN MR. ELROD, I WILL JUST ESSENTIALLY IGNORE THE KINGSTOWN CASE FOR NOW BECAUSE IT'S STAYED, AND YOU KNOW, IF THERE'S SOME POINT AT WHICH YOUR CLIENT CONSIDERS ME LIFTING THAT STAY, YOU WILL MAKE THAT MOTION; IS THAT CORRECT?

MR. ELROD:  THAT'S CORRECT, YOUR HONOR.

THANK YOU FOR YOUR ACTIVE ATTENTION TO THE MATTER.

THE COURT:  OKAY.  THAT'S FINE.

AND I THINK I UNDERSTAND THAT.  I WILL BE INTERESTED TO SEE WHAT THE NEXT STEP IS WITH THE EXC LITIGATION IN E.D.

VIRGINIA. AND SINCE THAT DECISION, THE INK IS BARELY DRY ON IT, I IMAGINE THAT PLAINTIFFS ARE TRYING TO EVALUATE WHAT THE NEXT STEP IS. SO YOU CAN KEEP ME INFORMED ON THAT AS WELL.

ALL RIGHT. SO I'M GOING TO SEND YOU AN ORDER WITH DATES, AND THEN WHAT I WILL ASK YOU TO DO IS PROBABLY I WILL HAVE TO FIGURE THIS OUT, BUT PROBABLY TWO WEEKS AFTER I RULE ON THE MOTION TO DISMISS, ASSUMING THAT THE CASE REMAINS ALIVE, I WILL ASK YOU TO SUBMIT A STIP AND ORDER ON THE REMAINDER OF THE DISCOVERY CUTOFF DATES. CLEARLY NOTHING IS GOING TO HAPPEN UNTIL AFTER I ISSUE THIS ORDER. IF I DISMISS THE CASE, AS I SAID, I'M LIKELY TO GIVE LEAVE TO AMEND, BUT YOU WILL GET AN ORDER FROM ME ON TELLING YOU WHAT TO DO WITH THAT.

ALL RIGHT. THANK YOU ALL. IT'S BEEN A LONG MORNING AND YOU'VE HELPED ME A GREAT DEAL IN EVALUATING THESE ISSUES, AND YOU WILL GET MY ORDER AS SOON AS I CAN, BUT I CAN'T PROMISE YOU A DATE.

ALL RIGHT. SO THANK YOU ALL.

MR. PORRITT: THANK YOU, YOUR HONOR.

MS. WINE: THANK YOU, YOUR HONOR.

(THE PROCEEDINGS WERE CONCLUDED AT 11:17 A.M.)

## CERTIFICATE OF REPORTER

I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY CERTIFY:

THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED TRANSCRIPTION TO THE BEST OF MY ABILITY.

_____
SUMMER A. FISHER, CSR, CRR
CERTIFICATE NUMBER 13185                 DATED: 6/11/20